Lionel Z. Glancy (#134180)
Robert V. Prongay (#270796)
Lesley F. Portnoy (#304851)
Charles H. Linehan (#307439)
Pavithra Rajesh (#323055)
**GLANCY PRONGAY & MURRAY LLP**
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: info@glancylaw.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHAD C. SMITH, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>NETAPP, INC., GEORGE KURIAN, RONALD J. PASEK, JOEL D. REICH, and MATTHEW K. FAWCETT,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**DEMAND FOR JURY TRIAL** |

CLASS ACTION COMPLAINT

Plaintiff Chad C. Smith ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by NetApp, Inc. ("NetApp" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by NetApp; and (c) review of other publicly available information concerning NetApp.

**NATURE OF THE ACTION AND OVERVIEW**

1. This is a class action on behalf of persons and entities that purchased or otherwise acquired NetApp securities between May 22, 2019 and August 1, 2019, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2. NetApp provides a range of hybrid cloud data services that simplify management of applications and data across cloud and on-premises environments to accelerate digital transformation.

3. On August 1, 2019, after the market closed, the Company reported preliminary first quarter 2019 adjusted earnings per share of $0.55 to $0.60, below the average estimate of $0.83, and net revenue of $1.22 billion to $1.23 billion, below the average estimate of $1.39 billion. Additionally, the Company lowered its 2020 outlook and expected net revenue to decline between 5% and 10% year-over-year.

4. On this news, the Company's share price fell as much as $11.67, or over 20%, to close at $46.04 per share on August 2, 2019, on unusually heavy trading volume.

5. Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that the Company was unable to close large deals within the quarter and that the deals were pushed out to

subsequent quarters or downsized; (2) that, as a result, the Company's revenue would be materially impacted; (3) that, as a result, the Company would lower its fiscal 2020 guidance; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

6. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

**JURISDICTION AND VENUE**

7. The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

8. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

9. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District. Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District. In addition, the Company's principal executive offices are located in this district.

10. In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

**PARTIES**

11. Plaintiff Chad C. Smith, as set forth in the accompanying certification, incorporated by reference herein, purchased NetApp securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

12. Defendant NetApp is incorporated under the laws of Delaware with its principal executive offices located in Sunnyvale, California. NetApp's common stock trades on the NASDAQ under the symbol "NTAP."

13. Defendant George Kurian ("Kurian") was the Chief Executive Officer ("CEO") of the Company at all relevant times.

14. Defendant Ronald J. Pasek ("Pasek") was the Chief Financial Officer ("CFO") of the Company at all relevant times.

15. Defendant Joel D. Reich ("Reich") was the Executive Vice President of Product Operations of the Company at all relevant times.

16. Defendant Matthew K. Fawcett ("Fawcett") was the Senior Vice President and General Counsel of the Company at all relevant times.

17. Defendants Kurian, Pasek, Reich, and Fawcett (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market. The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

18. NetApp provides a range of hybrid cloud data services that simplify management of applications and data across cloud and on-premises environments to accelerate digital transformation.

## Materially False and Misleading
## Statements Issued During the Class Period

19. The Class Period begins on May 22, 2019. On that day, the Company announced fourth quarter and full year 2019 financial results, stating in relevant part:

**Fiscal Year 2019 Financial Results***

- **Net Revenues:** $6.15 billion, increased 4% year-over-year from $5.92 billion in fiscal 2018

- **Net Income:** GAAP net income of $1.17 billion, compared to GAAP net income of $116 million** in fiscal 2018; non-GAAP net income of $1.17 billion, compared to non-GAAP net income of $983 million in fiscal 2018

- **Earnings per Share:** GAAP net income per share of $4.51, compared to GAAP net income per share of $0.42** in fiscal 2018; non-GAAP net income per share of $4.52, compared to non-GAAP net income per share of $3.56 in fiscal 2018

- **Cash from Operations:** $1.34 billion, compared to $1.48 billion in fiscal year 2018

- **Share Repurchase and Dividend:** Returned $2.51 billion to shareholders through share repurchases and cash dividends

20. On June 18, 2019, the Company filed its annual report on Form 10-K for the period ended April 26, 2019 (the "2019 10-K"), affirming the previously reported financial results. Moreover, as to risks impacting the business, the Company stated, in relevant part:

> ***A portion of our revenues is generated by large, recurring purchases from various customers, resellers and distributors. A loss, cancellation or delay in purchases by any of these parties has negatively affected our revenues in the past, and could negatively affect our revenues in the future.***
>
> A significant portion of our net revenues are generated through sales to a limited number of customers and distributors. We generally do not enter into binding purchase commitments with our customers, resellers and distributors for extended periods of time, and thus there is no guarantee we will continue to receive large, recurring orders from these customers, resellers or distributors. For example, our reseller agreements generally do not require minimum purchases, and our customers, resellers and distributors can stop purchasing and marketing our products at any time. In addition, unfavorable economic conditions may negatively impact the solvency of our customers, resellers and distributors or the ability of such customers, resellers and distributors to obtain credit to finance purchases of our products. If any of our key customers, resellers or distributors changes its pricing practices, reduces the size or frequency of its orders for our products, or

stops purchasing our products altogether, our operating results and financial condition could be materially adversely impacted.

21. The above statements identified in ¶¶19-20 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that the Company was unable to close large deals within the quarter and that the deals were pushed out to subsequent quarters or downsized; (2) that, as a result, the Company's revenue would be materially impacted; (3) that, as a result, the Company would lower its fiscal 2020 guidance; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

**Disclosures at the End of the Class Period**

22. On August 1, 2019, after the market closed, the Company reported preliminary first quarter 2020 net revenue between $1.22 and $1.23 billion, below previous guidance between $1.315 to $1.465 billion, and earnings per share between $0.30 and $0.35, below previous guidance between $0.56 to $0.64. Additionally, the Company lowered its 2020 outlook and expected net revenue to decline between 5% and 10% year-over-year.

23. On a conference call held the same day, Defendant Kurian elaborated:

We were largely on track to meet our guidance until the second half of the quarter. We then saw a deterioration in our close rates against the pipeline with deals both getting pushed out or downsized, especially in our largest global customers and the Americas. While we believe it is taking longer than anticipated for our largest customers to absorb capacity buys from last year, it's also increasingly clear that the macro outlook at enterprises geared to the global economy has taken a negative turn.

24. On this news, the Company's share price fell as much as $11.67, or over 20%, to close at $46.04 per share on August 2, 2019, on unusually heavy trading volume.

**THE INDIVIDUAL DEFENDANTS' SUSPICIOUS
STOCK SALES SUPPORT SCIENTER**

25. Defendants Kurian, Pasek, Reich, and Fawcett took advantage of the artificially inflated price of NetApp stock resulting from the false statements by selling a significant amount

CLASS ACTION COMPLAINT
5

of his personally held shares in the days and weeks following May 22, 2019 disclosures of the Company's financial results.

26. Defendant Kurian made the following stock sales during the Class Period:

| Date | Shares Sold | Price | Total Proceeds |
| --- | --- | --- | --- |
| 06/01/19 | 29,139 | $59.20 | $1,725,029 |

27. Defendant Pasek made the following stock sales during the Class Period:

| Date | Shares Sold | Price | Total Proceeds |
| --- | --- | --- | --- |
| 06/01/19 | 11,254 | $59.20 | $666,237 |
| 06/03/19 | 58,052 | $58.49 | $3,395,432 |

28. Defendant Reich made the following stock sales during the Class Period:

| Date | Shares Sold | Price | Total Proceeds |
| --- | --- | --- | --- |
| 06/01/19 | 12,024 | $59.20 | $711,821 |
| 06/04/19 | 30,000 | $60.59 | $1,817,742 |
| 06/18/19 | 23,650 | $61.49 | $1,454,302 |

29. Defendant Fawcett made the following stock sales during the Class Period:

| Date | Shares Sold | Price | Total Proceeds |
| --- | --- | --- | --- |
| 06/01/19 | 11,005 | $59.20 | $651,496 |
| 06/03/19 | 11,195 | $58.76 | $657,855 |
| 06/21/19 | 38,195 | $61.55 | $2,350,990 |

30. These sales were suspicious in both timing and amount. Defendant Kurian received proceeds of $1,725,029 from selling approximately 14% of his holdings. Defendant Pasek received proceeds of $4,061,669 from selling approximately 51% of his holdings. Defendant Reich received proceeds of $3,983,865 from selling more than 70% of his holdings. Defendant Fawcett received proceeds of $3,660,341 from selling nearly 50% of his holdings. Such dramatic selling was inconsistent with the Individual Defendants' prior trading practices.

## CLASS ACTION ALLEGATIONS

31. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired NetApp securities between May 22, 2019 and August 1, 2019, inclusive, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

32. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, NetApp's common shares actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class. Millions of NetApp common stock were traded publicly during the Class Period on the NASDAQ. Record owners and other members of the Class may be identified from records maintained by NetApp or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

33. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

34. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

35. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b) whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of NetApp; and

(c) to what extent the members of the Class have sustained damages and the proper measure of damages.

36. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

37. The market for NetApp's securities was open, well-developed and efficient at all relevant times. As a result of these materially false and/or misleading statements, and/or failures to disclose, NetApp's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired NetApp's securities relying upon the integrity of the market price of the Company's securities and market information relating to NetApp, and have been damaged thereby.

38. During the Class Period, Defendants materially misled the investing public, thereby inflating the price of NetApp's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading. The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about NetApp's business, operations, and prospects as alleged herein.

39. At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading

statements about NetApp's financial well-being and prospects. These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

40. Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

41. During the Class Period, Plaintiff and the Class purchased NetApp's securities at artificially inflated prices and were damaged thereby. The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## ADDITIONAL SCIENTER ALLEGATIONS

42. As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding NetApp, their control over, and/or receipt and/or modification of NetApp's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning NetApp, participated in the fraudulent scheme alleged herein.

**APPLICABILITY OF PRESUMPTION OF RELIANCE
(FRAUD-ON-THE-MARKET DOCTRINE)**

43. The market for NetApp's securities was open, well-developed and efficient at all relevant times. As a result of the materially false and/or misleading statements and/or failures to disclose, NetApp's securities traded at artificially inflated prices during the Class Period. On May 22, 2019, the Company's share price closed at a Class Period high of $67.10 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of NetApp's securities and market information relating to NetApp, and have been damaged thereby.

44. During the Class Period, the artificial inflation of NetApp's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about NetApp's business, prospects, and operations. These material misstatements and/or omissions created an unrealistically positive assessment of NetApp and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

45. At all relevant times, the market for NetApp's securities was an efficient market for the following reasons, among others:

(a) NetApp shares met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b) As a regulated issuer, NetApp filed periodic public reports with the SEC and/or the NASDAQ;

(c) NetApp regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the

national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d) NetApp was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

46. As a result of the foregoing, the market for NetApp's securities promptly digested current information regarding NetApp from all publicly available sources and reflected such information in NetApp's share price. Under these circumstances, all purchasers of NetApp's securities during the Class Period suffered similar injury through their purchase of NetApp's securities at artificially inflated prices and a presumption of reliance applies.

47. A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions. Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions. Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## **NO SAFE HARBOR**

48. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could

1  cause actual results to differ materially from those in the purportedly forward-looking statements.
2  In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-
3  looking statements pleaded herein, Defendants are liable for those false forward-looking
4  statements because at the time each of those forward-looking statements was made, the speaker
5  had actual knowledge that the forward-looking statement was materially false or misleading,
6  and/or the forward-looking statement was authorized or approved by an executive officer of
7  NetApp who knew that the statement was false when made.

**FIRST CLAIM**

**Violation of Section 10(b) of The Exchange Act and
Rule 10b-5 Promulgated Thereunder
Against All Defendants**

11  49.   Plaintiff repeats and re-alleges each and every allegation contained above as if fully
12  set forth herein.

13  50.   During the Class Period, Defendants carried out a plan, scheme and course of
14  conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing
15  public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and
16  other members of the Class to purchase NetApp's securities at artificially inflated prices.  In
17  furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant,
18  took the actions set forth herein.

19  51.   Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made
20  untrue statements of material fact and/or omitted to state material facts necessary to make the
21  statements not misleading; and (iii) engaged in acts, practices, and a course of business which
22  operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to
23  maintain artificially high market prices for NetApp's securities in violation of Section 10(b) of the
24  Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the
25  wrongful and illegal conduct charged herein or as controlling persons as alleged below.

26  52.   Defendants, individually and in concert, directly and indirectly, by the use, means
27  or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a

continuous course of conduct to conceal adverse material information about NetApp's financial well-being and prospects, as specified herein.

53.    Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of NetApp's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about NetApp and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

54.    Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

55.    Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing NetApp's financial well-being and prospects from the

investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

56. As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of NetApp's securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired NetApp's securities during the Class Period at artificially high prices and were damaged thereby.

57. At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that NetApp was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their NetApp securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

58. By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

59. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM

### Violation of Section 20(a) of The Exchange Act
### Against the Individual Defendants

60. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

61. Individual Defendants acted as controlling persons of NetApp within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

62. In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

63. As set forth above, NetApp and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a) Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b) Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c) Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d) Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

DATED: August 14, 2019        **GLANCY PRONGAY & MURRAY LLP**

By:  */s/ Lesley F. Portnoy*
Lionel Z. Glancy
Robert V. Prongay
Lesley F. Portnoy
Charles H. Linehan
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: info@glancylaw.com

*Attorneys for Plaintiff Chad C. Smith*

## SWORN CERTIFICATION OF PLAINTIFF

## NETAPP, INC. SECURITIES LITIGATION

I, Chad C. Smith individually, and/or in my capacity as trustee and/or principal for accounts listed on Schedule A, certify that:

1. I have reviewed the Complaint and authorize its filing and/or the filing of a Lead Plaintiff motion on my behalf.

2. I did not purchase the NetApp, Inc. securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3. I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4. My transactions in NetApp, Inc. securities during the Class Period set forth in the Complaint are as follows:

   (See attached transactions)

5. I have not sought to serve, nor served, as a representative party on behalf of a class under this title during the last three years, except for the following:

6. I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court, including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.

8/5/2019  
Date

DocuSigned by:  
Chad C. Smith  
163480D693D0460...

Chad C. Smith

**Chad C. Smith's Transactions in NetApp, Inc. (NTAP)**

| Date | Transaction Type | Quantity | Unit Price |
|---|---|---|---|
| 6/27/2019 | Bought | 40 | $61.4900 |