**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen, Esq. (SBN 219683)
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Lead Counsel for Lead Plaintiff and the Class*

[*Additional Counsel on Signature Page*]

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHAD C. SMITH, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NETAPP, INC., et al.<br><br>Defendants. | Case No. 19-cv-04801-JST<br><br><u>Class Action</u><br><br>**PLAINTIFF'S NOTICE OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing Date: November 4, 2021<br>Time: 2:00 p.m.<br>Location: Courtroom 6 – 2nd Floor<br>Judge: Honorable Jon S. Tigar |

1

2

## NOTICE OF UNOPPOSED MOTION
## <u>FOR PRELIMINARY APPROVAL OF SETTLEMENT</u>

3

4

TO THE CLERK OF THE COURT AND ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:

5

6

7

8

9

10

11

12

13

14

15

16

17

PLEASE TAKE NOTICE that on November 4, 2021, at 2:00 p.m., or as soon thereafter as the matter may be heard, Lead Plaintiff Winston Derouin ("Lead Plaintiff" or "Plaintiff") will hereby move the Honorable Jon S. Tigar, District Judge, located in Courtroom 6 – 2nd Floor, 1301 Clay Street, Oakland, CA 94612, for entry of the [Proposed] Order Preliminarily Approving Settlement and Providing for Notice (the "Preliminary Approval Order") submitted herewith, which: (i) grants preliminary approval of the proposed class action settlement on the terms set forth in the Stipulation of Settlement and exhibits thereto, dated as of September 21, 2021 (collectively "Stipulation");[1] (ii) preliminarily certifies the Settlement Class, appointing Plaintiff as class representative of the Settlement Class, and appointing Lead Counsel as class counsel for the Settlement Class; (iii) approves the form and manner of giving notice of the proposed Settlement to the Settlement Class; and (iv) sets a hearing date to determine whether the proposed Settlement, proposed Plan of Allocation ("Plan"), and Lead Counsel's motion for an award of attorneys' fees and expenses and Compensatory Award to Plaintiff should be approved.

18

19

20

21

In support of this Motion, Plaintiff submits the following memorandum, the Goldberg Declaration and exhibits thereto, including the Stipulation and further exhibits thereto, all prior pleadings and papers in this Action, and such additional information or argument as may be required by the Court.

22

23

24

Defendants do not oppose this motion.

25

26

27

28

---

[1] All capitalized terms, unless otherwise defined herein, have the same meaning as set forth in the Stipulation. A true and correct copy of the Stipulation and its exhibits are altogether attached as Exhibit 1 to the Declaration of Jacob A. Goldberg in Support of Plaintiff's Unopposed Motion for Preliminary Approval of Settlement (the "Goldberg Declaration"). Unless otherwise noted, all citations herein to "¶__" and "Ex. __" refer, respectively, to paragraphs in, and exhibits to, the Goldberg Declaration.

# TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................................................. ii

TABLE OF AUTHORITIES ........................................................................................ iv

STATEMENT OF ISSUES TO BE DECIDED ...................................................... vii

I.      PRELIMINARY STATEMENT ...................................................... 1

II.     SUMMARY OF THE LITIGATION AND PROCEDURAL HISTORY ............ 2

III.    THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL ................... 3

        A.    Standards for Preliminary Approval ...................................... 3

        B.    The Settlement is Fair, Reasonable, and Adequate in Light of the Rule 23(e)(2) and Ninth Circuit Factors ...................................... 4

              1.    Plaintiff and Lead Counsel Have Provided Adequate Representation ............ 4

              2.    The Settlement is the Product of Arms-Length Negotiations Overseen by an Experienced Mediator ...................................... 5

              3.    The Settlement is a Favorable Result for the Settlement Class in Light of its Benefits and the Risks of Continued Litigation ............................ 6

                    (a)    The Strength of Plaintiff's Case and the Risk, Expense, Complexity, and Likely Duration of Continued Litigation .......................... 6

                    (b)    Risk of Maintaining Class Action Status Throughout Trial ................................ 8

              4.    The Remaining Rule 23(e)(2)(C) Factors Support the Settlement's Approval .................................. 8

                    (a)    Rule 23(e)(2)(C)(ii) – The Methods of Distributing Relief and of Processing Claims ...................... 8

                    (b)    Rule 23(e)(2)(C)(iii) – Proposed Attorneys' Fees ............... 9

                    (c)    Rule 23(e)(2)(C)(iv) – Identification of Agreements .......... 9

              5.    The Proposed Settlement Does Not Unjustly Favor Any Settlement Class Members, Including Plaintiff ...................... 10

              6.    The Remaining *Hanlon* Factors Favor Preliminary Approval ...................... 11

                    (a)    The Amount Offered in Settlement ................................. 11

                    (b)    The Extent of Discovery and the Stage of Proceedings.. ................... 12

(c)     Experienced Counsel's Recommendations ....................... 13

IV.    THE COURT SHOULD CERTIFY THE CLASS FOR SETTLEMENT PURPOSES ........................................................................................ 14

A.    Numerosity is Satisfied.................................................................. 15

B.    There Are Substantial Common Questions of Law and Fact ......................... 15

C.    Plaintiff's Claims Are Typical of Other Settlement Class Members ............. 16

D.    Plaintiff and Lead Counsel Adequately Represent the Settlement Class....... 16

E.    The Settlement Class Meets Rule 23(b)(3) Requirements .............................. 17

1.   Predominance is Satisfied.................................................................. 17

2.   Superiority is Satisfied........................................................................ 18

V.     THE PLAN OF ALLOCATION IS FAIR AND REASONABLE ....................... 19

VI.    THE NOTICE PROGRAM SATISFIES RULE 23, DUE PROCESS, AND THE PSLRA ...................................................................................................... 21

A.    The Method of Notice is Adequate.................................................. 21

B.    The Content of the Notice is Adequate ........................................... 22

VII.   THE PROPOSED CLAIMS ADMINISTRATOR ............................................. 23

VIII.  THE INTENDED REQUEST FOR ATTORNEYS' FEES, LITIGATION EXPENSES, AND PLAINTIFF'S AWARD....................................................... 24

IX.    PROPOSED SCHEDULE OF EVENTS ............................................................ 25

X.     CONCLUSION ................................................................................................... 25

# **TABLE OF AUTHORITIES**

**Cases**                                                                                               **Pages**

*Amchem Prod., Inc. v. Windsor,*
  521 U.S. 591 (1997) ................................................................................................. 18

*Ang v. Bimbo Bakeries USA, Inc.,*
  No. 13-CV-01196-HSG, 2020 WL 2041934 (N.D. Cal. Apr. 28, 2020). ..................................... 3

*Baker v. SeaWorld Entm't, Inc.,*
  No. 14CV2129-MMA (AGS), 2020 WL 818893 (S.D. Cal. Feb. 19, 2020) ............................ 21

*Barnes v. AT&T Pension Benefit Plan,*
  270 F.R.D. 488 (N.D. Cal. 2010). ...................................................................................... 15

*Bellinghausen v. Tractor Supply Co.,*
  306 F.R.D. 245 (N.D. Cal. 2015). ...................................................................................... 25

*Blackie v. Barrack,*
  524 F.2d 891 (9th Cir. 1975) ............................................................................................. 14

*Booth v. Strategic Realty Tr., Inc.,*
  No. 13-cv-04921-JST, 2015 WL 3957746 (N.D. Cal. Jun. 28, 2015) .......................... 3, 18

*Christine Asia Co. v. Yun Ma,,*
  No. 1:15-md-02631 (CM) (SDA), 2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) .................... 10

*Churchill Vill., L.L.C. v. Gen. Elec.,*
  361 F.3d 566 (9th Cir.2004)............................................................................................. 4, 22

*City of Detroit v. Grinnell Corp.,*
  495 F.2d 448 (2d Cir. 1974) .............................................................................................. 12

*Class Plaintiffs v. City of Seattle,*
  955 F.2d 1268 (9th Cir. 1992). .......................................................................................... 19

*Eminence Capital, LLC v. Aspeon, Inc.,*
  316 F.3d 1048 (9th Cir. 2003 ............................................................................................... 7

*Hanlon v. Chrysler Corp.,*
  150 F.3d 1011 (9th Cir. 1998)..................................................................................... *passim*

*Hefler v. Wells Fargo & Co.,*
  No. 16-CV-05479-JST, 2018 WL 4207245 (N.D. Cal. Sept. 4, 2018)............................ 9, 10, 11

*Hodges v. Akeena Solar, Inc.,*
  274 F.R.D. 259 (N.D. Cal. 2011). ...................................................................................... 15

*In re "Agent Orange" Prod. Liab. Litig.,*
  597 F. Supp. 740 (E.D.N.Y. 1984) .................................................................................... 11

*In re Adobe Sys., Inc. Sec. Litig.,*
  139 F.R.D. 150 (N.D. Cal. 1991) ...................................................................................... 14

*In re Advanced Battery Techs., Inc. Sec. Litig.,*
  298 F.R.D. 171 (S.D.N.Y. 2014)....................................................................................... 21

*In re Bridgepoint Educ., Inc. Sec. Litig.,*
  No. 12-cv-1737 JM (JLB), 2015 WL 224631 (S.D. Cal. Jan. 15, 2015) .................................. 16

*In re China Med. Corp. Sec. Litig.,*
  No. 8:11-1061-JST (ANx), 2013 WL 12126754 (C.D. Cal. May 16, 2013) ................ 17, 19

*In re Cooper Companies Inc. Sec. Litig.,*
  254 F.R.D. 628 (C.D. Cal. 2009) ...................................................................................... 18

*In re Diamond Foods, Inc.,*
  295 F.R.D. 240 (N.D. Cal. 2013 ....................................................................................... 17

*In re High-Tech Emp. Antitrust Litig.,*
  985 F. Supp. 2d 1167 (N.D. Cal. 2013) ............................................................................ 16

*In re Hyundai & Kia Fuel Econ. Litig.,*
  926 F.3d 539 (9th Cir. 2019)......................................................................................... 17, 18

*In re Illumina, Inc. Sec. Litig.,*
  No. 3:16-CV-3044-L-MSB, 2021 WL 1017295 (S.D. Cal. Mar. 17, 2021) ................................ 9

PLAINTIFF'S NOTICE OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; Case No. 19-cv-04801-JST

iv

*In re Immune Response Sec. Litig.*,
   497 F. Supp. 2d 1166 (S.D. Cal. 2007) ................................................................................. 7

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) ............................................................................... 6, 10, 24

*In re Mut. Funds Inv. Litig.*,
   No. 04-md-15861-CCB, 2010 WL 2342413 (D. Md. May 19, 2010) ............................... 21

*In re Netflix Privacy Litig.*,
   No. 5:11-CV-00379 EJD, 2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) .......................... 5

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2007) ...................................................................... 8, 13

*In re Rent-Way Sec. Litig.*,
   305 F. Supp. 2d 491 (W.D. Pa. 2003) ............................................................................... 8

*In re Syncor ERISA Litig.*,
   516 F.3d 1095 (9th Cir. 2008) ........................................................................................... 3

*In re Tableware Antitrust Litig.*,
   484 F. Supp. 2d 1078 (N.D. Cal. 2007) .......................................................................... 11

*In re Twitter Inc. Sec. Litig.*,
   326 F.R.D. 619 (N.D. Cal. 2018) .................................................................................... 15

*In re Tyco Int'l, Ltd.*,
   535 F. Supp. 2d 249 (D.N.H. 2007) .................................................................................. 7

*In re UTStarcom, Inc. Sec. Litig.*,
   No. C 04-04908 JW, 2010 WL 1945737 (N.D. Cal. May 12, 2010) ............................... 17

*In re Verisign, Inc. Sec. Litig.*,
   No. C 02-02270 JW, 2005 WL 7877645 (N.D. Cal. Jan. 13, 2005) ............................... 14

*In re Wireless Facilities, Inc. Sec. Litig.*,
   253 F.R.D. 630 (S.D. Cal. 2008) ................................................................................. 7, 16

*In re Xcel Energy, Inc., Sec., Deriv. & "ERISA" Litig.*,
   364 F. Supp. 2d 980 (D. Minn. 2005) ............................................................................... 7

*In re Zynga Inc. Sec. Litig.*,
   No. 12-CV-04007-JSC, 2015 WL 647117 (N.D. Cal. Oct. 27, 2015). ................. 17, 19, 20

*In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*,
   2672 CRB (JSC), 2016 WL 6248426 (N.D. Cal. Oct. 25, 2016) ..................................... 12

*Jaffe v. Morgan Stanley & Co., Inc.*,
   No. C 06-3903 TEH, 2008 WL 346417 (N.D. Cal. Feb. 7, 2008). .................................. 14

*Knox v. Yingli Green Energy Holding Co. Ltd.*,
   136 F. Supp. 3d 1159 (C.D. Cal. 2015) ............................................................................. 5

*Linney v. Cellular Alaska Partnership*,
   151 F.3d 1234 (9th Cir. 1998) ......................................................................................... 12

*Mild v. PPG Indus., Inc.*,
   No. 2:18-CV-04231-RGK-JEM, 2019 WL 3345714 (C.D. Cal. Jul. 25, 2019) ............... 5

*O'Connor v. Boeing N. Am., Inc.*,
   184 F.R.D. 311 (C.D. Cal. 1998) .................................................................................... 18

*Officers for Just. v. Civ. Serv. Comm'n of City & Cty. of San Francisco*,
   688 F.2d 615 (9th Cir. 1982) ..................................................................................... *passim*

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ........................................................................................... 25

*Rodriquez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ............................................................................................. 5

*Romero v. Producers Dairy Foods, Inc.*,
   No. 1:05cv0484 DLB, 2007 WL 3492841 (E.D. Cal. Nov. 14, 2007) .............................. 24

*Rosenburg v. I.B.M.*,
   No. CV06-00430PJH, 2007 WL 128232 (N.D. Cal. Jan. 11, 2007). ............................... 19

*Santoro v. Aargon Agency, Inc.*,
   252 F.R.D. 675 (D. Nev. 2008) ...................................................................................... 18

*Satchell v. Fed. Express Corp.*,
  No. C-03-2659 SI, 2007 WL 1114010 (N.D. Cal. Apr. 13, 2007)........................................... 6
*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003)....................................................................................... 15, 24
*Steiner v. Am. Broad. Co.*,
  248 F. App'x 780 (9th Cir. 2007) ...................................................................................... 25
*Stewart v. Applied Materials, Inc.*,
  No. 15-cv-02632-JST, 2017 WL 3670711 (N.D. Cal. Aug. 25, 2017) ................................ 13
*Stratton v. Glacier Ins. Adm'rs, Inc.*,
  No. 1:02-CV-06213 OWW DLB, 2007 WL 274423 (E.D. Cal. Jan. 29, 2007) ..................... 22
*Todd v. STAAR Surgical Co.*,
  CV-14-05263-MWF-RZ, 2017 WL 821662 (C.D. Cal. Jan. 5, 2017). .................................. 16
*Vataj v. Johnson*,
  No. 19-CV-06996-HSG, 2021 WL 1550478 (N.D. Cal. Apr. 20, 2021) .............................. 15
*Vikram v. First Student Management, LLC*,
  No. 17-cv-04656-KAW, 2019 WL 1084169 (N.D. Cal. March 7, 2019) ............................... 11
*Vinh Nguyen v. Radient Pharm. Corp.*,
  No. SACV 11-00406 DOC (MLGx), 2014 WL 1802293 (C.D. Cal. May 6, 2014)................... 10
*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002)......................................................................................... 24
*West v. Circle K Stores, Inc.*,
  No. CIV. S-04-0438 WBS GGH, 2006 WL 1652598 (E.D. Cal. Jun. 13, 2006)...................... 3
*Wolin v. Jaguar Land Rover N. Am., LLC*,
  617 F.3d 1168 (9th Cir. 2010)..................................................................................... 14, 15
*Wong v. Arlo Techs., Inc.*,
  No. 5:19-CV-00372-BLF, 2021 WL 1531171 (N.D. Cal. Apr. 19, 2021).......................... *passim*

**Statutes**

15 U.S.C. § 78u-4(a) ................................................................................................... 22, 25
28 U.S.C. §1715 ................................................................................................................. 21

**Other Authorities**

4 Newberg and Conte, NEWBERG ON CLASS ACTIONS § 14.6 (4th ed. 2007) ...................... 24

**Rules**

Fed. R. Civ. P. 23 ....................................................................................................... *passim*

### STATEMENT OF ISSUES TO BE DECIDED

1. Whether the proposed $2,250,000 cash settlement of this Action is within the range of fairness, reasonableness, and adequacy to warrant the Court's preliminary approval and the dissemination of notice of its terms to members of the proposed Settlement Class.

2. Whether the Settlement Class should be preliminarily certified for purposes of the Settlement.

3. Whether Plaintiff should be certified as Class Representative of the Settlement Class for purposes of the Settlement.

4. Whether Lead Counsel should be appointed Class Counsel for the Settlement Class for purposes of the Settlement.

5. Whether the Proposed Notice of Pendency and Proposed Settlement of Class Action, Summary Notice of Pendency and Proposed Settlement of Class Action, and Postcard Notice (collectively, "Notice"), and the Proof of Claim and Release Form ("Claim Form") and the manner for dissemination of the Notice and Claim Form to the Settlement Class should be approved.

6. Whether the Court should set a date for a hearing for final approval of the proposed Settlement, the proposed Plan of Allocation, and the application of Lead Counsel for an award of attorneys' fees and expenses and Compensatory Award to Plaintiff.

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.      PRELIMINARY STATEMENT**

The Parties have reached a proposed Settlement of this Action that resolves all claims against Defendants in exchange for a cash payment of $2,250,000 (the "Settlement Amount"). Lead Plaintiff Winston Derouin ("Lead Plaintiff" or "Plaintiff") submits that the proposed Settlement is a highly favorable result for the Settlement Class and warrants Court approval.

The Settlement was reached after contested litigation, and achieving a positive result for the Class was not guaranteed, particularly as the Court dismissed the Action and it was on appeal to the Ninth Circuit. At the time of the Settlement, Lead Counsel had: (i) conducted a comprehensive investigation before filing the Amended Class Action Complaint for Violations of the Federal Securities Laws (the "Amended Complaint"); (ii) filed an opposition to Defendants' motion to dismiss; (iii) filed an appeal of the Court's order granting the motion to dismiss; and (iv) drafted a comprehensive mediation statement. Plaintiff was highly involved in the litigation, reviewing the Amended Complaint and motion to dismiss briefing, evaluating the benefits of continuing with this Action on behalf of the Settlement Class, and approving the Settlement Amount.

On July 21, 2021, the Parties participated in the Ninth Circuit's Mediation Program before mediator Sasha M. Cummings, exchanging mediation statements prior to the mediation. The $2,250,000 Settlement is the result of arm's-length negotiations conducted by experienced counsel, assisted by an experienced court-appointed mediator, and with sufficient information to evaluate the sufficiency of the Settlement in light of the risks and uncertainties of continued litigation. The Settlement is in line with the median settlement for securities class actions as a percentage of the Settlement Class's estimated recoverable damages under even the best-case scenario.[2] The Court should preliminarily approve the Settlement, order notice be distributed to members of the Settlement Class, and schedule a Final Approval Hearing.

---

[2] *Compare* Ex. 2 (Janeen McIntosh and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2020 Full-Year Review* (NERA Jan. 25, 2021) at p. 20, Fig. 16 (median recovery in securities class actions in 2020 was approximately 1.7% of estimated damages)) *with* ¶22 (estimated 1.24% recovery of *maximum* damages recoverable in this case).

PLAINTIFF'S NOTICE OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; Case No. 19-cv-04801-JST

1

## II.      SUMMARY OF THE LITIGATION AND PROCEDURAL HISTORY

This Action was brought on behalf of persons who purchased or otherwise acquired NetApp securities from May 23, 2019 to August 1, 2019, inclusive ("Settlement Class Period") for alleged violations of §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act").

NetApp issued a revenue guidance range on May 22, 2019 for the first quarter of fiscal year 2020 ("Q1 2020") and for full fiscal year 2020. On June 18, 2019, NetApp issued an annual report on Form 10-K ("2019 10-K") in which it warned about the potential negative consequences to its finances if its largest customers pushed out or cancelled their orders. The Amended Complaint alleges that Defendants knew that the May 22, 2019 forecast was false when made, further alleging that when Defendants issued their 2019 10-K, they knew or recklessly disregarded that the warning they published about large customers pushing out or cancelling their orders had actually materialized, but failed to disclose this to investors.

On August 1, 2019, Defendants issued a press release, attached to a Form 8-K, stating that NetApp would miss its quarterly revenue guidance range by up to $243 million, and that investors should no longer rely on the Company's May 22, 2019 guidance for full fiscal year 2020. Defendants further stated that there was a deterioration in close rates against its sales pipeline with its largest customers pushing out or downsizing orders in the second half of Q1 2020, which started on June 10, 2019. In response to this news, on August 1, 2019 NetApp's share price dropped by $11.67, over 20%, falling from $57.71 to $46.04.

This Action was commenced on August 14, 2019, alleging violations of §§10(b) and 20(a) of the Exchange Act (Dkt. No. 1). On October 15, 2019, Derouin moved for appointment as lead plaintiff and approval of lead counsel. (Dkt. No. 20). On November 12, 2019, the Court granted his motion, appointing Derouin as Lead Plaintiff, and appointing The Rosen Law Firm, P.A. ("Rosen Law") as Lead Counsel. (Dkt. No. 36). On January 24, 2020, Lead Plaintiff filed the Amended Complaint (Dkt. No. 41). On March 26, 2020, Defendants filed their motion to dismiss the Amended Complaint (Dkt. No. 42). The motion to dismiss was fully briefed on July 9, 2020. (Dkt. No. 52). The Court dismissed the case in its entirety on February 1, 2021 (Dkt. No. 58), and judgment was

1  entered on February 26, 2021 (Dkt. No. 59). Plaintiff filed his Notice of Appeal on March 26, 2021

2  (Dkt. No. 60).

3      The Parties participated in a mediation on July 21, 2021, through the Ninth Circuit's

4  mediation program. The Parties agreed in principle to resolve the claims asserted in the Action for

5  $2.25 million in return for a release of all claims against the Defendants.

6  **III.    THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL**

7          **A.    Standards for Preliminary Approval**

8      As a matter of public policy, courts encourage parties to complex class actions to resolve

9  cases through settlement. *See In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) ("there

10  is a strong judicial policy that favors settlements, particularly where complex class action litigation

11  is concerned").

12      Rule 23(e) requires court approval for settlement of a class action. The Court first determines

13  whether a proposed settlement deserves preliminary approval, and then, after notice is given to class

14  members, whether final approval is warranted. *See, e.g.*, *West v. Circle K Stores, Inc.*, No. CIV. S-

15  04-0438 WBS GGH, 2006 WL 1652598, at *2 (E.D. Cal. Jun. 13, 2006). "The Court's task at the

16  preliminary approval stage is to determine whether the settlement falls 'within the range of possible

17  approval.'" *Booth v. Strategic Realty Tr., Inc*., No. 13-cv-04921-JST, 2015 WL 3957746, at *6

18  (N.D. Cal. Jun. 28, 2015) (quotation omitted). Courts grant preliminary approval where the

19  settlement "(1) appears to be the product of serious, informed, non-collusive negotiations; (2) does

20  not grant improper preferential treatment to class representatives or other segments of the class; (3)

21  falls within the range of possible approval; and (4) has no obvious deficiencies." *Ang v. Bimbo

22  Bakeries USA, Inc.*, No. 13-CV-01196-HSG, 2020 WL 2041934, at *4 (N.D. Cal. Apr. 28, 2020).

23  Pursuant to Rule 23(e)(1), preliminary approval turns on whether the Court "will likely be able to:

24  (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on

25  the proposal." Rule 23(e)(2)—which governs final approval—requires courts evaluating if a

26  proposed settlement is fair, reasonable, and adequate to consider whether:

27          (A) the class representatives and class counsel have adequately represented the
             class; (B) the proposal was negotiated at arm's length; (C) the relief provided for
28           the class is adequate, taking into account: (i) the costs, risks, and delay of trial and

appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

The Rule 23(e)(2) factors focus on core concerns of procedure and substance of a settlement, but are not intended to displace factors previously adopted to evaluate settlements. *Wong v. Arlo Techs., Inc.*, No. 5:19-CV-00372-BLF, 2021 WL 1531171, at *5 (N.D. Cal. Apr. 19, 2021). The Ninth Circuit has identified the following factors to evaluate whether a settlement falls within the range of possible approval and should be preliminarily approved: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.[3] *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *accord Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir.2004); *see also Wong,* 2021 WL 1146042, at *6 (recognizing Rule 23(e)'s considerations "overlap with certain *Hanlon* factors.").

As detailed herein, the proposed Settlement satisfies the requirements under Rule 23(e)(2) as well as the *Hanlon* factors.

**B.      The Settlement is Fair, Reasonable, and Adequate in Light of the Rule 23(e)(2) and Ninth Circuit Factors**

**1.      Plaintiff and Lead Counsel Have Provided Adequate Representation**

Courts must consider whether the "class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). The Ninth Circuit imposes on courts to resolve two questions to determine "legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members[;] and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020.

---

[3] The "governmental participant" factor is inapplicable here, and it is not possible to evaluate the Settlement Class Members' reaction to the Settlement at this time as notice has not yet been disseminated. Lead Plaintiff will address the eighth factor in his motion for final approval.

Plaintiff and Lead Counsel adequately represented the Settlement Class. Plaintiff has no antagonistic interests to other class members, his claims are typical of Settlement Class Members' claims, and Plaintiff's interest in obtaining the largest possible recovery for NetApp investors is aligned with the other Settlement Class Members. *Mild v. PPG Indus., Inc.*, No. 2:18-CV-04231-RGK-JEM, 2019 WL 3345714, at *3 (C.D. Cal. Jul. 25, 2019) ("Because Plaintiff's claims are typical of and coextensive with the claims of the Settlement Class, his interest in obtaining the largest possible recovery is aligned with the interests of the rest of the Settlement Class members."). Further, Plaintiff worked closely with Lead Counsel throughout the pendency of this Action to achieve the best possible result for himself and the Settlement Class.

Plaintiff retained highly experienced securities litigation counsel with a successful track record of representing investors in similar cases. *See* Rosen Law Firm Resume (Dkt. No. 21-4); *Knox v. Yingli Green Energy Holding Co. Ltd*., 136 F. Supp. 3d 1159, 1165 (C.D. Cal. 2015) ("The Rosen Law Firm is 'highly qualified [and] experienced' in securities class actions"). Lead Counsel prosecuted the Settlement Class's claims vigorously, obtaining a $2,250,000 for the Settlement Class's benefit following a dismissal order.

> ### 2.     The Settlement is the Product of Arms-Length Negotiations Overseen by an Experienced Mediator

Rule 23(e)(2)(B) requires procedural fairness: that "the proposal was negotiated at arm's length."[4] Since the Settlement was reached prior to class certification, courts in the Ninth Circuit "must also ensure that the class settlement is not the 'product of collusion among the negotiating parties.'" *Wong*, 2021 WL 1531171, at *6. The Ninth Circuit and district courts within the circuit, "put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution." *Rodriquez v. W. Publ'g Corp*., 563 F.3d 948, 965 (9th Cir. 2009); *In re Netflix Privacy Litig.*, No. 5:11-CV-00379 EJD, 2013 WL 1120801, at *4 (N.D. Cal. Mar. 18, 2013) ("Courts have afforded a presumption of fairness and reasonableness of a settlement agreement where that agreement was the

---

[4] Rule 23(e)(2)(A)-(B)'s considerations overlap with certain *Hanlon* factors, "such as the non-collusive nature of negotiations, the extent of discovery completed, and the stage of proceedings." *Wong*, 2021 WL 1146042, at *6 (citing *Hanlon*, 150 F.3d at 1026).

product of non-collusive, arms' length negotiations conducted by capable and experienced counsel"). Indeed, "[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *Satchell v. Fed. Express Corp.*, No. C-03-2659 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007).

After filing the Notice of Appeal, Lead Counsel engaged in settlement negotiations with Defendants' Counsel, and the Parties participated in the Ninth Circuit's mediation program, exchanging detailed mediation statements. During the mediation, Lead Counsel zealously negotiated for the best possible result for Settlement Class Members. The Parties realistically assessed their options and the likelihood of success, including the chance for Lead Plaintiff to revive the Amended Complaint on appeal, each determining that the Settlement was in their best interests. The mediation was successful and ended with an agreement in principle to settle the Action.

### 3. The Settlement is a Favorable Result for the Settlement Class in Light of its Benefits and the Risks of Continued Litigation

Pursuant to Rule 23(e)(2)(C), the Court must also consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal" along with other relevant factors. Fed. R. Civ. P. 23(e)(2)(C)(i).[5] Each of these factors supports preliminary approval of the Settlement.

#### (a) The Strength of Plaintiff's Case and the Risk, Expense, Complexity, and Likely Duration of Continued Litigation

In assessing whether the proposed Settlement is fair, reasonable, and adequate, the Court must balance the continuing risks of litigation, including the strengths and weaknesses of the case, and the complexity, expense, and likely duration of continued litigation, against the benefits afforded to the Settlement Class, including the immediacy and certainty of a financial recovery. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458, 459 (9th Cir. 2000), as amended (June 19, 2000); *Officers for Just. v. Civ. Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir.

---

[5] Rule 23(e)(2)(C)(i) essentially incorporates three of the traditional *Hanlon* factors: the strength of plaintiff's case (first factor); the risk, expense, complexity, and likely duration of further litigation (second factor) and; the risks of maintaining class action status through the trial (third factor). *Wong*, 2021 WL 1146042, at *8 (citing *Hanlon*, 150 F.3d at 1026).

1982). The risks of continued litigation are considerable. The PSLRA made the pleading stage of securities litigation a "technical and demanding corner of the law." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). The Court dismissed the Amended Complaint for failing to plead scienter and it "needs to look no further than its own order dismissing the shareholder … litigation to assess the risks involved." *In re Xcel Energy, Inc., Sec., Deriv. & "ERISA" Litig*., 364 F. Supp. 2d 980, 1003 (D. Minn. 2005). It is uncertain whether the Ninth Circuit would reverse the Court's dismissal, and even if it did, there are substantial risks to success at class certification, summary judgment, and trial.

Defendants deny any wrongdoing, and would present a multi-pronged defense to Plaintiff's claims should the appellate court reverse the dismissal, as they did in their motion to dismiss. Plaintiff and Lead Counsel believe that the case has substantial merit, but recognize the significant risk and expense necessary to prosecute Plaintiff's claims successfully through a hearing on class certification, completion of fact and expert discovery, summary judgment, trial, and subsequent appeals, as well as the inherent difficulties and delays complex litigation like this entails. *See, e.g*., *In re Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 612 (S.D. Cal. 2008) (preliminarily approving settlement where "[l]iability remains uncertain" as "it appears to the Court that plaintiffs have a viable claim regarding the alleged securities fraud and Defendants have a viable defense against such claims"); *In re Immune Response Sec. Litig*., 497 F. Supp. 2d 1166, 1172 (S.D. Cal. 2007) (approving settlement and noting that "the Court also recognizes that the issues of scienter and causation are complex and difficult to establish at trial."). Proving loss causation and damages would also be risky, complicated, and uncertain, involving conflicting expert testimony. *In re Tyco Int'l, Ltd*., 535 F. Supp. 2d 249, 260-61 (D.N.H. 2007) ("Proving loss causation would be complex and difficult. Moreover, even if the jury agreed to impose liability, the trial would likely involve a confusing 'battle of the experts' over damages.").

Continued litigation would be complex, uncertain, costly, and lengthy, requiring depositions, expert designation and discovery, briefing and arguing motions for summary judgment, and an expensive and risky trial. Any judgment favorable to the Settlement Class would be the subject of post-trial motions and appeal, which could prolong the case for years with the ultimate outcome

uncertain. By contrast, the Settlement provides a favorable, immediate recovery and eliminates the risk, delay, and expense of continued litigation. Evaluating the benefits of settlement must be tempered by recognizing that any compromise involves concessions on the part of all settling parties. "The very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice*, 688 F.2d at 624 (citation omitted).

   **(b)**   **Risk of Maintaining Class Action Status Throughout Trial**

   The Settlement was reached before Plaintiff moved for class certification. While Plaintiff believes that class certification would be appropriate (*see* Section IV, *infra*), courts sometimes deny class certification, and Rule 23 allows a class certification order to be altered or amended at any time before a decision on the merits. *See e.g.*, *In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) ("there is no guarantee the [class] certification would survive through trial, as Defendants might have sought decertification or modification of the class"). "While this may not be a particularly weighty factor, on balance it somewhat favors approval of the proposed Settlement." *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 506-07 (W.D. Pa. 2003).

   **4.**   **The Remaining Rule 23(e)(2)(C) Factors Support the Settlement's Approval**

   Under Rule 23(e)(2)(C), courts also must consider whether the relief provided for the class is adequate. Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv). This factor weighs in support of the Settlement.

   **(a)**   **Rule 23(e)(2)(C)(ii) – The Methods of Distributing Relief and of Processing Claims**

   The method for distributing relief to eligible claimants and for processing Settlement Class Members' claims includes standard, well-established, and effective procedures for processing claims and efficiently distributing the Net Settlement Fund. Lead Counsel selected Strategic Claims Services ("SCS") as the Claims Administrator, subject to Court approval. If approved, SCS will process claims under Lead Counsel's guidance, allow Claimants an opportunity to cure any deficiencies or request the Court to review a denial of their Claim(s), and mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund (pursuant to the Plan). The method

---

PLAINTIFF'S NOTICE OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; Case No. 19-cv-04801-JST

8

1  proposed here is both effective and necessary, as neither Plaintiff nor Defendants possess the

2  individual investor trading data required for a process to distribute the Net Settlement Fund.[6]

3  **(b)      Rule 23(e)(2)(C)(iii) – Proposed Attorneys' Fees**

4       The Notice states Lead Counsel will apply for attorneys' fees not to exceed 25% of the

5  Settlement for compensation for the services rendered on the Settlement Class's behalf. As

6  discussed in detail below (*see* Section VIII, *infra*), a proposed attorneys' fee of up to 25% of the

7  Settlement Fund is reasonable in light of the work required to reach the Settlement. *Wong*, 2021 WL

8  1531171, at *11 (collecting cases granting 25% attorneys' fees award.). Approval of the requested

9  attorneys' fees is separate from approval of the Settlement, and the Settlement may not be terminated

10  based on any ruling with respect to attorneys' fees. Stipulation ¶8.4**.**

11  **(c)      Rule 23(e)(2)(C)(iv) – Identification of Agreements**

12       The Parties agreed to a standard supplemental agreement providing that if Settlement Class

13  Members opt out such that the number of shares opting out equals or exceeds a certain amount,

14  Defendants shall have the option to terminate the Settlement. Stipulation ¶2.15. As is standard

15  practice in securities class actions, the supplemental agreement is identified in the Stipulation, but

16  its terms are confidential to avoid creating incentives for a small group of class members to opt out

17  solely to leverage the threshold to exact an individual settlement. *See Hefler v. Wells Fargo & Co.*,

18  No. 16-CV-05479-JST, 2018 WL 4207245, at *11 (N.D. Cal. Sept. 4, 2018) ("The existence of a

19  termination option triggered by the number of class members who opt out of the Settlement does

20  not by itself render the Settlement unfair."); *In re Illumina, Inc. Sec. Litig.*, No. 3:16-CV-3044-L-

21  MSB, 2021 WL 1017295, at *4 (S.D. Cal. Mar. 17, 2021). Thus, "[t]his type of agreement is

22  standard in securities class action settlements and has no negative impact on the fairness of the

23

24

25

26

---

27  [6] This is a claims-free, not a claims-made settlement. Defendants will not have any right to the return
of a portion of the Settlement based on the number or value of the Claims submitted. Stipulation

28  ¶2.3.

Settlement." *Christine Asia Co. v. Yun Ma*, No. 1:15-md-02631 (CM) (SDA), 2019 WL 5257534, at *15 (S.D.N.Y. Oct. 16, 2019).

### 5.   The Proposed Settlement Does Not Unjustly Favor Any Settlement Class Members, Including Plaintiff

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement treats class members equitably relative to one another. The Settlement does not offer preferential treatment to any Settlement Class Member, segment of the Settlement Class, or to Plaintiff. The Plan of Allocation ("Plan") in the proposed Long Notice provides for distribution of the Net Settlement Fund to Settlement Class Members who suffered losses on their NetApp transactions during the Settlement Class Period, based on when Settlement Class Members purchased, acquired, and/or sold shares of NetApp common stock, as developed by Plaintiff's damages consultant. *See* Long Notice, pp. 5-9. This ensures that Settlement Class Members' recoveries are based upon the relative losses sustained.

Plaintiff will receive a distribution from the Net Settlement Fund in accordance with the Plan in the same manner as all other Settlement Class Members. *Vinh Nguyen v. Radient Pharm. Corp.*, No. SACV 11-00406 DOC (MLGx), 2014 WL 1802293, at *5 (C.D. Cal. May 6, 2014) ("A settlement in a securities class action case can be reasonable if it 'fairly treats class members by awarding a pro rata share to every Authorized Claimant, but also sensibly makes interclass distinctions based upon, *inter alia*, the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue.'"). Plaintiff will also seek reimbursement of costs (including lost wages) incurred as a result of his representation of the Settlement Class, as authorized by the PSLRA. *Hefler*, 2018 WL 4207245, at *10; *see also Mego*, 213 F.3d at 454 (affirming reimbursement to class representative in securities class action).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

6.      **The Remaining *Hanlon* Factors Favor Preliminary Approval**

The Ninth Circuit in *Hanlon*, and its progeny, identified factors that are not co-extensive with Rule 23(e)(2)'s additional, new factors.[7] These factors, viewed in light of the Rule 23(e)(2) factors identified above, support preliminary approval.

(a)      **The Amount Offered in Settlement**

"To evaluate the adequacy of the settlement amount, 'courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer.'" *Hefler*, 2018 WL 4207245, at *9 (quoting *In re Tableware Antitrust Litig.,* 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007)). The adequacy of the amount offered in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig*., 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987). A settlement must be evaluated in the context recognizing that parties must make compromises to reach an agreement. *Officers*, 688 F.2d at 624 (citation omitted); *Vikram v. First Student Management, LLC*, No. 17-cv-04656-KAW, 2019 WL 1084169, at *3 (N.D. Cal. March 7, 2019) ("This determination 'requires evaluating the relative strengths and weaknesses of the plaintiffs' case; it may be reasonable to settle a weak claim for relatively little, while it is not reasonable to settle a strong claim for the same amount.'").

The $2,250,000 Settlement Amount is within the range of reasonableness and warrants preliminary approval of the Settlement and issuance of notice to the Settlement Class. Pursuant to the proposed Plan, the estimated average recovery, before deducting Court-approved fees and expenses and notice and claims administration costs, will be approximately $0.08 per damaged share. ¶20. The $2,250,000 recovery represents approximately 1.24% of estimated maximum damages of $181.7 million that is potentially available in this Action under Plaintiff's best-case scenario, assumes that: (i) the Court certified the same class period as the Settlement Class Period;

---

[7] Although courts within the Ninth Circuit have recognized that Rule 23(e)(2)(A)-(B)'s considerations overlap with certain *Hanlon* factors, such as the extent of discovery completed and the experience and view of counsel, these factors are briefed separately below.

(ii) Plaintiff was able to secure a reversal on appeal of the motion to dismiss decision, succeed at summary judgment, then convince a jury that liability was proven; and (iii) the Court and jury accepted Plaintiff's damages theory, including proof of loss causation. Anything less than a complete victory would decrease, or potentially eliminate, recoverable damages, and Defendants contested each element.

In the light of these risks, the recovery percentage is reasonable and well within the range of other securities class action settlements with similar total damages. According to NERA Economic Consulting, for 2020, the median recovery in securities class actions was approximately 1.7% of estimated damages. *See* Ex. 2. Moreover, "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *Officers for Justice*, 688 F.2d at 628. "The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved.'" *Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1242 (9th Cir. 1998) (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 & n. 2 (2d Cir. 1974)).

### (b)      The Extent of Discovery and the Stage of Proceedings

In considering a class action settlement, courts look for indications that the parties carefully investigated the claims before reaching a resolution. *e.g.*, *In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 2672 CRB (JSC), 2016 WL 6248426, at *13-*14 (N.D. Cal. Oct. 25, 2016) (commenting that formal discovery is "not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement").

Lead Counsel conducted an extensive investigation of the claims asserted in this Action, including: (i) a detailed review of NetApp's U.S. Securities Exchange Commission ("SEC") filings, press releases, conference calls, news reports, blog postings, and other public statements made by Defendants prior to, during, and after the Settlement Class Period; (ii) a detailed review of public documents, reports, announcements, and news articles concerning NetApp; (iii) a detailed review of research reports by securities and financial analysts; (iv) a detailed review of economic analyses of stock price movement and pricing data; (v) through a private investigator, conducting numerous

1   fact interviews with former employees and other third parties; and (vi) a detailed review and analysis

2   of other publicly available material and data. As part of this investigation, Lead Counsel also

3   consulted with a damages expert. *See* ¶23(a)(i).

4       In drafting the Amended Complaint and opposing Defendants' motion to dismiss, Lead

5   Counsel conducted extensive legal research. Following the Court's dismissal of the Action, Lead

6   Counsel conducted additional research and investigation to ascertain the potential viability of

7   amendment before deciding to file an appeal and, later, agreeing to the Settlement. Lead Counsel's

8   efforts allowed them to make an informed assessment of the strengths and weaknesses of this

9   Action, essential to determining on behalf of the Settlement Class whether to settle. The Parties'

10  settlement negotiations further informed Lead Counsel about the strengths and weaknesses of the

11  potential class's claims in this Action and Defendants' defenses to those claims. As a result, the

12  Parties and their counsel have a sufficient basis to make informed decisions about the relative merits

13  and weakness of this Action and the fairness of the Settlement.

14              **(c)      Experienced Counsel's Recommendations**

15       Courts also give weight to the opinion of experienced and informed counsel supporting the

16  settlement. *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2007) ("[t]he

17  recommendations of plaintiffs' counsel should be given a presumption of reasonableness")

18  (quotation omitted); *accord Stewart v. Applied Materials, Inc.*, No. 15-cv-02632-JST, 2017 WL

19  3670711, at *6 (N.D. Cal. Aug. 25, 2017) (same). Lead Counsel has extensive securities litigation

20  experience and obtained a thorough understanding of the Action's merits and risks. Lead Counsel's

21  belief in the fairness and reasonableness of this Settlement supports preliminary approval of the

22  Settlement. Defendants are represented by skilled securities practitioners at Wilson Sonsini

23  Goodrich & Rosati Professional Corporation. Defense Counsel is equally well-informed regarding

24  the case, and their representation of Defendants was no less rigorous than Lead Counsel's

25  representation of the Settlement Class. Preliminary approval is warranted because the Settlement is

26  the product of serious, informed, and non-collusive negotiations among experienced counsel and a

27  highly qualified mediator.

28

---

**IV.    THE COURT SHOULD CERTIFY THE CLASS FOR SETTLEMENT PURPOSES**

This Action satisfies all the factors for certification of a class.[8] At the preliminary approval stage, and solely for the purpose of the Settlement, the Court needs to consider whether the certification of the Settlement Class is appropriate. *Hanlon*, 150 F.3d at 1019; *Jaffe v. Morgan Stanley & Co., Inc.*, No. C 06-3903 TEH, 2008 WL 346417, at *2 (N.D. Cal. Feb. 7, 2008). Rule 23(a) includes four requirements for class certification: (i) numerosity; (ii) commonality; (iii) typicality; (iv) adequacy of representation. *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010). In addition, the Court must find that at least one of the three conditions of Rule 23(b) is satisfied. *Id*. Under subsection (b)(3), the Court must find that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. *Id*.; *Jaffe*, 2008 WL 346417, at *7.

The Ninth Circuit, and courts throughout, find that securities fraud actions are generally amenable to class action treatment. *See, e.g., Blackie v. Barrack*, 524 F.2d 891, 902-03 (9th Cir. 1975), *cert. denied*, 429 U.S. 816 (1976). "[T]he Ninth Circuit and courts in this district hold a liberal view of class actions in securities litigation." *In re Adobe Sys., Inc. Sec. Litig*., 139 F.R.D. 150, 152-53 (N.D. Cal. 1991) (citation omitted); *In re Verisign, Inc. Sec. Litig*., No. C 02-02270 JW, 2005 WL 7877645, at *9 (N.D. Cal. Jan. 13, 2005) ("Class actions are particularly well-suited in the context of securities litigation, wherein geographically dispersed shareholders with relatively small holdings would otherwise have difficulty in challenging wealthy corporate defendants."). The Court should certify the Settlement Class.

---

[8] The proposed Settlement Class consists of "all persons and entities who purchased or otherwise acquired the publicly traded securities of NetApp between May 23, 2019 and August 1, 2019, both dates inclusive." Stipulation, ¶1.37. Excluded from the Settlement Class are Defendants, the officers and directors of NetApp, members of the Individual Defendants' immediate families and their legal representatives, heirs, successors, or assigns and any entity in which the Individual Defendants have or had a controlling interest. Also excluded from the Settlement Class are all putative members of the Settlement Class who exclude themselves by filing a valid and timely request for exclusion, and Persons with no compensable damages. *Id.*

1

     **A.**      **Numerosity is Satisfied**

2         Rule 23(a)(1) requires the class to be so large that joinder of all members is impracticable.

3 "As a general rule, classes numbering greater than forty individuals satisfy the numerosity

4 requirement.'" *Barnes v. AT&T Pension Benefit Plan*, 270 F.R.D. 488, 493 n.2 (N.D. Cal. 2010).

5 Courts routinely find that the trading of stock on a national exchange, such as NetApp trading on

6 NASDAQ, supports class certification. *See e.g., In re Twitter Inc. Sec. Litig.*, 326 F.R.D. 619, 626

7 (N.D. Cal. 2018) ("The Court certainly may infer that, when a corporation has millions of shares

8 trading on a national exchange.") (citation omitted); *Vataj v. Johnson*, No. 19-CV-06996-HSG,

9 2021 WL 1550478, at *4 (N.D. Cal. Apr. 20, 2021) ("numerosity is satisfied here because joinder

10 of the thousands of estimated class members would be impracticable" in securities action). Potential

11 Settlement Class Members likely number in the thousands and are located throughout the United

12 States. A group this large and geographically diverse supports class action treatment. *Hodges v.*

13 *Akeena Solar, Inc.*, 274 F.R.D. 259, 266 (N.D. Cal. 2011).

14

     **B.**      **There Are Substantial Common Questions of Law and Fact**

15         A proposed settlement class has sufficient commonality to justify certification where there

16 are substantial questions of law and fact common to the class. *See Wolin*, 617 F.3d at 1172. Rule

17 23(a)(2) should be construed permissibly, such that "[a]ll questions of fact and law need not be

18 common to satisfy the rule." *Hanlon*, 150 F.3d at 1019. A class has sufficient commonality where

19 there is "[t]he existence of shared legal issues with divergent factual predicates" or "a common core

20 of salient facts coupled with disparate legal remedies within the class." *Hanlon*, 150 F.3d at 1019;

21 *accord Staton v. Boeing Co.*, 327 F.3d 938, 953 (9th Cir. 2003).

22         Here, questions common to the proposed Class include, among others: (i) whether

23 Defendants' alleged acts violated the federal securities laws; (ii) whether Defendants' statements to

24 the investing public during the Class Period misrepresented material facts about NetApp; (iii)

25 whether the price of NetApp's common stock was artificially inflated during the Class Period; and

26 (iv) to what extent the members of the Class have sustained damages and the proper measure of

27 such damages. Securities actions containing such common questions are prime candidates for class

28 certification. *See, e.g., Vataj*, 2021 WL 1550478, at *5; *Wong*, 2021 WL 1531171, at *4. Because

PLAINTIFF'S NOTICE OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; Case No. 19-cv-04801-JST

15

the core complaint of all class members is that they purchased NetApp common stock at artificially inflated prices and suffered damages as a result of the alleged securities violations, the commonality requirement of Rule 23(a)(2) is satisfied. *See In re Wireless Facilities, Inc. Sec. Litig.*, 253 F.R.D. 630, 635 (S.D. Cal. 2008) (finding "core issue" in a securities litigation to be plaintiff's acquisition of "[defendant's] common stock at artificially inflated prices").

### C.  Plaintiff's Claims Are Typical of Other Settlement Class Members

Under Rule 23(a)(3)'s "permissive standards," a representative's claims are "'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *In re High-Tech Emp. Antitrust Litig*., 985 F. Supp. 2d 1167, 1181 (N.D. Cal. 2013). Typicality is routinely satisfied in securities fraud actions where, as here, "plaintiffs have bought and sold stock for investment purposes, subject to the same information and representations as the market at large." *Todd v. STAAR Surgical Co*., CV-14-05263-MWF-RZ, 2017 WL 821662, at *5 (C.D. Cal. Jan. 5, 2017).

Like other Settlement Class Members, Plaintiff purchased NetApp securities during the Settlement Class Period and was subsequently damaged due to Defendants' conduct. The other members of the Settlement Class were allegedly affected in the same way. Similarly, Plaintiff's interest in obtaining a fair, reasonable, and adequate settlement of the claims asserted is identical to the interests of the remaining Settlement Class Members. Under the proposed Plan, Plaintiff will receive a *pro rata* share of the Settlement Fund, as will the rest of the Settlement Class. Accordingly, the typicality requirement is met. *In re Bridgepoint Educ., Inc. Sec. Litig.*, No. 12-cv-1737 JM (JLB), 2015 WL 224631, at *5 (S.D. Cal. Jan. 15, 2015) ("Here, Plaintiffs' claims arise from the same events and conduct that gave rise to the claims of other class members. They are, therefore, typical of the class.").

### D.  Plaintiff and Lead Counsel Adequately Represent the Settlement Class

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." "The two key inquiries are (1) whether there are conflicts within the class; and (2) whether plaintiffs and counsel will vigorously fulfill their duties to the class. The adequacy inquiry also 'factors in competency and conflicts of class counsel.'" *In re Diamond Foods, Inc*., 295

PLAINTIFF'S NOTICE OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; Case No. 19-cv-04801-JST

16

F.R.D. 240, 252 (N.D. Cal. 2013). Plaintiff has prosecuted this Action, negotiated with Defendants through counsel, and approved the Settlement for the benefit of all Settlement Class Members. Moreover, Plaintiff is represented by qualified counsel with extensive experience in the prosecution of securities class actions. Thus, the requirements of Rule 23(a)(4) are met.

### E.      The Settlement Class Meets Rule 23(b)(3) Requirements

Plaintiff must satisfy one of the three elements of Rule 23(b). Plaintiff seeks certification under Rule 23(b)(3), alleging that common questions predominate over any individual issues that may exist in this case. A class action may be maintained if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. R. 23(b)(3). Both requirements are satisfied.

The Ninth Circuit is clear that "criteria for class certification are applied differently in litigation classes and settlement classes." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019). When deciding whether to certify a settlement class, the Court's concern is the class definition. *Id.* at 556–557. Because there will be no trial, manageability at trial is not an issue. In this case, as in many securities cases, the Settlement Class definition is straightforward, and this Court should find that the Settlement Class satisfies Rule 23(b)(3)'s requirements.

### 1.      Predominance is Satisfied

"Rule 23(b)(3) requires 'predominance of common questions over individual ones,' such that 'the adjudication of common issues will help achieve judicial economy.'" *In re Zynga Inc. Sec. Litig.*, No. 12-CV-04007-JSC, 2015 WL 6471171, at *7 (N.D. Cal. Oct. 27, 2015). Predominance "is readily met in securities fraud cases." *In re UTStarcom, Inc. Sec. Litig.*, No. C 04-04908 JW, 2010 WL 1945737, at *9 (N.D. Cal. May 12, 2010); *In re China Med. Corp. Sec. Litig.*, No. 8:11-1061-JST (ANx), 2013 WL 12126754, at *5 (C.D. Cal. May 16, 2013) ("Plaintiff's claims under federal securities laws entail nothing but common questions and issues for the class.").

That Settlement Class Members hold different amounts of NetApp stock does not defeat predominance. In determining whether common questions predominate, the primary inquiry is on

the issue of liability, not the calculation of damages. *Santoro v. Aargon Agency, Inc.*, 252 F.R.D. 675, 684 (D. Nev. 2008) (holding that "the potential need to determine individual damages does not defeat the economy that would be achieved by certifying the case as a class action, at least as to the issue of liability"). While the amount of damages may differ among members of the Settlement Class, liability and the proper measure of damages can be determined on a class-wide basis. *In re Cooper Companies Inc. Sec. Litig.*, 254 F.R.D. 628, 640 (C.D. Cal. 2009) ("[T]he critical questions of what Defendants said, what they knew, what they withheld, and with what intent they acted, are central to all class members' claims.... Issues such as certain members' damages, timing of sales and purchases, or standing to file suit, do not have the same primacy"). Predominance is satisfied.

### 2.    Superiority is Satisfied

Rule 23(b)(3) also requires that a class action would be a superior method of adjudicating Plaintiff's and the Settlement Class Members' claims. For certification of a settlement class, the Supreme Court held that a court does not need to consider whether there would be manageability issues at trial since a proposed settlement would avoid the need for trial. *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Rather, consideration is required to evaluate the class definition to ensure that it is not "unwarranted or overbroad." *Id.* The Ninth Circuit has followed suit recognizing class certification for litigation classes and settlement-only classes differ and that the latter require "heightened attention to the definition of the class." *Hyundai.*, 926 F.3d at 556-57. A class definition is approvable "if the description of the class is definite enough so that it is administratively feasible for the court to ascertain whether an individual is a member." *O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998). Although the Court must assess the class definition, for securities class actions settlements there are rarely any definitional issues as proposed classes for these types of actions are definite and ascertainable. *See Booth*, 2015 WL 3957746, at *3 ("class definition contained in the Settlement Agreement satisfies the ascertainability requirement, as the class consists of individuals who purchased [company] stock within a discrete time period."). Here, the proposed class is clearly defined as NetApp investors who purchased publicly traded common stock during a finite period. Thus, the class definition is proper for certification at settlement.

1    The remaining superiority factors support class action treatment as it would be economically

2    and judicially efficient having similar actions heard in one court. Further, a class action avoids the

3    duplication of efforts and inconsistent rulings. *See Zynga*, 2015 WL 6471171, at *7 (if shareholders

4    "each brought individual actions, they would each be required to prove the same wrongdoing to

5    establish Defendants' liability. Different courts could interpret the claims different, resulting in

6    inconsistent rulings or unfair results."); *China Medicine*, 2013 WL 12126754, at *5 ("where the

7    damages each plaintiff suffered are not that great, this factor weighs in favor of certifying a class

8    action."). By avoiding the possibility of repetitious, expensive litigation and efficiently resolving

9    the claims of the entire Settlement Class at once, this action satisfies the superiority requirement.

10    Because this action meets the Rule 23(a) and (b)(3) requirements, the Court should certify

11    the Settlement Class for purposes of this Settlement.

12    **V.      THE PLAN OF ALLOCATION IS FAIR AND REASONABLE**

13    Plaintiff also seeks preliminary approval of the Plan for the Net Settlement Fund. *See* Long

14    Notice, pp. 5-9. The proposed Plan was drafted with the assistance of Plaintiff's damages consultant

15    and is comparable to plans of allocation approved in numerous other securities class actions. The

16    Plan allocates the Net Settlement Fund among Settlement Class Members who submit valid Claims

17    Forms (or whose Claim Form is otherwise accepted by the Court) on a *pro rata* basis based on the

18    amount of each Claimant's Recognized Claim. The formula for determining each Claimant's

19    Recognized Claim is based on an out-of-pocket measure of damages consistent with the alleged

20    violations of the Exchange Act, and takes into consideration when each Claimant purchased and/or

21    sold shares of NetApp common stock. *Id.*

22    A plan of allocation in a class action under Rule 23 is governed by the same standards of

23    review applicable to the settlement as a whole – it must be fair and reasonable. *Class Plaintiffs v.*

24    *City of Seattle*, 955 F.2d 1268, 1284 (9th Cir. 1992). The objective of a plan of allocation is to

25    provide an equitable basis upon which to distribute the settlement fund among those eligible. An

26    allocation formula must be "rationally related to the relative strengths and weaknesses of the case."

27    *Rosenburg v. I.B.M.*, No. CV06-00430PJH, 2007 WL 128232, at *5 (N.D. Cal. Jan. 11, 2007).

28    Lead Counsel and a consultant developed the Plan, which reflects the theories of causation

and damages Plaintiff would have presented at trial, and provides an equitable basis to allocate the Net Settlement Fund among all Class Members who submit an acceptable Claim Form. The Plan reflects an assessment of the damages that Plaintiff contends could have been recovered under the theories of liability asserted in the Action. An individual Claimant's recovery under the Plan will depend on a number of factors, including the number of valid claims filed by other Claimants and how many shares of NetApp common stock the Claimant purchased, acquired, or sold, and when that Claimant bought, acquired, or sold the shares. If a Claimant has an overall market gain with respect to his, her, or its overall transactions in NetApp during the Class Period or if the Claimant purchased shares during the Settlement Class Period but did not hold any of those shares through at least one of the alleged corrective disclosures, the Claimant's recovery under the Plan will be zero, as any loss suffered would not have been caused by the revelation of the alleged fraud. The Plan will fairly and equitably distribute the Net Settlement Fund among Class Members who submit valid claims by distributing to each their *pro rata* share. *In re Biolase, Inc. Sec. Litig.*,No. SACV131300JLSFFMX, 2015 WL 12720318, at *5 (C.D. Cal. Oct. 13, 2015) (finding a plan that awards a pro rata share of the net settlement fund to be "a fair and reasonable method of distributing settlement proceeds").

If any funds remain after initial distribution from the Net Settlement Fund to Authorized Claimants, further distributions to Authorized Claimants who would receive at least $10.00 from such a re-distribution will be conducted as long as they are cost effective. Due to the potential multiple rounds of distributions, it is likely that only a small amount of the funds will remain in the Net Settlement Fund. *See Zynga*, 2015 WL 6471171, at *11. If any residual funds do remain in the Net Settlement Fund, the Goldberg Declaration identifies the Investor Justice and Education Clinic ("IJEC") at Howard University School of Law as an appropriate *cy pres* recipient of such funds. The IJEC is a clinic at the Howard University School of Law providing law students with the opportunity to represent clients in securities cases against securities broker-dealers. The IJEC also provides investor education and outreach programs for underserved investing communities, providing investment protection education, including a basic understanding of financial markets and professionals and financial products, and the rights of investors. *See* ¶¶51-55.

## VI.     THE NOTICE PROGRAM SATISFIES RULE 23, DUE PROCESS, AND THE PSLRA

### A.     The Method of Notice is Adequate

Rule 23(e) requires Court approval of the compromise of class actions, and that notice of the proposed compromise shall be given to all members of the class in such manner as the Court directs. The Parties proposed notice program includes: (1) emailing links to the location of the Long Notice and Claim Form to Settlement Class Members for whom the Claims Administrator is able to obtain email addresses; or (2) if no email address can be obtained, mailing the Postcard Notice by first class mail, postage prepaid to Settlement Class Members who can be identified with reasonable effort by Lead Counsel, through the Claims Administrator. Copies of the Long Notice, Claim Form, and Stipulation will be posted on a website dedicated for the Settlement. Further, Settlement Class Members will be able to submit their claims electronically at the website. Upon request, the Claims Administrator will also mail copies of the Notice and/or Claim Form. Additionally, the Summary Notice will be disseminated over *GlobeNewswire* and printed in *Investor's Business Daily*.

Courts routinely find these methods of notice sufficient. "The use of a combination of a mailed post card directing class members to a more detailed online notice has been approved by courts." *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 183 n.3 (S.D.N.Y. 2014) (citing cases); *Baker v. SeaWorld Entm't, Inc.,* No. 14CV2129-MMA (AGS), 2020 WL 818893, at *2-*3 (S.D. Cal. Feb. 19, 2020) (approving postcard notice and similar notice program including website); *In re Mut. Funds Inv. Litig.*, No. 04-md-15861-CCB, 2010 WL 2342413, at *6-*7 (D. Md. May 19, 2010) (combination of postcard notice, summary notice, and a detailed notice available online "is the best notice practical under the circumstances and allows Class Members a full and fair opportunity to consider the proposed Settlements"). With an estimated mailing size of between 25,000 and 50,000 recipients (*see* Ex. 3 (Declaration of Paul Mulholland ("Mulholland Decl.")), ¶13), mailing a full printed Long Notice and Claim Form to each potential Settlement Class Member would be cost prohibitive. Thus, the proposed notice program is "the best notice that is practicable under the circumstances."[9]

---

[9] Defendants will provide notice under the Class Action Fairness Act, 28 U.S.C. §1715 et seq.

1          **B.        The Content of the Notice is Adequate**

2          As required by Rule 23(c)(2), the notice program will inform Settlement Class Members of

3  the claims alleged in the Action, the terms of the Settlement, and the right of Settlement Class

4  Members to opt out or object to the Settlement, or otherwise object to the Plan and/or the proposed

5  attorneys' fees and expenses. *See Stratton v. Glacier Ins. Adm'rs, Inc.*, No. 1:02-CV-06213 OWW

6  DLB, 2007 WL 274423, at *14 (E.D. Cal. Jan. 29, 2007) ("Notice is satisfactory in the context of

7  settlement if it fairly apprises class members of the terms of the settlement in sufficient detail to

8  afford them the opportunity to decide whether they should accept the benefits offered, opt out and

9  pursue their own remedies, or object to the settlement."); *see also Churchill Village*, 361 F.3d at

10 575 ("Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail

11 to alert those with adverse viewpoints to investigate and to come forward and be heard.'").

12         The proposed Long Notice includes all of the information required by the PSLRA, Federal

13 Rules of Civil Procedure, and due process. In plain English, the proposed Long Notice provides: (a)

14 the rights of Settlement Class Members, including the manner in which objections may be lodged

15 and exclusions may be requested; (b) the nature, history, progress, and status of the litigation; (c)

16 the proposed Settlement; (d) the process for filing a Claim Form; (e) a description of the proposed

17 Plan; and (f) the fees and expenses to be sought by Lead Counsel. The proposed Long Notice further

18 sets forth, among other things: (1) the definition of the Court-certified Settlement Class and who it

19 excludes; (2) the reasons the Parties have proposed the Settlement; (3) the estimated average

20 distribution per damaged share; (4) the Settlement Class's claims and issues; (5) the Parties'

21 disagreement over damages and liability; (6) the maximum amount of attorneys' fees and expenses

22 that Lead Counsel intends to seek in connection with final Settlement approval; (7) the maximum

23 amount Lead Counsel will request for reimbursement of costs and expenses; and (8) the date, time

24 and place of the Final Approval Hearing. *See* 15 U.S.C. § 78u-4(a)(7)(A)-(F).

25         Further, the proposed Notice discusses the rights Settlement Class members have in

26 connection with the Settlement, including the right to: (1) request exclusion from the Settlement

27 Class and the manner for submitting a request for exclusion; (2) object to the Settlement, or any

28 aspect thereof, and the manner for filing and serving an objection; and (3) participate in the

Settlement and instructions on how to complete and submit a Claim Form to the Claims Administrator. The Long Notice also provides contact information for all counsel and the Court. The Notice will provide the time, date, and location of the Final Approval Hearing and also states that the date of the hearing may change without further notice, advising Settlement Class Members to check the Settlement website or PACER to confirm that the date has not changed.

Rule 23(h)(1) requires that "[n]otice of the motion [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner." The Notice satisfies this requirement as it alerts Class members that Lead Counsel will apply to the Court for attorneys' fees in an amount not to exceed 25% of the total Settlement and for reimbursement of litigation expenses up to $25,000 to be paid from the Settlement Fund. The Notice includes the application for a compensatory award of no more than $2,000 to Plaintiff.

The notice program including its form and content more than satisfies all applicable requirements of the Federal Rules of Civil Procedure, the PSLRA, and due process.

## VII.   THE PROPOSED CLAIMS ADMINISTRATOR

Plaintiff requests the Court appoint SCS as the Claims Administrator. SCS is a highly respected and experienced claims administrator, with experience administrating many large and complex securities litigation matters. Mulholland Decl. at ¶2. SCS's fees for administration of the Settlement are charged on a per-claim basis and expenses will be billed separately (including expenses for printing and mailing the Postcard Notice, emailing links of the Long Notice and Claim Form, publishing the Summary Notice, establishing and maintaining the settlement website, and establishing and operating the toll-free telephone helpline). ¶33. At this time, only a rough estimate of the total Notice and Administration Costs can be provided as the costs are highly dependent on how many Postcard Notices are ultimately mailed as well as emails sent, and how many Claims are ultimately received and processed. SCS estimates, based on its past experience with securities settlements of a similar size and companies with similar market capitalization, and the length of the Settlement Class Period, that there are between 25,000 and 50,000 potential Settlement Class Members and that 25% of the Settlement Class Members will file claims. Mulholland Decl. at ¶¶13-14. Based on these estimates, SCS estimates that the total Notice and Administration Costs for the

Action will range from $135,000 to $230,000. *Id*. at ¶16. These costs are necessary in order to effectuate the Settlement and at approximately 1.24% of the total value Settlement, or $0.08 per damaged share, are reasonable in relation to the value of the Settlement. ¶¶20, 22. If the Settlement is approved, the Notice and Administration Costs will be paid from the Settlement Fund.

## VIII.   THE INTENDED REQUEST FOR ATTORNEYS' FEES, LITIGATION EXPENSES, AND PLAINTIFF'S AWARD

The Notice states that Lead Counsel intends to seek an award of attorneys' fees of up to 25% of the Settlement Amount and reimbursement of litigation costs and expenses up to $25,000, plus interest earned thereon. Lead Counsel will provide more detailed information in support of its application in its motion for attorneys' fees and expenses prior to the Final Approval Hearing. The anticipated fee request is in line with the "benchmark" often referenced by the courts in the Ninth Circuit. *See, e.g.*, *Staton.*, 327 F.3d at 968 ("This Circuit has established 25% of the common fund as a benchmark award for attorney fees."). Comparable fees greater than the "benchmark" have been granted routinely, especially in complex securities fraud cases such as this one. *See*, *e.g.*, *Mego*, 213 F.3d at 463 (affirming award of one-third of the total recovery); *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (a 33% award "for attorneys' fees is justified because of the complexity of the issues and the risks"); *Romero v. Producers Dairy Foods, Inc*., No. 1:05cv0484 DLB, 2007 WL 3492841, at *4 (E.D. Cal. Nov. 14, 2007) (approving a fee award of 33% of the common fund, and stating "'[e]mpirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery,'" *citing* 4 Newberg and Conte, NEWBERG ON CLASS ACTIONS § 14.6 (4th ed. 2007)).

While Lead Counsel has not yet completed a final review of its time dedicated to this Action, and notes that additional time will be spent in connection with final approval and Settlement administration, Lead Counsel's lodestar is currently approximately $411,798. ¶48. A fee award of 25% of the Settlement Amount would result in a multiplier of 1.366. This multiplier is reasonable and within the range of lodestar multipliers courts in this circuit approve. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002) (Ninth Circuit affirmed a 3.65 lodestar multiplier, holding that the district court correctly considered the range of multipliers applied in common fund cases and noted that a range of lodestar multiples from 1.0 to 4.0 are frequently awarded); *Steiner*

PLAINTIFF'S NOTICE OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; Case No. 19-cv-04801-JST

24

1   *v. Am. Broad. Co*., 248 F. App'x 780, 783 (9th Cir. 2007) ("this multiplier [of 6.85] falls well within
2   the range of multipliers that courts have allowed"). If preliminary approval is granted, Lead Counsel
3   will present its total lodestar with its fee application at final approval.

4       Lead Counsel also intends to seek reimbursement of Lead Counsel's litigation expenses in
5   an amount not to exceed $25,000. ¶49. Lead Counsel will provide appropriate detail in support of
6   any request for reimbursement of litigation expenses with its fee application at final approval.

7       Lead Counsel also intends to seek an award of up to $2,000 for Lead Plaintiff, pursuant to
8   15 U.S.C. §78u-4(a)(4), as reimbursement for his time and expenses in representing the Settlement
9   Class. "Incentive *awards* are fairly typical in class action cases…and are intended to compensate
10  class representatives for work done on behalf of the class." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d
11  948, 958 (9th Cir. 2009) (emphasis in original). Lead Counsel believes this amount is fully supported
12  by the work that Plaintiff did throughout the Action, which will be further explicated to the Court
13  in connection with Plaintiff's request for reimbursement. This request will be below similar awards
14  granted in this district as a $5,000 payment is "presumptively reasonable" and such awards
15  "typically range from $2,000 to $10,000." *Bellinghausen v. Tractor Supply Co*., 306 F.R.D. 245,
16  266 (N.D. Cal. 2015).

17  **IX.    PROPOSED SCHEDULE OF EVENTS**

18      Plaintiff proposes the schedule, as agreed to by the Parties, set forth in the Preliminary
19  Approval Order, as well as in the Goldberg Declaration at ¶57.

20  **X.    CONCLUSION**

21      For all the foregoing reasons, Plaintiff respectfully requests that the Court grant the motion
22  and enter the Preliminary Approval Order.

23

24  Dated: September 24, 2021                Respectfully submitted,

25                                          **THE ROSEN LAW FIRM, P.A**.

26                                          By: */s/ Jacob A. Goldberg*
27                                          Jacob A. Goldberg (*pro hac vice*)
                                            Gonen Haklay
28                                          101 Greenwood Avenue, Suite 440

Jenkintown, PA 19046
Telephone: (215) 600-2817
Facsimile: (212) 202-3827
Email: jgoldberg@rosenlegal.com
Email: ghaklay@rosenlegal.com

and

Laurence M. Rosen, Esq. (SBN 219683)
355 S. Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Lead Counsel for Lead Plaintiff and the Class*