**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen, Esq. (SBN 219683)
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Lead Counsel for Lead Plaintiff and the Class*

[*Additional Counsel on Signature Page*]

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHAD C. SMITH, Individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>        v.<br><br>NETAPP, INC., et al.<br><br>        Defendants. | Case No. 19-cv-04801-JST<br><br>Class Action<br><br>**DECLARATION OF JACOB A. GOLDBERG IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**<br><br>Hearing Date: November 4, 2021<br>Time: 2 p.m.<br>Location: Courtroom 6 – 2nd Floor<br>Judge: Honorable Jon S. Tigar |

I, Jacob A. Goldberg, hereby declare and state as follows:

1.      I am an attorney duly licensed to practice in the Commonwealth of Pennsylvania and admitted *pro hac vice* in the above-captioned action. I am a partner at The Rosen Law Firm, P.A. ("Rosen Law"), Court-appointed Lead Counsel for Lead Plaintiff Winston Derouin ("Lead Plaintiff" or "Derouin") and the proposed Settlement Class in the above-captioned action. I have personal knowledge of the facts set forth herein and if called upon to testify, I could and would do so truthfully and accurately. I submit this declaration, together with the attached exhibits, in support of Plaintiff's Unopposed Motion for Preliminarily Approval of Settlement.

## I.      HISTORY AND BACKGROUND OF THE LITIGATION

2.      This action was commenced on August 14, 2019, alleging violations of §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") against NetApp, Inc. ("NetApp" or "Company"), and Individual Defendants George Kurian, Ronald J. Pasek, and Matthew K. Fawcett.

3.      Derouin moved for appointment as lead plaintiff and approval of lead counsel on October 15, 2019 (Dkt. No. 20). On November 12, 2019, the Court entered an Order appointing Derouin as Lead Plaintiff and Rosen Law as Lead Counsel (Dkt. No. 36).

4.      On January 24, 2020, Lead Plaintiff filed the Amended Class Action Complaint for Violation of the Federal Securities Laws ("Amended Complaint") (Dkt. No. 41).

5.      On March 26, 2020, Defendants filed their motion to dismiss the Amended Complaint (Dkt. No. 42), including the declaration of Cheryl W. Foung (Dkt. No. 43). The motion to dismiss was fully briefed on July 9, 2020. (Dkt. No. 52). The Court dismissed the case in its entirety on February 1, 2021 (Dkt. No. 58), and judgment was entered on February 26, 2021 (Dkt. No. 59). Plaintiff filed his Notice of Appeal on March 26, 2021 (Dkt. No. 60). The appeal was styled as *Derouin v. NetApp, Inc., et al.,* 21-15566 (9th Cir.) (the "Appeal").

6.      The Parties participated in a mediation on July 21, 2021 through the Ninth Circuit's mediation program, before briefs were filed. In advance of the mediation session, the Parties exchanged detailed mediation statements outlining their respective analyses of the claims and defenses in this case. The mediation resulted in the Parties reaching an agreement in principle to settle the Action that was memorialized in a memorandum of understanding (the "MOU") executed

DECLARATION OF JACOB A. GOLDBERG IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT; Case No. 19-cv-04801-JST

1

on July 30, 2021.

7.    The MOU sets forth, among other things, the agreement between the Parties to settle and release all claims asserted against Defendants in the Action in return for a cash payment of $2,250,000 for the benefit of the Settlement Class, subject to certain terms and conditions and the execution of a customary "long form" stipulation and agreement of settlement and related papers.

8.    On July 30, 2021, the Parties filed the Stipulation to Dismiss Appeal Without Prejudice in the Appeal, stating that the Parties reached a settlement.

9.    On August 2, 2021, the Ninth Circuit Mediator entered an order dismissing the Appeal without prejudice, subject to reinstatement in the event that the Court denies approval of the Settlement. (Dkt. No. 62).

10.    On August 6, 2021, Lead Plaintiff notified the Court of the settlement and requested forty-five (45) days for the Parties to submit the stipulation of settlement and motion for preliminary approval of the settlement. (Dkt. No. 63).

11.    On September 17, 2021, Lead Plaintiff notified the Court that the Parties had not yet finalized the Stipulation of Settlement and accompanying documents, and requested to finalize the documents and move for preliminary approval no later than October 4, 2021. (Dkt. No. 64).

12.    On September 21, 2021, the Parties executed the Stipulation of Settlement ("Stipulation"), a true and correct copy of which is attached hereto as Exhibit 1.[1] Annexed as exhibits to the Stipulation are the following documents:

| Exhibit | Description |
|---------|-------------|
| A | [Proposed] Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order") |
| A-1 | Postcard Notice |
| A-2 | Notice of Pendency and Proposed Settlement of Class Action ("Long Notice") |
| A-3 | Proof of Claim and Release Form ("Claim Form") |

[1] All capitalized terms not otherwise defined herein have the same meanings as set forth in the Stipulation.

DECLARATION OF JACOB A. GOLDBERG IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT; Case No. 19-cv-04801-JST

2

| A-4 | Summary Notice of Pendency and Proposed Settlement of Class Action ("Summary Notice") |
|---|---|
| B | [Proposed] Order and Final Judgment |

## II.    INFORMATION ABOUT THE SETTLEMENT

### A.  Settlement Class Definition

13.    Under the terms of the Settlement, the Parties agreed, subject to Court approval, to certification of a Settlement Class defined as: all persons and entities who purchased or otherwise acquired the publicly traded securities of NetApp between May 23, 2019 and August 1, 2019, both dates inclusive. Excluded from the Settlement Class are Defendants, the officers and directors of NetApp, members of the Individual Defendants' immediate families and their legal representatives, heirs, successors, or assigns and any entity in which the Individual Defendants have or had a controlling interest. Also excluded from the Settlement Class are all putative members of the Settlement Class who exclude themselves by filing a valid and timely request for exclusion, and Persons with no compensable damages. Stipulation ¶1.37.

14.    The only difference between the class definition proposed in the Amended Complaint (Dkt. No. 41 at ¶72) is the modification of some wording in the list of people excluded from the Settlement Class definition.[2]

15.    Under the Settlement's terms, those excluded from the Settlement Class are: Defendants, the officers and directors of NetApp, members of the Individual Defendants' immediate families and their legal representatives, heirs, successors, or assigns and any entity in which the Individual Defendants have or had a controlling interest. Also excluded from the Settlement Class are all putative members of the Settlement Class who exclude themselves by filing a valid and timely request for exclusion, and Persons with no compensable damages. Stipulation ¶1.37.

### B.  The Releases

16.    In the proposed Settlement, the Parties agreed that Lead Plaintiff and each of the

---

[2] The Amended Complaint inadvertently includes reference to "RBSM" in the paragraph defining the Class.

DECLARATION OF JACOB A. GOLDBERG IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT; Case No. 19-cv-04801-JST

3

other Settlement Class Members shall waive and release each and every Released Claims Against Defendants and the other Defendants' Releasees in exchange for a payment by or on behalf of Defendants of $2,250,000 in cash, as set forth in greater detail in ¶¶1.28-1.33 of the Stipulation.

17.    "Released Claims Against Defendants" is defined in the Stipulation (*see* Stipulation, ¶1.31) as "any and all claims (including "Unknown Claims" as defined in ¶ 1.42), demands, rights, causes of action and liabilities, of every nature and description whatsoever, whether based in law or equity, arising under federal, state, local, statutory or common law, or any other law, rule or regulation, including both known and unknown claims with respect to the purchase or sales of NetApp securities during the Settlement Class Period, relating either to: (a) the allegations of the Complaint or Amended Complaint or otherwise asserted in the Action; or (b) any claims that the Releasing Plaintiffs have asserted, could have asserted, or could have asserted, in any forum, that are based upon, arise out of, or relate in any way to the facts, matters, transactions, allegations, claims, losses, damages, disclosures, filings, events, representations, or statements that are set forth in the Complaint or Amended Complaint or that are otherwise at issue in the Action. Released Claims Against Defendants shall not include claims relating to the enforcement of the MOU or this Stipulation."

18.    Defendant Releasees are defined in the Stipulation (*see* Stipulation, ¶1.29(i)) as "Defendants, and Defendants' current or former parents, subsidiaries, affiliates, predecessors, successors, divisions, joint ventures, and general or limited partnerships, and each of their respective current or former officers, directors, trustees, partners, contractors, auditors, principals, agents, managing agents, employees, attorneys, accountants, investment bankers, underwriters, insurers or reinsurers in their capacities as such, as well as each of the immediate family members, heirs, executors, personal or legal representatives, estates, beneficiaries, predecessors, successors and assigns of the Defendants and other individuals referred to in this paragraph."

19.    The scope of this release is reasonable as it is limited to claims related "to: (a) the allegations of the Complaint or Amended Complaint or otherwise asserted in the Action; or (b) any claims that the Releasing Plaintiffs have asserted, could have asserted, or could have asserted, in any forum, that are based upon, arise out of, or relate in any way to the facts, matters, transactions,

DECLARATION OF JACOB A. GOLDBERG IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT; Case No. 19-cv-04801-JST

4

allegations, claims, losses, damages, disclosures, filings, events, representations, or statements that are set forth in the Complaint or Amended Complaint or that are otherwise at issue in the Action. Released Claims Against Defendants shall not include claims relating to the enforcement of the MOU or this Stipulation." Stipulation, ¶1.31.

### C. The Anticipated Recovery Under the Settlement

20.     The $2,250,000 cash Settlement Amount amounts to an estimated average recovery of approximately $0.08 per damaged share before the deduction of Court-approved fees and expenses and costs of notice and claims administration, pursuant to the proposed Plan of Allocation.

21.     Based on the proposed Claims Administrator's experience, Lead Counsel estimates the total costs of the notice and claims administration process are estimated to range between $135,000 and $230,000.[3] Lead Counsel intends to request attorneys' fees of 25% of the Settlement Fund and reimbursement of the maximum amount of litigation expenses listed in the Long Notice. If the Court approves such request, the cost is estimated to be $0.02 per damaged share. After deduction of these fees, costs, and expenses, the estimated average recovery per damaged share is approximately $0.06 per damaged share, pursuant to the proposed Plan of Allocation.

22.     If Lead Plaintiff had successfully won the Appeal and moved past the pleading stage, fully prevailed in each of his claims at summary judgment and after a jury trial, if the Court and jury awarded Lead Plaintiff's damages—*i.e.*, Lead Plaintiff's best-case scenario—estimated total maximum damages would have been $181,720,000. Thus, the $2,250,000 Settlement Amount represents approximately 1.24% of the recoverable damages potentially available in this Action. This percentage of recovery is in line with the median settlement for securities class actions as a percentage of the Settlement Class's estimated recoverable damages under even the best-case scenario. According to NERA Economic Consulting, in 2020, the median recovery in securities class actions was approximately 1.7% of estimated damages. *See* Janeen McIntosh and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2020 Full-Year Review* (NERA Jan.

---

[3] *See* Declaration of Paul Mulholland Regarding Notice Plan ("Mulholland Declaration" or "Mulholland Decl."), attached hereto as Exhibit 3, at ¶16.

DECLARATION OF JACOB A. GOLDBERG IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT; Case No. 19-cv-04801-JST

5

25, 2021) at p. 20, Fig. 16, attached hereto as Exhibit 2.

23.     Prior to agreeing to the Settlement, Lead Counsel considered several factors, including:

a.     Lead Counsel's extensive investigation, factual discovery, and legal research of the claims asserted in this Action, which helped to evaluate the understanding of the strengths and weaknesses of these claims, including:

i.     In drafting the Amended Complaint and during the Private Securities Litigation Reform Act of 1995 ("PSLRA") automatic discovery stay, Lead Counsel conducted an extensive factual investigation which included: (a) a detailed review of (i) NetApp's U.S. Securities and Exchange Commission ("SEC") filings, press releases, conference calls, news reports, blog postings, and other public statements Defendants made prior to, during, and after the Settlement Class Period; (ii) public documents, reports, announcements, and news articles concerning NetApp; (iii) research reports by securities and financial analysts; and (iv) economic analyses of stock price movement and pricing data; (b) through a private investigator, conducting numerous fact interviews with former employees and other third parties; (c) a review and analysis of other publicly available material and data; and (d) consulting with experts in the field of damages; and

ii.     In drafting the Amended Complaint and opposing the motion to dismiss the Amended Complaint, Lead Counsel further engaged in extensive legal research relating to the strengths and weaknesses of the claims asserted in this Action.

b.     The Court granted Defendants' motion to dismiss. Lead Plaintiff subsequently filed the Appeal. Lead Counsel's ability potentially to reverse the dismissal of the Amended Complaint and successfully defeat any further motion to dismiss challenge from Defendants in light of the fact that the Court already dismissed the Amended Complaint.

c.     If litigation proceeded past the pleadings stage, the difficulty, potential for

DECLARATION OF JACOB A. GOLDBERG IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT; Case No. 19-cv-04801-JST

6

success, and time required to defeat motions for summary judgment, have the class certified, conduct discovery, and prevail at trial.

d.    In light of these risks, Lead Counsel believes that the percentage of recovery is reasonable.

### D.  The Proposed Plan of Allocation of the Settlement Fund

24.    The Plan of Allocation is detailed in the Long Notice at pp. 5-9. The Long Notice will be posted online at www.strategicclaims.net/NetApp/, is downloadable, and will be mailed to Settlement Class Members upon request.

25.    Under the proposed Plan of Allocation, each Authorized Claimant will receive his, her, or its *pro rata* share of the Net Settlement Fund, which is the Settlement Fund (*i.e.,* the $2,250,000 Settlement Amount plus any and all interest earned thereon) less any: (i) Taxes; (ii) Notice and Administration Costs; (iii) attorneys' fees awarded by the Court; (iv) litigation expenses attorneys' fees awarded by the Court; and (v) Compensatory Award to Lead Plaintiff ("Compensatory Award") awarded by the Court. Specifically, an Authorized Claimant's *pro rata* share shall be the Authorized Claimant's Recognized Claim divided by the total of Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund.

26.    The Plan of Allocation provides for distribution of the Net Settlement Fund among Authorized Claimants on a *pro rata* basis based on a "Recognized Loss" formula that is based on the timing of the purchases and sales of NetApp common stock and the decline that occurred in the price of the stock.

27.    An individual Claimant's recovery under the Plan of Allocation will depend on a number of factors, including the number of valid claims filed by other Claimants and how many shares of NetApp common stock the Claimant purchased, acquired, or sold during the Settlement Class Period. If a Claimant purchased and sold shares prior to a corrective disclosure, the Claimant's recovery under the Plan of Allocation will be zero. This is a widely accepted approach to the fair distribution of settlement funds in securities class action settlements. Lead Counsel believes that the Plan of Allocation will result in a fair and equitable distribution of the Net Settlement Fund among Settlement Class Members who submit valid claims.

DECLARATION OF JACOB A. GOLDBERG IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT; Case No. 19-cv-04801-JST

7

### E.  Estimate of Claims Rate

28.     As explained more fully in the attached Mulholland Declaration, Exhibit 3, Strategic Claims Services ("SCS" or the "Claims Administrator") estimates that, based on NetApp's trading history during the Settlement Class Period, there are likely between 25,000 and 50,000 Settlement Class Members. Mulholland Decl., ¶13. Based on SCS's significant experience in notification and claims administration in private securities litigation matters, SCS estimates a claims rate of 25%. *Id*., ¶14. Thus, SCS expects to receive and process between 6,250 to 12,500 claims. *Id*.

### F.  There Are No Reversions to the Defendants

29.      Under the Stipulation's terms, once the Settlement is final and the time for any appeal has expired, or the Settlement has been affirmed on appeal, no portion of the Settlement Amount will revert to any defendant. Stipulation, ¶2.3.

## III.     SETTLEMENT ADMINISTRATION SELECTION PROCESS

30.     Lead Counsel retained SCS to: (i) provide notice of the proposed Settlement to investors who make up the Settlement Class; and (ii) administer the claims process.

31.     Lead Counsel engaged SCS based on its prior experience with SCS serving as claims administrator in settlements both large and small. In selecting SCS, Lead Counsel carefully considered SCS's estimated cost to administer the entire Settlement, the cost of the notice program and the cost of each processed Claim, as well as certain fixed costs associated with the administration of the Settlement. SCS proposed notifying the Settlement Class by mailing the Postcard Notice, publishing the Summary Notice, and mailing the Long Notice upon request, and utilizing paper checks to distribute valid settlement claims.

32.     In the past two years, SCS administered, or is currently administering, the following settlements in which Rosen Law served as Lead Counsel or Co-Lead Counsel: *Skiadas v. Acer Therapeutics Inc., et al*., 1:19-cv-06137-GHW (S.D.N.Y.); *Hashem v. NMC Health plc, et al*., 2:20-cv-02303-CBM-MAA (C.D. Cal.); *He v. China Zenix Auto International Limited*, 2:18-cv-15530-KM-JSA (D.N.J.); *Chan, et al., v. New Oriental Education & Technology Group Inc., et al*., 2:16-cv-09279-KSH-CLW (D.N.J.); *In re Akazoo S.A. Securities Litigation*, 1:20-CV-01900-BMC (E.D.N.Y.); *Whiteley, et al, v. Zynerba Pharmaceuticals, Inc., et al*., Case 2:19-cv-04959-NIQA

DECLARATION OF JACOB A. GOLDBERG IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT; Case No. 19-cv-04801-JST

8

(E.D. Pa.); *Rupp, et al., v. Momo Inc., et al.*, 1:19-cv-04433-GBD (S.D.N.Y.); *Davis, et al., v. Katanga Mining Limited, et al.*, 2:17-cv-12188-CCC-JBC (D.N.J.); *Kumar, et al., v. SAExploration Holdings, Inc., et al.*, 4:19-cv-03089 (S.D. Tex.); *In re Jumia Technologies AG Securities Litigation*, 19-cv-4397-PKC (S.D.N.Y.); *In re Spectrum Pharmaceuticals, Inc. Securities Litigation*, 2:16-cv-02279-RFB-EJY (D. Nev.); *Puddu, et al., v. 6D Global Technologies, Inc., et al.*, 15-cv-8061-AJN (S.D.N.Y.); *Patton v. Rosen, et al.*, 1:19-cv-05362-PGG (S.D.N.Y.); *Li v. Aeterna Zentaris, Inc., et al.*, 3:14-cv-07081-PGS-TJB (D.N.J.); *Mikhlin v. Oasmia Pharmaceuticals AB, et al.*, 1:19-cv-04349-NGG-RER (E.D.N.Y.); *Luo v. Sogou Inc., et al.*, 1:19-cv-00230-LJL (S.D.N.Y.); *Feierstein v. Correvio Pharma Corp., et al.*, 1:19-CV-11361-VEC (S.D.N.Y.); *Pepe v. Cocrystal Pharma, Inc., et al.*, 2:18-cv-14091-KM-JBC (D.N.J.); *Christine Asia Co., Ltd. et al., v. Jack Yun Ma, et al.*, 1:15-md-02631-CM-SDA (S.D.N.Y.); *Hartman v. Verb Technology Company, et al.*, 2:19-cv-05896-GW-MAA (C.D. Cal.); *Byrne v. Westpac Banking Corporation, et al.*, 3:20-cv-00171-AC (D. Or.); *In re USA Technologies, Inc. Securities Litigation*, 2:19-cv-04565-JHS (E.D. Pa.); *Weinstein v. RMG Networks Holding Corporation, et a*l., 2018-0210-AGB (Del. Chancery Ct.); *In re Silver Wheaton Corp. Securities Litigation*, 2:15-cv-05146-CAS-PJW (C.D. Cal.); *Allen, et al., v. PixarBio Corporation, et al.*, 2:17-cv-00496-CCC-SCM (D.N.J.); *Zubriski, et al., v. Bioamber Inc., et al.*, 2:17-cv-01531-ADS-AKT (E.D.N.Y.); *Brendon, et al., v. Allegiant Travel Company, et al.*, 2:18-cv-01758-APG-BNW (D. Nev.); *Hrasok v. Kraton Corporation, et al.*, 4:18-cv-00591 (S.D. Tex.); *In re Akers Biosciences, Inc. Securities Litigation*, 2:18-cv-10521-ES-CLW (D.N.J.); *Hull v. Global Digital Solutions, Inc., et al.*, 3:16-cv-05153-FLW-TJB (D.N.J.); *Meyer v. Concordia International Corp., et al.*, 1:16-cv-06467-RMB-KNF (S.D.N.Y.); and *In re Stemline Therapeutics, Inc. Securities Litigation*, 1:17-cv-00832-PAC (S.D.N.Y.).

33.     SCS's fees for administration of the Settlement will be charged on a per-claim basis and expenses will be billed separately (such as expenses for printing and mailing the Postcard Notices, and upon request, the Claim Form, publishing the Summary Notice, establishing and maintaining the website dedicated to the Settlement, and establishing and operating the toll-free telephone helpline).

34.     At this time, SCS estimates that the Notice and Administration Costs, *i.e.*, the

DECLARATION OF JACOB A. GOLDBERG IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT; Case No. 19-cv-04801-JST

9

anticipated costs to administer the notice program, process Claims, and distribute the Net Settlement Fund, among other tasks, will generate professional service fees and expenses of approximately between $135,000 and $230,000.[4] Mulholland Decl., ¶13.

35.     These costs are necessary in order to provide notice of the Settlement in the manner generally accepted and to properly administer the claims received in response. While the costs are significant at approximately between 6% to 10% of the total Settlement Amount, or about $0.0048 to $0.0082 per damaged share, they are a function of the significant number of shares traded during the eligibility period under the Plan of Allocation. If the Settlement is approved, the Notice and Administration Costs will be paid from the Settlement Fund. Stipulation, ¶2.8.

## IV.     THE NOTICE PROGRAM

### A.  The Notice Distribution Plan

36.     In accordance with the proposed Preliminary Approval Order, attached as Exhibit A to the Stipulation filed herewith, Lead Counsel will cause the Claims Administrator to: (1) email links to the location of the Long Notice and Claim Form to Settlement Class Members for whom the Claims Administrator is able to obtain email addresses, substantially in the form annexed to the Stipulation as Exhibit A-2 and Exhibit A-3; or (2) mail the Postcard Notice, substantially in the form annexed to the Stipulation as Exhibit A-1, if no email address can be obtained, mailed, by first class mail, postage prepaid, to Settlement Class Members who can be identified with reasonable effort by Class Counsel, through the Claims Administrator. As explained above, in consultation with the Class Administrator, Lead Counsel estimates that there are up to 50,000 potential Settlement Class Members. *See* Mulholland Decl., ¶13.

37.     Prior to the mailing of the Postcard Notice and emailing links to the location of the Long Notice and Claim Form, Lead Counsel will cause the Claims Administrator to post downloadable copies of the Long Notice and Claim Form online at www.strategicclaims.net/NetApp/. Upon request, the Claims Administrator will also mail copies of the Long Notice and/or Claim Form to Settlement Class Members.

---

[4] Based on the estimate of up to 50,000 potential Settlement Class Members and approximately 6,250 to 12,500 Claims processed. *See* Mulholland Decl., ¶¶13-14.

DECLARATION OF JACOB A. GOLDBERG IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT; Case No. 19-cv-04801-JST

10

38.   Additionally, no more than ten (10) calendar days after the entry of the Preliminary Approval Order, the Summary Notice will be disseminated once over the *GlobeNewswire* and published in *Investor's Business Daily*.

39.   Lead Counsel believes that this method of notice provides Settlement Class Members with a full and fair opportunity to consider the proposed Settlement. Significantly, with an estimated mailing up to 50,000 shareholders, a full printed Long Notice and Claim Form sent to each potential Settlement Class Member would be cost prohibitive in light of the size of the Settlement Amount. Thus, Lead Counsel respectfully submits that the combination of the mailed Postcard Notice, emailed link to the Settlement website to the Long Notice and Claim Form, published Summary Notice, and online availability of these documents provides the best notice practicable under the circumstances.

40.   Courts routinely find that these methods of notice are sufficient. In particular, "[t]he use of a combination of a mailed post card directing class members to a more detailed online notice has been approved by courts." *In re Advanced Battery Techs., Inc. Sec. Litig.,* 298 F.R.D. 171, 183 n.3 (S.D.N.Y. 2014) (citing cases); *Baker v. SeaWorld Entm't, Inc.,* No. 14CV2129-MMA (AGS), 2020 WL 818893, at *2-*3 (S.D. Cal. Feb. 19, 2020) (approving postcard notice and similar notice program including website); *In re Mut. Funds Inv. Litig.*, 2010 WL 2342413, at *6 (D. Md. May 19, 2010) (finding that a combination of post card notices, summary notices, and a long-form notice available online "is the best notice practical under the circumstances and allows Class Members a full and fair opportunity to consider the proposed Settlements.").

### B.  The Notice Contents Are Adequate

41.   As more fully explained in the accompanying Memorandum of Points an Authorities in Support of Plaintiff's Unopposed Motion for Preliminary Approval of Settlement, the notice program satisfies the requirements of due process, Rule 23(c)(2) and the PSLRA (15 U.S.C. § 78u-4(a)(7)), and does so in easily understandable language.

42.   The notice program also includes the following information required by the Northern District of California's Procedural Guidance for Class Action Settlements ("Class Settlement Guidance"): (i) the contact information for Lead Counsel to answer questions (*see* Long Notice, p.

DECLARATION OF JACOB A. GOLDBERG IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT; Case No. 19-cv-04801-JST

11

2; Summary Notice, p. 3); (ii) the settlement website address (*see* Long Notice, pp. 5, 12; Summary Notice, p. 2; Postcard Notice), which will be maintained by SCS and which will contain links to the Notice, the motions for preliminary approval and final approval of settlement; and (iii) instructions on how to access the case docket via PACER or in person using the language suggested in item 3 of the preliminary approval Class Settlement Guidance (*see* Long Notice, pp. 12-13).

43. Once the Court sets the date for the Final Approval Hearing, Lead Counsel will fill in the blank placeholders found in the Long Notice, Claim Form, Summary Notice, and Postcard Notice so the documents are finalized prior to mailing and publication.

## V. EXCLUSION REQUESTS

44. The notice program instructs potential Settlement Class Members who wish to opt out from the Settlement Class to send such a request to the Claims Administrator so that it is received by the required deadline. The notice program also clearly advises potential Settlement Class Members of the deadline to opt out, the method to opt out, and the consequences of opting out. *See* Long Notice, pp. 9-10, Summary Notice, p. 2, Postcard Notice.

45. These instructions set forth the information needed to be properly identified and to opt out of the Settlement. *Id.* The identification of NetApp common shares that each potential Settlement Class Member requesting exclusion purchased/acquired during the Settlement Class Period is required, to identify if such person or entity would otherwise be a Settlement Class Member.

## VI. OBJECTIONS

46. The notice program instructs potential Settlement Class Members how to, if they wish, object to the Settlement, the proposed Plan of Allocation, Lead Counsel's motion for an award of attorneys' fees and reimbursement of litigation expenses, and/or the Compensatory Award. *See* Long Notice, pp. 2, 11-12, Summary Notice, pp. 2-3, Postcard Notice. The Long Notice instructs any potential objector to send their written objection to the Court, and clearly states that the Court can only approve or deny the Settlement. Long Notice, pp. 11-12. The instructions in the Long Notice substantively follow the suggested language in the Class Settlement Guidance.

DECLARATION OF JACOB A. GOLDBERG IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT; Case No. 19-cv-04801-JST

12

## VII.    ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND COMPENSATORY AWARD

47.    For their efforts on behalf of the Settlement Class, Lead Counsel will apply for a percentage of the common fund fee award as compensation for the services rendered on the Settlement Class's behalf. Lead Counsel anticipates applying to the Court for an award of attorneys' fees in an amount not to exceed 25% of the $2,250,000 Settlement Fund (or up to $562,500 plus interest earned at the same rate as the Settlement Fund).

48.    Lead Counsel's total current lodestar is approximately $411,798. The anticipated requested fee results in a multiplier of 1.366 to Lead Counsel's current total lodestar. Lead Counsel's current total lodestar does not include, among other things, time that will be spent responding to Settlement Class Members inquiries, or work related to finalizing the preliminary approval motion as well as drafting final approval and the distribution motion.

49.    Lead Counsel will also apply for reimbursement of litigation expenses from the Settlement Fund in an amount not to exceed $25,000. These litigation expenses are paid or incurred in connection with the institution, prosecution, and resolution of the claims against Defendants.

50.    Lead Counsel will also apply for a Compensatory Award in an amount up to $2,000 for Lead Plaintiff's representation of the Settlement Class.

## VIII.    *CY PRES* AWARD

51.    The Net Settlement Fund will be distributed to Authorized Claimants, and if any funds remain after the initial distribution (for example, due to uncashed or returned checks), further distributions to Authorized Claimants who would receive at least $10.00 from such a re-distribution will be conducted as long as they are cost effective.

52.    Lead Counsel proposes the Investor Justice and Education Clinic ("IJEC") at Howard University School of Law (http://law.howard.edu/content/investor-justice-and-education-clinic-ijec) as the *cy pres* recipient of any residual funds that may remain after one or more distributions of the Net Settlement Fund to Authorized Claimants.

53.    The IJEC is a clinic at the Howard University School of Law that provides law students with the opportunity to represent clients in securities cases against securities broker-dealers.

---

DECLARATION OF JACOB A. GOLDBERG IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT; Case No. 19-cv-04801-JST

13

The IJEC also provides investor education and outreach programs for under-served investing communities to provide investment protection education including a basic understanding of financial markets and professionals, and products, as well as their rights as investors.

54.     Given the IJEC's dedication to investor education and protection, it is an appropriate *cy pres* recipient. In addition, the Parties and their counsel do not have any relationship with IJEC other than designating it as a *cy pres* recipient in past settlements.

55.     Due to the potential multiple rounds of distributions as long as it is cost effective, it is likely that only a small amount, or none, of the funds will be directed to IJEC.

## IX.    TIMELINE

56.     In connection with preliminary approval of the Settlement, Lead Plaintiff is requesting that the Court establish: (i) dates by which notice of the Settlement will be distributed to Settlement Class Members; (ii) a date by which Settlement Class Members may exclude themselves from the Settlement; (iii) a date by which Settlement Class Members who wish to object to any aspect of Settlement, Plan of Allocation and/or request for attorneys' fees and reimbursement of litigation expenses, and Compensatory Award to Plaintiff must submit that objection; and (iv) a date on which the Court will hold the Final Approval Hearing.

57.     The following is a proposed schedule which is also set forth in the proposed Preliminary Approval Order:

| Event | Deadline for Compliance |
|---|---|
| Deadline for mailing the Postcard Notice and/or emailing links to location of Long Notice and Claim Form to Settlement Class Members | Within twenty (20) Business days after entry of Preliminary Approval Order (Preliminary Approval Order, ¶13) |
| Posting Stipulation, Long Notice, and Claim Form and Preliminary Approval Order on Claims Administrator's website | Within 16 calendar days after entry of the Preliminary Approval Order (¶16). |
| Publication of Summary Notice | Within ten (10) calendar days after mailing of Postcard Notice or emailing links of the Long Notice and Claim Form (Preliminary Approval Order, ¶17) |
| Deadline for Lead Plaintiff to file papers in support of final approval and application for fees and expenses | Thirty-five (35) calendar days prior to the Final Approval Hearing (Preliminary Approval Order, ¶28) |
| Deadline for submitting objections and for | Twenty-one (21) calendar days prior to the Final |

DECLARATION OF JACOB A. GOLDBERG IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT; Case No. 19-cv-04801-JST

14

| requesting exclusion | Approval Hearing (Preliminary Approval Order, ¶¶ 21, 25) |
|---|---|
| Deadline for submitting Claim Forms | Thirty (30) calendar days prior to the Final Approval Hearing (Preliminary Approval Order, ¶ 19(a)) |
| Deadline to file reply papers in support of the Settlement, the Plan, and for application of attorneys' fees and expenses | Seven (7) calendar days prior to the Final Approval Hearing (Preliminary Approval Order, ¶29) |
| Final Approval Hearing | One-hundred and twenty (120) calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter |

58.    Lead Plaintiff requests that the Final Approval Hearing be scheduled for at least 120 days after the Preliminary Approval Order's entry to allow sufficient time for Settlement Class Members to file claims, request exclusion from or submit objections to the Settlement, and for Lead Plaintiff to file his motion papers.

59.    Under this proposed schedule, potential Settlement Class Members would have over thirty-five (35) days to opt out or object to the Settlement and/or motion for attorneys' fees and reimbursement of litigation expenses and Compensatory Award.

## X.    CLASS ACTION FAIRNESS ACT ("CAFA") NOTICE

60.    Defendants will be providing notice pursuant to CAFA (28 U.S.C. § 1715 et seq.). Specifically, Defendants shall serve upon the appropriate state official of each state in which a Settlement Class Member resides and the Attorney General of the United States a notice of the proof of services of such CAFA notices from Defendants. Stipulation, ¶¶2.8-2.9.

## XI.    PAST DISTRIBUTIONS

61.    The Class Settlement Guidance requests information regarding a previous distribution for at least one of Rosen Law's past comparable class action settlements. The following chart represents the requested information for another class action settlement for violations of the federal securities laws in which Rosen Law served as sole Lead Counsel:

---

DECLARATION OF JACOB A. GOLDBERG IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT; Case No. 19-cv-04801-JST

15

| Matter | *In re Silver Wheaton Corp. Sec. Litig.*, No. 2:15-cv-05146-CASPJWx (C.D. Cal.) |
|---|---|
| **Total Settlement Fund** | $41,500,000.00 |
| **Method of Notice** | Mailed Postcard Notice and Summary Notice published in *Investor's Business Daily* and disseminated on a newswire over the internet |
| **Total Number of Sent Notices[5]** | At least 482,778 |
| **The Number of Claim Forms Submitted** | 100,480 |
| **Percentage of Claims Forms Submitted** | 20.81% |
| **The Number of Acceptable (In Whole or In Part) Claim Forms Submitted** | 10,559 |
| **Average Recovery per Claimant (based on number of Acceptable Claims)** | $3,930.29 |
| **Cy Pres Recipient** | No *cy pres* distribution |
| **Amount Distributed to Cy Pres Recipient** | |
| **Administration Costs** | $1,269,231.32 |
| **Attorneys' Fees** | $12,450,000.00 |
| **Litigation Expenses** | $1,090,186.76 |

## XII.    LIST OF EXHIBITS

62.    Attached as Exhibit 1 is a true and correct copy of the Stipulation of Settlement, executed on September 21, 2021, with its attached exhibits.

63.    Attached as Exhibit 2 is a true and correct copy of excerpts of Janeen McIntosh and Svetlana Starykh, R*ecent Trends in Securities Class Action Litigation: 2020 Full-Year Review* (NERA Jan. 25, 2021).

64.    Attached as Exhibit 3 is a true and correct copy of the Declaration of Paul Mulholland

---

[5] Lead Counsel is unable to provide the total number of class members, because, as explained further in the Mulholland Declaration (¶6), most securities are held under a "street name" system in which the vast majority of investors hold their securities through a brokerage firm, institution, or other third-party nominee and do not actually purchase and hold securities under their own names.

DECLARATION OF JACOB A. GOLDBERG IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT; Case No. 19-cv-04801-JST

16

Regarding Notice Plan, executed on September 22, 2021.

I declare under the penalty of perjury under the laws of the United State of America that the foregoing is true and correct. Executed on September 24, 2021.

                                        */s/ Jacob A. Goldberg*
                                        Jacob A. Goldberg

---

DECLARATION OF JACOB A. GOLDBERG IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT; Case No. 19-cv-04801-JST

17