# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

CHAD C. SMITH, Individually and on
behalf of all others similarly situated,

　　　Plaintiff,

　　v.

NETAPP, INC., et al.

　　　Defendants.

:
:
:
:
:
:
:
:
:
:
:
:

Case No. 4:19-cv-04801-JST

**STIPULATION OF SETTLEMENT**

This Stipulation of Settlement (the "Stipulation"), dated September 21, 2021, is entered into by Lead Plaintiff Winston Derouin ("Derouin," "Plaintiff," or "Lead Plaintiff"), on behalf of himself and each of the Settlement Class Members, and Defendant NetApp, Inc. ("NetApp" or "Company") and Individual Defendants George Kurian, Ronald J. Pasek, and Matthew K. Fawcett (collectively with NetApp, "Defendants," and with Plaintiff, "Parties"), through their respective counsel of record relating to the above-captioned litigation ("Action"). This Stipulation is intended to fully, finally, and forever resolve, discharge, and settle with prejudice all claims asserted in this Action against Defendants subject to the approval of the United States District Court for the Northern District of California (the "Court").

**I.　　THE LITIGATION**

**　　A.　　Procedural History of the Litigation**

This class action lawsuit has been brought on behalf of persons who purchased or otherwise acquired NetApp securities from May 23, 2019 to August 1, 2019, both dates inclusive (the "Settlement Class Period") for alleged violations of §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act").

NetApp issued a revenue guidance range on May 22, 2019 for the first quarter of fiscal year 2020 ("Q1 2020") and for full fiscal year 2020. On June 18, 2019, NetApp issued an annual report on Form 10-K ("2019 10-K") in which it warned about the potential negative consequences to its finances if its largest customers pushed out or cancelled their orders. The Amended Class

1

Action Complaint for Violations of the Federal Securities Laws ("Amended Complaint") alleges that Defendants knew that the May 22, 2019 forecast was false when made. The Amended Complaint further alleges that when Defendants issued their 2019 10-K, they knew or recklessly disregarded that the warning they published about large customers pushing out or cancelling their orders had actually materialized, but failed to disclose this to investors.

On August 1, 2019, Defendants issued a press release, attached to a Form 8-K, stating that NetApp would miss its quarterly revenue guidance range by up to $243 million, and that investors should no longer rely on the Company's May 22, 2019 guidance for full fiscal year 2020. Defendants further stated that there was a deterioration in close rates against its sales pipeline with its largest customers pushing out or downsizing orders in the second half of Q1 2020. The second half of Q1 2020 started on June 10, 2019. In response to this news, on August 1, 2019 NetApp's share price dropped by $11.67, over 20%, falling from $57.71 to $46.04.

This Action was commenced on August 14, 2019, alleging violations of §§10(b) and 20(a) of the Exchange Act (Dkt. No. 1) ("Complaint"). On October 15, 2019, Derouin moved for appointment as lead plaintiff and approval of lead counsel. (Dkt. No. 20). On November 12, 2019, the Court granted his motion, appointing Derouin as Lead Plaintiff, and appointing The Rosen Law Firm, P.A. as Lead Counsel. (Dkt. No. 36).

On January 24, 2020, Lead Plaintiff filed the Amended Complaint (Dkt. No. 41). On March 26, 2020, Defendants filed their motion to dismiss the Amended Complaint (Dkt. No. 42), including the declaration of Cheryl W. Foung ("Foung") (Dkt. No. 43). The motion to dismiss was fully briefed on July 9, 2020. (Dkt. No. 52). The Court dismissed the case in its entirety on February 1, 2021 (Dkt. No. 58), and judgment was entered on February 26, 2021 (Dkt. No. 59). Plaintiff filed his Notice of Appeal on March 26, 2021 (Dkt. No. 60).

**Settlement Negotiations**

The Parties participated in a mediation on July 21, 2021, through the Ninth Circuit's mediation program. The Parties agreed in principle to resolve the claims asserted in the Action for $2.25 million in return for a release of all claims against the Defendants, as further detailed below.

DocuSign Envelope ID: 5A2C45B8-55ED-413F-AD98-7G19C0B5F631

**B.    Lead Plaintiff's Assessment of the Claims and Benefits of Settlement**

Lead Plaintiff believes that the claims asserted in the Action have merit. Lead Counsel has researched the applicable law and believes that any defenses Defendants raise can be refuted. Nonetheless, Lead Plaintiff and Lead Counsel recognize the expense and length of continued prosecution of the Action against Defendants through appeal in the Ninth Circuit, remand to this Court, discovery, trial, and any subsequent appeals.

Lead Plaintiff and Lead Counsel believe that the Settlement set forth in this Stipulation confers substantial benefits upon the Settlement Class, is fair, reasonable, adequate, and in the best interests of the Settlement Class.

**C.    Defendants' Denials of Wrongdoing and Liability**

Defendants have denied and continue to deny each and all of the claims asserted in the Action and expressly deny, *inter alia*, that Defendants have engaged in any wrongdoing, including, without limitation, that their public statements were false or misleading; that they have committed any violations of law or breaches of duty to Plaintiff, NetApp shareholders, or anyone else, or aided and abetted the same; that they failed to disclose any material information to investors; that they acted in any deceitful manner or otherwise with the requisite scienter; and that any investment losses sustained by Lead Plaintiff and the Settlement Class were caused by Defendants' alleged misconduct. Defendants believe that the Action is without merit, that their public statements during the Settlement Class Period contained no material misstatements or omissions, and that they otherwise complied with all applicable rules, regulations, and laws. In addition, Defendants maintain that they have meritorious defenses to all claims alleged in the Action. Defendants maintain that they diligently and scrupulously complied with any and all fiduciary and other legal duties, and make no admission of liability or any form of wrongdoing whatsoever by entering into this Settlement.

Nonetheless, taking into account the uncertainty and risks, expenses, length of time, and business distraction, among other things, inherent in any litigation, especially in complex securities cases such as this Action, Defendants have concluded that further litigation of the Action could be protracted, burdensome, and expensive, and that it is desirable and beneficial that

the claims asserted in the Action be fully and finally settled and terminated in the manner and upon the terms and conditions set forth in this Stipulation.

## II.    TERMS OF STIPULATION AND AGREEMENT OF SETTLEMENT

### A.    Introduction

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among Lead Plaintiff (individually and on behalf of all members of the Settlement Class), and each of them, and Defendants, and each of them, by and through their respective undersigned counsel or attorneys of record, subject to approval of the Court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, that in consideration of the benefits flowing to the Parties from the Settlement set forth herein, the Action and the Settled Claims shall be finally and fully compromised, settled, and released, and the Action shall be dismissed with prejudice, as to all Parties, upon and subject to the terms and conditions of this Stipulation.

### B.    Definitions

As used in this Stipulation, the following terms have the meanings specified below:

1.0    "Action" means *Chad C. Smith v. NetApp Inc.*, et al.*,* Case No. 4:19-cv-04801-JST (N.D. Cal.).

1.1    "Authorized Claimant" means any member of the Settlement Class who is a Claimant (as defined in ¶ 1.3) and whose claim for recovery has been allowed pursuant to the terms of this Stipulation.

1.2    "Business Day" means any day except a Saturday or Sunday or other day on which national banks are authorized by law or executive order to close in the State of California.

1.3    "Claimant" means any Settlement Class Member (as defined in ¶ 1.38) who files a Proof of Claim in such form and manner, and within such time, as the Court shall prescribe.

1.4    "Claims Administrator" means Strategic Claims Services, which shall administer the Settlement.

1.5    "Compensatory Award" means the requested reimbursement to Lead Plaintiff for his reasonable costs and expenses (including lost wages) directly related to Lead Plaintiff's representation of the Settlement Class in the Action.

4

1.6    "Court" means the United States District Court for the Northern District of California.

1.7    "Defendants" means NetApp, George Kurian, Ronald J. Pasek, and Matthew K. Fawcett.

1.8    "Defendants' Counsel" means the law firm of Wilson Sonsini Goodrich & Rosati, P.C.

1.9    "Effective Date" means the first date by which all of the events and conditions specified in ¶ 10.0 of the Stipulation have been met and have occurred.

1.10    "Escrow Account" means an interest-bearing escrow account established by the Escrow Agent wherein the Settlement Amount shall be deposited and held in escrow. The Escrow Account shall be managed by the Escrow Agent, subject to the Court's supervisory authority, for the benefit of Lead Plaintiff and the Settlement Class in accordance with the terms of the Stipulation and any order of the Court.

1.11    "Escrow Agent" means Huntington National Bank.

1.12    "Exchange Act" means the Securities Exchange Act of 1934, as amended.

1.13    "Final" means (1) the Court has entered a Judgment approving the Settlement in all material respects, including but not limited to, *inter alia,* (a) certifying a Settlement Class, (b) approving the scope of the Releases, and (c) ordering the Clerk of the Court to enter final judgment in the form set forth in Exhibit B pursuant to Federal Rule 54(b), finding that there is no just reason for delay of enforcement or appeal of the order, and (2) the Judgment has been affirmed in all respects on any appeal or review and is no longer subject to further appeal or review. Provided, however, and notwithstanding any provision to the contrary in this Settlement, "Final" shall not include (and the Settlement is expressly not conditioned upon) the Court's approval of attorneys' fees and the reimbursement of expenses sought by Lead Counsel, or the approval of payment of a Compensatory Award for the time and expenses expended by Lead Plaintiff, or any appeals solely related thereto.

1.14    "Individual Defendants" means Defendants George Kurian, Ronald J. Pasek, and Matthew K. Fawcett.

5

1.15 "Insurer" means the directors' and officers' liability insurers for the Defendants, and is inclusive of their respective reinsurers.

1.16 "Judgment" means the proposed final order and judgment to be entered by the Court approving the Settlement, substantially in the form attached hereto as Exhibit B or in such other form as may be approved in writing by all of the Parties acting by and through their respective counsel of record in the Action.

1.17 "Lead Counsel" means The Rosen Law Firm, P.A.

1.18 "Lead Plaintiff" means Winston Derouin.

1.19 "MOU" means the Memorandum of Understanding entered into on July 30, 2021 between Lead Counsel and Defendants' Counsel.

1.20 "Notice" means collectively, the Postcard Notice, the Notice of Pendency and Proposed Settlement of Class Action ("Long Notice"), and the Summary Notice of Pendency and Proposed Settlement of Class Action ("Summary Notice"), which are to be made available to Settlement Class Members substantially in the forms attached hereto as Exhibits A-1, A-2, and A-4, respectively, on the Claims Administrator's website and/or mailed or emailed to Settlement Class Members.

1.21 "Notice Administration Fund" means an interest-bearing escrow account established by the Claims Administrator to receive funds pursuant to ¶ 2.0(a).

1.22 "Order of Preliminary Approval" means the order certifying the Settlement Class for settlement purposes only, preliminarily approving the Settlement, and authorizing notice thereof and related matters set forth as Exhibit A hereto.

1.23 "Parties" means Lead Plaintiff and Defendants.

1.24 "Person" means an individual, corporation, partnership, limited partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity and their spouses, heirs, predecessors, successors, representatives, or assigns.

1.25    "Plan of Allocation" means a plan or formula for allocating the Net Settlement Fund, as described in ¶ 7.5 below, to Authorized Claimants. Any Plan of Allocation is not part of this Stipulation and Defendants shall have no responsibility or liability with respect thereto.

1.26    "Postcard Notice" means the postcard notice to be sent to Settlement Class Members substantially in the form attached hereto as Exhibit A-1, which shall contain information relating to, among other things, how to access the Long Notice, Stipulation, and file a Proof of Claim.

1.27    "Proof of Claim" means the Proof of Claim and Release Form to be submitted by Claimants, substantially in the form attached as Exhibit A-3.

1.28    "Releasing Parties" shall mean the: (1) Releasing Plaintiffs with respect to the Released Claims Against Defendants; and (2) Defendants with respect to the Released Claims Against Lead Plaintiff.

1.29    "Released Parties" means the Defendant Releasees and the Lead Plaintiff Releasee.

(i)    "Defendant Releasees" shall mean Defendants, and Defendants' current or former parents, subsidiaries, affiliates, predecessors, successors, divisions, joint ventures, and general or limited partnerships, and each of their respective current or former officers, directors, trustees, partners, contractors, auditors, principals, agents, managing agents, employees, attorneys, accountants, investment bankers, underwriters, insurers or reinsurers in their capacities as such, as well as each of the immediate family members, heirs, executors, personal or legal representatives, estates, beneficiaries, predecessors, successors and assigns of the Defendants and other individuals referred to in this paragraph.

(ii)    "Lead Plaintiff Releasee" shall mean Derouin, and/or his immediate family members, associates, affiliates, and each and all of his respective past, present employees, attorneys, accountants, insurers, co-insurers and reinsurers, heirs, executors, trustees, general or limited partners or partnerships, limited liability companies, members, personal or legal representatives, estates, administrators, predecessors, successors and assigns or other individuals

7

or entities in which either Lead Plaintiff has a controlling interest or which is related to or affiliated with any Lead Plaintiff.

1.30 "Released Claims" means collectively Released Claims Against Defendants and Released Claims Against Lead Plaintiff.

1.31 "Released Claims Against Defendants" means any and all claims (including "Unknown Claims" as defined in ¶ 1.42), demands, rights, causes of action and liabilities, of every nature and description whatsoever, whether based in law or equity, arising under federal, state, local, statutory or common law, or any other law, rule or regulation, including both known and unknown claims with respect to the purchase or sales of NetApp securities during the Settlement Class Period, relating either to: (a) the allegations of the Complaint or Amended Complaint or otherwise asserted in the Action; or (b) any claims that the Releasing Plaintiffs have asserted, could have asserted, or could have asserted, in any forum, that are based upon, arise out of, or relate in any way to the facts, matters, transactions, allegations, claims, losses, damages, disclosures, filings, events, representations, or statements that are set forth in the Complaint or Amended Complaint or that are otherwise at issue in the Action. Released Claims Against Defendants shall not include claims relating to the enforcement of the MOU or this Stipulation.

1.32 "Released Claims Against Lead Plaintiff" means all claims (including "Unknown Claims" as defined in ¶ 1.42), rights, demands, suits, matters, issues, liabilities, or causes of action, in law or in equity, of every nature and description whatsoever, under federal, state, local, foreign law, or any other law, rule, or regulation, whether known or unknown, that arise out of or relate in any way to the institution, prosecution, or settlement of claims against the Defendants, including under Rule 11 of the Federal Rules of Civil Procedure. Released Claims Against Lead Plaintiff shall not include claims relating to the enforcement of the MOU or this Stipulation.

1.33 "Releasing Plaintiffs" shall mean the Lead Plaintiff Releasee, the Settlement Class, all Settlement Class Members, and the successors and assigns of Lead Plaintiff and of all Settlement Class Members, in any capacity.

1.34 "Settled Claims" means all of the Released Claims.

1.35 "Settlement" means the settlement contemplated by this Stipulation.

8

1.36 "Settlement Amount" means Two Million Two Hundred Fifty Thousand Dollars ($2,250,000).

1.37 "Settlement Class" means all persons and entities who purchased or otherwise acquired the publicly traded securities of NetApp between May 23, 2019 and August 1, 2019, both dates inclusive. Excluded from the Settlement Class are Defendants, the officers and directors of NetApp, members of the Individual Defendants' immediate families and their legal representatives, heirs, successors, or assigns and any entity in which the Individual Defendants have or had a controlling interest. Also excluded from the Settlement Class are all putative members of the Settlement Class who exclude themselves by filing a valid and timely request for exclusion, and Persons with no compensable damages.

1.38 "Settlement Class Member" means any person or entity that falls within the definition of the Settlement Class as set forth in ¶ 1.37.

1.39 "Settlement Class Period" means the period from May 23, 2019 to August 1, 2019, both dates inclusive.

1.40 "Settlement Fund" means an interest-bearing escrow account established by the Escrow Agent to receive the amounts of funds payable by ¶ 2.0(a).

1.41 "Summary Notice" means the Summary Notice of Pendency and Proposed Settlement of Class Action to be published on a national business newswire, substantially in the form attached as Exhibit A-4.

1.42 "Unknown Claims" shall collectively mean all claims, demands, rights, liabilities, and causes of action of every nature and description which any Releasing Plaintiff (including the Lead Plaintiff and any Settlement Class Member) does not know or suspect to exist in his, her, or its favor at the time of the release of the Defendant Releasees which, if known by him, her, or it, might have affected his, her or its settlement with and release of the Defendant Releasees, or might have affected his, her, or its decision not to object to this Settlement. With respect to any and all Released Claims, the Parties stipulate and agree that, upon the Effective Date, the Releasing Parties shall expressly waive, and by operation of the Judgment shall have waived, the provisions, rights and benefits of California Civil Code § 1542, which provides:

9

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

Releasing Parties shall expressly waive, and by operation of the Judgment shall have, expressly waived any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to California Civil Code § 1542. The Releasing Parties may hereafter discover facts in addition to or different from those which he, she, or it now knows or believes to be true with respect to the subject matter of the Released Claims, but Releasing Parties shall expressly, fully, finally, and forever settle and release and upon the Effective Date, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever settled and released any and all Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law, or rule, without regard to the subsequent discovery or existence of such different or additional facts. Releasing Parties acknowledge, and the Releasing Plaintiffs (including all Settlement Class Members) shall be deemed by operation of the Judgment to have acknowledged, that the foregoing waiver was separately bargained for and a key element of the Settlement of which this release is a part.

### C.    The Settlement

#### a.    The Settlement Consideration

2.0    In consideration of the full and final settlement of all claims asserted or which could have been asserted against Defendants in this Action, Defendants shall cause to be paid to the Class, the Settlement Amount as follows:

(a)    Within twenty-one (21) calendar days after the later of (i) entry of an order granting preliminary approval of the Settlement, and (ii) Defendants' Counsel's receipt of a W-9 and complete wire and transfer instructions for the Escrow Account, Defendants and/or its Insurer

shall cause to be wired to the Escrow Agent the Settlement Amount ($2,250,000, Two Million Two Hundred Fifty Thousand Dollars) to be deposited into the Settlement Fund.

### b.    The Escrow Agent

2.1    The Settlement Amount shall be invested exclusively in instruments or accounts backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof, including a U.S. Treasury Fund or a bank account that is either (a) fully insured by the Federal Deposit Insurance Corporation ("FDIC") or (b) secured by instruments backed by the full faith and credit of the United States Government. The Escrow Agent shall reinvest the proceeds of these instruments as they mature in similar instruments at their then-current market rates. Defendants shall not bear any responsibility for, or liability related to the investment of the Settlement Amount by the Escrow Agent.

### c.    Return of Funds in Certain Circumstances

2.2    The Settlement Amount shall include all attorneys' fees, administration costs, notice costs, expenses, class member benefits, as well as any other costs, expenses, or fees of any kind whatsoever associated with the resolution of the Action. The interest from the Escrow Account will accrue to the benefit of the Settlement Class if the Court approves the Settlement including the resolution of any appeals taken from the Court's final approval. If the Court does not approve the Settlement or if the approval is reversed or vacated on any appeal, the Settlement Amount and interest thereon will be returned to Defendants and/or the Insurer who paid the Settlement Amount, less any amount used to provide notice of the Settlement to the Settlement Class.

2.3    The Settlement is not a claims-made settlement. Once the Settlement is final and the time for any appeal has expired, or the Settlement has been affirmed on appeal, there will be no reversion of any portion of the Settlement Amount to Defendants and/or the Insurers.

### d.    Handling and Disbursement of Funds by the Escrow Agent

2.4    No monies will be disbursed from the Settlement Fund until after the Effective Date except:

11

(a)     As provided in ¶ 2.10, as regards Taxes. Taxes and Tax Expenses shall be paid out of the Settlement Fund, shall be considered to be a cost of administration of the Settlement, and shall be timely paid by the Escrow Agent without prior order of the Court;

(b)      As provided in ¶ 8.1, as regards attorneys' fees and expenses; and

(c)     As provided in ¶ 2.8, to pay the reasonable fees and expenses incurred by, and the reasonable fees charged by, the Claims Administrator in connection with the administration and notice of the settlement.

2.5     The Escrow Agent shall not disburse the Settlement Fund except as provided in this Stipulation, by an order of the Court, or with the written agreement of Defendants' Counsel and Lead Counsel.

2.6     Subject to further order and/or direction as may be made by the Court, the Escrow Agent is authorized to execute such transactions on behalf of the Class as are consistent with the terms of this Stipulation.

2.7     All funds held by the Escrow Agent shall be deemed and considered to be in *custodia legis* of the Court and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed or returned to the parties who deposited such funds pursuant to this Stipulation and/or further order(s) of the Court.

2.8     The Settlement Fund shall be used by the Escrow Agent to pay the reasonable fees and expenses incurred by, and the reasonable fees charged by, the Claims Administrator in connection with the administration and notice of the settlement upon presentation of customary invoices therefor, which invoices have been approved by Lead Counsel, including, without limitation: the cost of identifying and locating members of the Settlement Class; mailing Notice and Proof of Claim and publishing the Summary Notice (such amounts shall include, without limitation, the actual costs of publication in national newswires, printing and mailing the Notice, and reimbursement to nominee owners for forwarding notice to their beneficial owners), soliciting Settlement Class claims, assisting with the filing of claims, administering and distributing the Net Settlement Fund (as defined below) to Authorized Claimants, processing Proof of Claim and Release Forms, and paying escrow fees and costs, if any, and the administrative expenses incurred

12

and fees charged by the Claims Administrator in connection with providing notice and processing the submitted claims ("Notice and Administration Costs"). Notwithstanding that the Effective Date has not yet occurred, Plaintiff's Counsel may authorize the Escrow Agent to pay from the Escrow Account the actual costs of notice and settlement administration (not including any attorney fees) and tax expenses up to $250,000 without further order of the Court. It is understood that, subject to court approval, class notice and administration expenses shall be paid solely from the Escrow Account. Defendants shall not bear any cost or responsibility for class notice and administration expenses, except that Defendants shall pay the costs of providing NetApp's transfer records and notice pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715 et seq. ("CAFA"), if any. In the event that the Settlement is not consummated, money reasonably paid or incurred for this purpose, including any related fees, shall not be repaid or returned.

2.9     No later than ten (10) calendar days following the filing of this Stipulation with the Court, NetApp shall serve on behalf of all Defendants the notice required under CAFA. At least seven (7) calendar days before the Final Approval Hearing, NetApp shall cause to be served on Lead Counsel and filed with the Court an affidavit or declaration regarding compliance with the CAFA notice requirements.

### e.     Handling of Taxes

2.10

(a)     The Parties and the Escrow Agent agree to treat the Settlement Funds as "qualified settlement funds" within the meaning of Treasury Regulation §1.468B-1. In addition, the Escrow Agent shall timely make such elections as necessary or advisable to carry out the provisions of this ¶ 2.10, including the "relation-back election" (as defined in Treasury Regulation §1.468B-1) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Escrow Agent to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

(b)     The Claims Administrator shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Notice Administration and Settlement Funds

13

(including without limitation the returns described in Treasury Regulation §1.468B-2(k)). Such returns (as well as the election described in ¶ 2.10(a)) shall be consistent with this ¶ 2.10 and in all events shall reflect that all Taxes (including any estimated Taxes, interest or penalties on the income earned) shall be paid out of the Settlement Fund.

(c)    All Taxes (including any estimated Taxes, interest or penalties) arising with respect to the income earned by the Notice and Settlement Funds, and expenses and costs incurred in connection with the operation and implementation of this ¶ 2.10 (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses or penalties relating to filing (or failing to file) the returns described in this ¶ 2.10) ("Tax Expenses"), shall be paid out of the Settlement Fund.

(d)    Defendants, Defendants' Counsel, Lead Plaintiff, and Lead Counsel shall have no liability or responsibility for the Taxes or the Tax Expenses. Taxes and Tax Expenses shall be treated as and considered to be a cost of administration of the Settlement and shall be timely paid by the Escrow Agent out of the Settlement Fund without prior order from the Court.

(e)    The Escrow Agent shall indemnify and hold each of the Defendants, Defendants' Counsel, Lead Plaintiff, and Lead Counsel harmless for Taxes and Tax Expenses (including, without limitation, Taxes payable by reason of any such indemnification).

(f)    The Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to Authorized Claimants any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treasury Regulation §1.468B-2(l)(2)). Neither Defendants, Defendants' Counsel, Lead Plaintiff, nor Lead Counsel are responsible therefor, nor shall they have any liability with respect thereto.

(g)    The Parties agree to cooperate with the Escrow Agent, each other, and any involved tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this ¶ 2.10. Defendants' Counsel agree to promptly provide the Escrow Agent with the statement described in Treasury Regulation §1.468B-3(e).

14

### f.    Termination of Settlement

2.11    Defendants shall, acting collectively, have the right to terminate the Settlement and this Stipulation, by providing written notice of their election to do so to all other Parties within ten (10) Business Days of: (a) the Court's denial of Lead Plaintiff's motion for preliminary approval of the Settlement in any material respect without leave to amend and resubmit; (b) the Court's refusal to approve this Stipulation or any material part of it without leave to amend and resubmit; (c) the Court's declining to enter an Order and Final Judgment in any material respect without leave to amend and resubmit; or (d) the date upon which the Order and Final Judgment is modified or reversed in any material respect by the Court of Appeals or the Supreme Court. Any decision with respect to any Fee and Expense Application (defined below), or with respect to any Plan of Allocation, shall not be considered material to this Stipulation and shall not be grounds for termination.

2.12    If this Stipulation is terminated, the Settlement Amount, including any interest accrued thereon, less expenses actually incurred or due and owing from the Settlement Fund for the Notice and Administration Costs of Settlement pursuant to ¶ 2.8 above, shall be refunded by check or wire transfer in accordance with the instructions to be provided by Defendants' Counsel.

2.13    Lead Plaintiff shall have the right to terminate the Settlement and this Stipulation, by providing written notice of his election to do so to all other Parties within ten (10) days of: (a) the Court's denial of Lead Plaintiff's motion for preliminary approval of the Settlement in any material respect as to the Defendants without leave to amend and resubmit; (b) the Court's refusal to approve this Stipulation or any material part of it without leave to amend and resubmit; (c) the Court's declining to enter an Order and Final Judgment in any material respect as to the Defendants without leave to amend and resubmit; (d) Defendants' failure to timely make full payment of the Settlement Amount into the Escrow Account if, after notice to Defendants by Plaintiff of such failure, Defendants have not cured such failure by making full payment of the Settlement Amount into the Escrow Account within five (5) business days of receipt of such notice from Plaintiff; or (e) the date upon which the Order and Final Judgment is modified or reversed in any material respect by the Court of Appeals or the Supreme Court. Any decision with

15

respect to any Fee and Expense Application, or with respect to any Plan of Allocation, shall not be considered material to this Stipulation and shall not be grounds for termination.

2.14    If the Settlement Amount is not paid into the Escrow Account in accordance with ¶ 2.0 of this Stipulation, and, after notice to Defendants by Plaintiff of such failure, Defendants have not cured such failure by making full payment of the Settlement Amount into the Escrow Account within five (5) business days of receipt of such notice from Plaintiff, then Plaintiff on behalf of the Settlement Class, and not Settling Defendants, shall have the right to (a) terminate the Settlement and Stipulation by providing written notice to Defendants at any time prior to the Court's entry of the Final Judgment; or (b) enforce the terms of the Settlement and this Stipulation and seek a judgment effecting the terms herein.

2.15    If, prior to the Final Approval Hearing, any persons who otherwise would be members of the Settlement Class have timely filed for exclusion from the Settlement Class in accordance with the provisions of the Order of Preliminary Approval and the notice given pursuant thereto, and such persons in the aggregate purchased a number of shares of NetApp securities during the Settlement Class Period in an amount greater than the sum specified in a separate "Supplemental Agreement" between the Parties, Defendants, in their sole discretion, shall have the option to terminate this Stipulation in accordance with the procedures set forth in the Supplemental Agreement. The Supplemental Agreement shall not be filed with the Court and its terms shall not be disclosed in any other manner (other than the statements herein and in the Notice, to the extent necessary, or as otherwise provided in the Supplemental Agreement) unless and until a dispute among the Parties concerning its interpretation or application arises. If submission of the Supplemental Agreement is required for resolution of a dispute or is otherwise ordered by the Court, Lead Plaintiff and the Defendants will undertake to have the Supplemental Agreement submitted to the Court *in camera.* Copies of all requests for exclusion received and copies of all written revocations of requests for exclusion received shall be sent to counsel for the Parties within a reasonable time of receipt by the Claims Administrator.

2.16    If: (i) Defendants exercise their right to terminate the Settlement as provided in this Stipulation; or (ii) Lead Plaintiff exercises his right to terminate this Settlement as provided

16

in this Stipulation; or (iii) the Court disapproves the Settlement; or (iv) the Effective Date as to the Settlement otherwise fails to occur with respect to Defendants, then:

(a)    The Settlement and the relevant portions of this Stipulation shall be canceled and terminated without prejudice with respect to the Parties to whom the termination of the Settlement applies and only those Parties, and this Stipulation shall be null and void and shall have no further force or effect with respect to these Parties and only those Parties;

(b)    The Parties to whom the termination of Settlement applies and only those Parties shall revert to their respective positions in the Action on July 21, 2021, the date of the MOU's execution.

**D.    Class Certification**

3.0    Solely for purposes of this Settlement, the Parties hereby stipulate to certification of the Settlement Class, appointment of Lead Plaintiff as Class Representative, and appointment of Lead Counsel as Class Counsel, pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure. The certification of the Settlement Class shall be binding only with respect to the Settlement and only if the Judgment becomes Final. If the Court does not approve the Settlement for any reason, Defendants reserve the right to oppose class certification, appointment of any plaintiff as class representative, and/or appointment of class counsel in any future proceedings.

**E.    Preliminary Approval Order**

4.0    Promptly after execution of this Stipulation, Lead Counsel shall submit this Stipulation together with its Exhibits to the Court and shall request entry of an Order of Preliminary Approval (substantially in the form of Exhibit A) that will, *inter alia*, grant preliminary approval to the Settlement; certify the Settlement Class; and authorize notification of the Settlement Class substantially in the form of Exhibits A-1, A-2, and A-4 hereto, along with provision of a Proof of Claim substantially in the form of Exhibit A-3.

4.1    The Long Notice shall describe the Settlement; the proposed Plan of Allocation; the requests for awards of attorneys' fees and expenses and Lead Plaintiff's Compensatory Award (consistent with ¶¶ 8.0 and 9.0); the date of the Final Approval Hearing; Settlement Class Members' rights to opt out, object or otherwise be heard with regard to these matters; and

17

Settlement Class Members' opportunity to file claims upon the Settlement Fund.

4.2   No later than seven (7) Business Days after entry of the Order of Preliminary Approval, NetApp shall obtain from its transfer agent, at NetApp's expense, a list of certificate or record holders who may have purchased shares of NetApp securities during the Settlement Class Period. NetApp shall provide and/or cause its transfer agent to provide, to the Claims Administrator a list of the names and addresses of the record owners of NetApp securities during the Settlement Class Period in a usable electronic format, such as an Excel spreadsheet. This information will be kept confidential and not used for any purpose other than to provide the notice.

4.3   The Stipulation of Settlement, Notice, Proof of Claim, and all papers submitted in support thereof shall be posted on a website to be maintained by the Claims Administrator.

**F.     Releases and Covenants Not to Sue**

5.0   The obligations incurred pursuant to this Stipulation shall be a full and Final disposition of the Action.

5.1   Upon the Effective Date, the Releasing Plaintiffs shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, dismissed with prejudice, and discharged all Released Claims Against Defendants and each of the Defendant Releasees, whether or not any individual Settlement Class Member executes and delivers the Proof of Claim.   This release shall not apply to any person or entity who or which submits a request for exclusion from the Settlement Class that is accepted by the Court.

5.2   Upon the Effective Date, Defendants, and each of the Defendant Releasees, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished and discharged all Released Claims Against Lead Plaintiff, the Lead Plaintiff Releasees, Settlement Class Members, and Lead Counsel. This release shall not apply to any person or entity who or which submits a request for exclusion from the Settlement Class that is accepted by the Court.

**G.     Proof of Claims**

6.0   Only those Settlement Class Members filing valid and timely Proofs of Claim shall be entitled to participate in the Settlement and receive a distribution from the Settlement Fund.

18

The Proof of Claim to be executed by Settlement Class Members shall release all Settled Claims against the Released Parties and shall be substantially in the form contained in Exhibit A-3 attached hereto.

6.1     No Settling Defendant, and no other Released Defendant Party shall be permitted to review, contest or object to any Claim, or any decision of the Claims Administrator or Class Counsel with respect to accepting or rejecting any Claim for payment by a Settlement Class Member.  Lead Counsel shall have the right, but not the obligation, to waive what it deems to be formal or technical defects in any Proof of Claim submitted in the interests of achieving substantial justice.

6.2     All Settlement Class Members not submitting valid and timely requests for exclusion shall be bound by the Releases, whether or not they submit a valid and timely Proof of Claim.

**H.     Administration and Calculation of Claims, Final Awards, and Supervision and Distribution of the Settlement Fund**

7.0     The Claims Administrator shall administer and calculate the claims submitted by Settlement Class Members and shall oversee distribution of the Net Settlement Fund (defined below) to Authorized Claimants. The distribution checks will be drawn upon the Settlement Fund.

7.1     Defendants shall have no responsibility or liability for the allocation of the Settlement Fund among the Settlement Class Members or the allocation of any awards of Lead Plaintiff's attorneys' fees, costs, and expenses. Any such awards shall be paid solely by the Settlement Fund.

7.2     The Settlement Fund shall be applied as follows:

(i)     To pay the Taxes and Tax Expenses described in ¶ 2.10 above;

(ii)     To pay all the costs and expenses reasonably and actually incurred in connection with settlement administration, including, but not limited to, locating Settlement Class Members, providing Notice, soliciting Settlement Class claims, assisting with the filing of claims, processing Proofs of Claim, making administrative determinations concerning the acceptance or rejection of submitted claims, administering and distributing the Settlement Fund to Authorized

19

Claimants, paying escrow fees and costs, if any, and paying the fees and expenses of the Claims Administrator;

(iii) To pay Lead Counsel's attorneys' fees and expenses, as provided in ¶ 8.1, to the extent allowed by the Court;

(iv) To pay Compensatory Award to the Lead Plaintiff as provided in ¶ 9.0, to the extent allowed by the Court;

(v) To pay the Claims Administrator's fees and expenses reasonably incurred in the claims administration of the Settlement; and

(vi) Upon court approval, to distribute the balance of the Settlement Fund, that is, the total Settlement Fund less the items set forth in ¶¶ 7.2(i), (ii), (iii), (iv) and (v) (the "Net Settlement Fund"), to the Authorized Claimants as allowed by this Stipulation, the Plan of Allocation, or the Court.

7.3 Upon the entry of the Judgment and thereafter, subject to ¶ 2.3 and in accordance with the terms of the Plan of Allocation, or such further approval and further order(s) of the Court as may be necessary or as circumstances may require, the Net Settlement Fund shall be distributed to Authorized Claimants subject to and in accordance with the following:

(i) Each Settlement Class Member claiming to be an Authorized Claimant shall be required to submit to the Claims Administrator a completed Proof of Claim, substantially in the form of Exhibit A-3 hereto, signed under penalty of perjury and supported by such documents as specified in the Proof of Claim or such other documents or proof, as are reasonably available to the Authorized Claimant, as Lead Counsel, in their discretion, may deem acceptable, unless otherwise ordered by the Court;

(ii) Except as otherwise ordered by the Court, all Settlement Class Members who fail to timely submit a Proof of Claim, or such other period as may be ordered by the Court, or otherwise allowed, or who file a Proof of Claim that is rejected, shall be forever barred from receiving any payments pursuant to this Stipulation and Settlement, but will in all other respects be subject to and bound by the provisions of this Stipulation, the releases contained herein, and

20

the Judgment, and will be barred and enjoined from bringing any action against the Released Parties concerning the Settled Claims.

7.4    No Person shall have any claim against Lead Plaintiff, Lead Counsel, Defendants, Defendants' Counsel, the Claims Administrator, the Escrow Agent or any other agent designated by Lead Counsel based on distribution determinations or claim rejections made substantially in accordance with this Stipulation and the Settlement contained therein, the Plan of Allocation, or further orders of the Court.

7.5    The Net Settlement Fund shall be distributed to the Authorized Claimants substantially in accordance with a Plan of Allocation to be described in the Long Notice and approved by the Court. However, if there is any balance remaining in the Net Settlement Fund after six (6) months from the date of distribution of the Net Settlement Fund (whether by reason of tax refunds, uncashed checks, or otherwise), the Claims Administrator under the supervision of Lead Counsel shall, if feasible, reallocate such balance among Authorized Claimants in an equitable and economic fashion. Thereafter, any balance that still remains in the Net Settlement Fund shall be donated to not-for-profit charitable organizations(s) selected by Lead Counsel, specifically the Investor Justice and Education Clinic (IJEC). *See* http://law.howard.edu/content/investor-justice-and-education-clinic-ijec.

7.6    This is not a claims-made settlement and, if all conditions of the Stipulation are satisfied and the Settlement becomes Final, no portion of the Settlement Fund will be returned to the Defendants or the Insurers who paid the Settlement Amount.

7.7    Defendants and Defendant Releasees shall have no responsibility for, interest in, or liability whatsoever with respect to the distribution of the Net Settlement Fund, the Plan of Allocation, the determination, administration, or calculation of claims, the payment or withholding of Taxes or Tax Expenses, or any losses incurred in connection therewith.

7.8    It is understood and agreed by the Parties that any proposed Plan of Allocation of the Net Settlement Fund including, but not limited to, any adjustments to an Authorized Claimant's claim set forth therein, is not a part of this Stipulation and is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of

21

the Settlement set forth in this Stipulation, and any order or proceedings relating to the Plan of Allocation shall not operate to terminate or cancel this Stipulation or affect the finality of the Court's Judgment approving this Stipulation and the Settlement set forth therein, or any other orders entered pursuant to this Stipulation.

### I.      Attorneys' Fees and Expenses

8.0    Lead Counsel may submit an application or applications (the "Fee and Expense Application") for payments to Lead Counsel from the Settlement Fund for: (a) an award of attorneys' fees; plus (b) reimbursement of actual costs and expenses, including experts or consultants, incurred in connection with prosecuting the Action as may be awarded by the Court. Lead Counsel reserves the right to make additional applications for fees and expenses incurred, if necessary.

8.1    Any award of attorneys' fees, costs, and expenses approved by the Court shall be payable to Lead Counsel solely from the Settlement Fund, for distribution by Lead Counsel in its sole discretion among itself, no later than five (5) Business Days after final approval of the Settlement and the Court's entry of an order awarding fees and expenses ("Fee and Expense Award"), notwithstanding any appeals that may be taken. Should an appellate court later reverse the Court's final approval of the Settlement, Lead Counsel shall be jointly and severally obligated to repay all such attorney's fees and expenses awarded. If the Settlement is terminated or if, as a result of any appeal or further proceedings, the Fee and Expense Award is reduced or reversed, Lead Counsel shall repay fees and expenses accordingly, including accrued interest at the same net rate as is earned by the Settlement Fund.

8.2    Lead Counsel further agrees to refund to the Settlement Fund any award of attorney's fees and expenses by the Court paid to Lead Counsel in the event that this Settlement does not become Final; in such situation, payment of all of the Fee and Expense Award shall be made by Lead Counsel into the Settlement Fund within ten (10) calendar days thereof, and shall thereafter be distributed by the Escrow Agent pursuant to the terms of ¶ 10.3.

8.3    If the Fee and Expense Award is reduced or reversed on appeal, Lead Counsel shall make all necessary refunds and repayments into the Settlement Fund no later than fifteen

22

(15) calendar days after any order that reverses or reduces any award of attorneys' fees or expenses, which shall be distributed by the Escrow Agent to the Settlement Class pursuant to the manner directed in the Final order.

8.4     The procedure for and allowance or disallowance by the Court of any application by Lead Counsel for attorneys' fees and expenses, including the fees and expenses of experts and consultants, to be paid out of the Settlement Fund, are not part of the Settlement set forth in this Stipulation and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the Settlement set forth in this Stipulation. Any order or proceedings relating to the Fee and Expense Application, or any appeal from any order relating thereto or reversal or modification thereof, shall not operate to modify, terminate or cancel this Stipulation, or affect or delay the finality of the Judgment approving this Stipulation and the Settlement of the Action.

8.5     Defendants and the Defendant Releasees shall have no responsibility for, and no liability whatsoever with respect to, the Fee and Expense Award or for any payment to Lead Counsel and/or any other Person who receives payment from the Settlement Fund.

8.6     Defendants and the Defendant Releasees shall have no responsibility for, and no liability whatsoever with respect to, the allocation among Lead Counsel and/or any other Person who may assert some claim thereto, of any Fee and Expense Award that the Court may make in the Action.

**J.     Lead Plaintiff's Compensatory Award**

9.0     Lead Counsel may submit an application to the Court to authorize the payment of a Compensatory Award from the Settlement Fund for the time and expenses expended by the Lead Plaintiff in assisting Lead Counsel in the litigation of this Action. Subject to the payment terms in ¶ 2.0, payment for any Compensatory Award payable in cash shall be payable to the Lead Plaintiff five (5) days after the Effective Date. Defendants and the Defendant Releasees shall have no responsibility for, and no liability whatsoever with respect to, any such Compensatory Award.

**K.**    **Effect of Disapproval, Cancellation or Termination**

10.0    The Effective Date of the Stipulation shall be conditioned upon the occurrence of all of the following events:

(a)    Defendants have caused the contributions to be made to the Settlement Fund, as required by ¶ 2.0 above;

(b)    the Court has entered the Judgment, or a judgment substantially in the form of Exhibit B attached hereto; and

(c)    the Judgment has become Final, as defined in ¶ 1.13 hereof.

Any appeal or delay in (a) the approval of the Plan of Allocation, (b) the determination of the Fee and Expense Award, or (c) the granting of a Compensatory Award to Lead Plaintiff, shall not affect, alter, or delay the occurrence of the Effective Date.

10.1    Upon the occurrence of the Effective Date, any and all interest or right of Defendants in or to the Settlement Fund, if any, shall be absolutely and forever extinguished, except as set forth in this Stipulation. The Settlement Fund shall be distributed in accordance with ¶ 7.2 hereof.

10.2    In the event that this Stipulation is not approved by the Court, or the Effective Date does not occur, then this Stipulation shall be canceled and terminated subject to ¶ 10.3 unless Lead Counsel and Defendants' Counsel mutually agree in writing to proceed with this Stipulation. None of the Parties, or any of them, shall have any obligation whatsoever to proceed under any terms other than provided for and agreed herein. Without limitation of any Party's other rights or remedies at law or in equity to enforce its rights against any other Party that breaches its obligations under this Stipulation, no breach by any Party of its obligations under this Stipulation shall permit any other Party to terminate this Stipulation or, after the Effective Date, affect or impair the disposition of the Action or release of claims contemplated by ¶¶ 1.30-1.32.

10.3    Unless otherwise ordered by the Court, in the event the Stipulation is terminated, or is canceled, or shall not become effective for any reason, within ten (10) Business Days after written notification of such event is sent by Defendants' Counsel or Lead Counsel to the Escrow Agent, subject to the terms of ¶ 2.10 hereof, the Settlement Fund (including accrued interest), less

24

any expenses and any costs which have either been properly disbursed pursuant to ¶¶ 2.3-2.6 hereof, or are determined to be chargeable to the Settlement Fund or the notice and administration of the Settlement pursuant to ¶ 2.8 hereof, shall be refunded by the Escrow Agent to NetApp, plus accrued interest, by check or wire transfer pursuant to written instructions from NetApp. At NetApp's request, the Escrow Agent or its designee shall apply for any tax refund owed to the Settlement Fund and pay the proceeds, after deduction of any fees or expenses reasonably incurred in connection with such application(s) for refund, to NetApp.

10.4    In the event the Stipulation is not approved by the Court or the Settlement set forth in the Stipulation is terminated or fails to become final in accordance with its terms, the Parties shall be restored to their respective positions in the Action immediately prior to the execution of this Stipulation. In such event, the terms and provisions of the Stipulation, with the exception of ¶¶ 1.0-1.42 and ¶¶ 10.2-10.5 hereof, shall have no further force and effect and shall not be used in this Action or in any other proceeding for any purpose, and any judgment or order entered by the Court in accordance with the terms of this Stipulation shall be treated as vacated, *nunc pro tunc*. No order of the Court or modification or reversal on appeal of any order of the Court concerning the Plan of Allocation or the amount of any attorneys' fees, costs, expenses, and interest awarded by the Court to Lead Counsel shall constitute grounds for cancellation or termination of the Stipulation.

10.5    If the Effective Date does not occur, neither Lead Plaintiff nor Lead Counsel shall have any obligation to repay any amounts actually and properly disbursed from the Notice Administration Fund. In addition, any expenses already incurred and properly chargeable to the Notice Administration Fund pursuant to this Stipulation at the time of such termination or cancellation, but which have not been paid, shall be paid by the Escrow Agent in accordance with the terms of the Stipulation prior to the balance being refunded in accordance with ¶ 10.3.

**L.    Miscellaneous Provisions**

11.0    This Stipulation, and all related documents, shall not be construed as or deemed to be evidence of any presumption, admission, or concession on the part of any Defendant, Defendants' Counsel, Insurer, or any of the Defendant Releasees (as defined in ¶ 1.29(i)), with

25

respect to any claim of any fact alleged by Lead Plaintiff or any Settlement Class Member, the validity of any claim that was or could have been asserted by Lead Plaintiff or any Settlement Class Member, or any deficiency of any defense that has been or could have been asserted by the Defendants in this Action or in any other litigation. Further, this Stipulation, and all related documents, shall not be construed as or deemed to be evidence of any deception, negligence, fault, liability, wrongdoing, or damage whatsoever and of any kind of any Defendant or any of the Defendant Releasees or in any way referred to for any other reason as against any Defendant or any of the Defendant Releasees, in any civil, criminal, or administrative action or proceeding. The Parties, and each of them, shall not assert or pursue any action, claim or rights that any party hereto violated any provision of Rule 11 of the Federal Rules of Civil Procedure. Further, the Parties, and each of them, will not deny in any statement made to any media representative that the Action is being settled voluntarily after consultation with competent counsel. The Parties, and each of them, and their respective counsel agree that the Action was resolved in good faith, following arm's length bargaining.

11.1    The Parties acknowledge that it is their intent to consummate this Stipulation. The Parties agree, subject to their fiduciary and other legal obligations, to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Stipulation and to exercise their reasonable best efforts to accomplish the foregoing terms and conditions of this Stipulation. Lead Counsel and Defendants' Counsel agree to cooperate with one another in seeking Court approval of the Order of Preliminary Approval, the Stipulation, and the Settlement, and to promptly agree upon and execute all such other documentation as may be reasonably required to obtain final approval of the Settlement.

11.2    The Parties intend this Stipulation to be a final and complete resolution of all disputes between them with respect to the Action as well as any disputes which could have been raised in the Action by Lead Plaintiff, the Settlement Class, and the Releasing Plaintiffs, and each or any of them, against Defendants and Defendant Releasees, Defendants' Counsel, and each or any of them, on the one hand, and by Defendants and each or any of them, against Lead Plaintiff and the Lead Plaintiff Releasees, and each or any of them, on the other hand. Accordingly, the

26

Parties agree not to assert in any forum or in any statement made to any media representative (whether or not for attribution), that the Action was brought by Lead Plaintiff or defended by any the Defendants, or each or any of them, in bad faith, or without a reasonable basis. The Judgment will contain a statement that during the course of the Action, the parties and their respective counsel at all times complied with the requirements of Rule 11 of the Federal Rules of Civil Procedure. The Parties further agree that the amount paid to the Settlement Fund and the other terms of the Settlement were negotiated at arm's length and in good faith by the Parties, and reflect a settlement that was reached voluntarily after consultation with competent legal counsel.

11.3    Except as otherwise provided herein, all agreements made and orders entered during the course of the Action relating to the confidentiality of information shall survive this Stipulation.

11.4    The Settlement contemplated herein is not subject to or contingent upon confirmatory discovery, or other discovery.

11.5    The MOU executed by the Parties shall remain confidential after this Stipulation is filed with the Court. Upon the execution of the Stipulation, the Stipulation will supersede the MOU.

11.6    Whether or not the Effective Date occurs or this Stipulation is terminated, neither this Stipulation nor the Settlement contained herein, nor any act performed or document executed pursuant to or in furtherance of this Stipulation or the Settlement:

(i)    may be deemed, or shall be used, offered, or received against any of the Defendants or Defendant Releasees, or each or any of them, as an admission, concession, or evidence of the validity of any of the Released Claims Against Defendants, the truth of any fact alleged by Lead Plaintiff, the deficiency of any defense that has been or could have been asserted in the litigation, or of any alleged wrongdoing, liability, negligence, or fault of any of the Defendants and Defendant Releasees;

(ii)    may be deemed, or shall be used, offered or received against any of Lead Plaintiff, the Settlement Class, or the Lead Plaintiff Releasees, as an admission, concession, or evidence of, the validity or invalidity of any of the Released Claims Against Lead Plaintiff, the infirmity

27

or strength of any claims raised in the Action, the truth or falsity of any fact alleged by Defendants, or the availability or lack of availability of meritorious defenses to the claims raised in the Action;

If this Stipulation is approved by the Court, any party or any of the Released Parties may file this Stipulation and/or Judgment in any action that may be brought against such party or parties in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

11.7    The headings used herein are used for the purpose of convenience only and are not meant to have legal effect.

11.8    The waiver by one party of any breach of this Stipulation by any other party shall not be deemed as a waiver of any other prior or subsequent breaches of this Stipulation.

11.9    All of the Exhibits to this Stipulation are material and integral parts hereof and are fully incorporated herein by this reference.

11.10    This Stipulation may be amended or modified only by a written instrument signed by or on behalf of all Parties or their respective successors-in-interest.

11.11    This Stipulation and the Exhibits attached hereto constitute the entire agreement among the Parties hereto and no representations, warranties or inducements have been made to any party concerning this Stipulation or its Exhibits other than the representations, warranties and covenants contained and memorialized in such documents. Except as otherwise provided herein, each Party shall bear its own costs.

11.12    Each counsel or other Person executing this Stipulation, any of its Exhibits, or any related settlement documents on behalf of any party hereto hereby warrants and represents that such Person has the full authority to do so and that such person has the authority to take appropriate action required or permitted to be taken pursuant to the Stipulation to effectuate its terms.

11.13    This Stipulation may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument provided that counsel for the Parties to this Stipulation all exchange original signed counterparts.

11.14   This Stipulation shall be binding upon, and inure to the benefit of, the successors and assigns of the parties hereto and the Released Parties and the Releasing Plaintiffs.

11.15   The Parties acknowledge that the Court will retain jurisdiction with respect to implementation and enforcement of the terms of this Stipulation and submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in this Stipulation.

11.16   This Stipulation and the Exhibits thereto shall be considered to have been negotiated, executed and delivered, and to be wholly performed, in the State of California, and the rights and obligations of the parties to this Stipulation shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of California without giving effect to that State's choice of law principles.

11.17   This Stipulation is deemed to have been prepared by counsel for all parties, as a result of arm's length negotiations among the parties. Whereas all parties have contributed substantially and materially to the preparation of this Stipulation, it shall not be construed more strictly against one party than another.

11.18   Whenever this Stipulation requires or contemplates that a Party shall or may give notice to the other, notice shall be provided by electronic mail, or next-day (excluding Saturday and Sunday) express delivery service as follows and shall be deemed effective upon such transmission or delivery to the address set forth below:

| | |
|---|---|
| If to Lead Plaintiff, then to: | Jacob A. Goldberg<br>**THE ROSEN LAW FIRM, P.A.**<br>101 Greenwood Avenue, Suite 440<br>Jenkintown, PA 19046<br>jgoldberg@rosenlegal.com |
| If to Defendants, then to: | Benjamin M. Crosson<br>**WILSON SONSINI GOODRICH &**<br>**ROSATI, P.C.**<br>650 Page Mill Road<br>Palo Alto, CA 94304<br>bcrosson@wsgr.com |

11.19   All time periods set forth herein shall be computed in calendar days unless otherwise expressly provided. In computing any period of time prescribed or allowed by this

29

Stipulation or by order of the Court, the day of the act, event, or default from which the designated period of time begins to run shall not be included.

11.20   The Parties reserve the right, subject to the Court's approval, to make any reasonable extensions of time that might be necessary to carry out any of the provisions of this Stipulation.

IN WITNESS WHEREOF, the parties hereto have caused this Stipulation to be executed, by their duly authorized attorneys, dated September 21, 2021.

**THE ROSEN LAW FIRM, P.A.**

_____

Jacob A. Goldberg
Gonen Haklay
101 Greenwood Avenue, Suite 440
Jenkintown, PA 19046
Tel: (215) 600-2817
Fax: (212) 2020-3827
jgoldberg@rosenlegal.com
ghaklay@rosenlegal.com

_Lead Counsel for Plaintiff_

**WILSON SONSINI GOODRICH & ROSATI, P.C.**

/s/ _Ben Crosson_

_____

Benjamin M. Crosson
Keith E. Eggleton
Charles A. Talpas
650 Page Mill Road
Palo Alto, CA 94304
Tel: (650) 493-9300
Fax: (650) 565-5100
bcrosson@wsgr.com
keggleton@wsgr.com
ctalpas@wsgr.com

_Counsel for Defendants-Appellees NetApp, Inc.,
George Kurian, Ronald J. Pasek, and Matthew K.
Fawcett_

30