**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen (SBN 219683)
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Lead Counsel for Plaintiff and the Class*

*[Additional Counsel on Signature Page]*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHAD C. SMITH, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NETAPP, INC., *et al.*,<br><br>Defendants. | Case No: 4:19-cv-04801-JST<br><br>CLASS ACTION<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing Date: September 1, 2022<br>Time: 2:00 p.m. PST<br>Via Zoom: https://cand.uscourts.gov/judges/tigar-jon-s-jst/<br>Judge: Jon S. Tigar |

## NOTICE OF MOTION FOR FINAL APPROVAL
## OF CLASS ACTION SETTLEMENT

TO THE CLERK OF THE COURT AND ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:

PLEASE TAKE NOTICE that, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure and the Court's Order Preliminarily Approving Settlement and Providing for Notice, on September 1, 2022, at 2:00 p.m. PST, or as soon thereafter as the matter may be heard, Lead Plaintiff Winston Derouin will hereby move the Honorable Jon S. Tigar, District Judge, vis Zoom at the link https://cand.uscourts.gov/judges/tigar-jon-s-jst/, for entry of the [Proposed] Order and Final Judgment submitted herewith, which: (i) grants final approval of the proposed class action settlement on the terms set forth in the Stipulation of Settlement and exhibits thereto, dated September 21, 2021 (Dkt. No. 61-1) ("Stipulation"); (ii) grants final certification of the proposed Settlement Class, appointing Plaintiff as class representative of the Settlement Class and Lead Counsel as class counsel for the Settlement Class; and (iii) grants final approval of the proposed Plan of Allocation for the Net Settlement Fund.[1]

In support of this Motion, Plaintiff submit the following memorandum, the Declaration of Jacob A. Goldberg in support of: (I) Plaintiff's Motion for Final Approval of Class Action Settlement and Plan of Allocation; and (II) Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Expenses ("Goldberg Decl."), filed concurrently herewith and exhibits thereto, all prior pleadings and papers in this Action; and such additional information or argument as may be required by the Court.

Defendants do not oppose this motion.

---

[1] All capitalized terms, unless otherwise defined herein, have the same meaning as set forth in the Stipulation.

## TABLE OF CONTENTS

I.   PRELIMINARY STATEMENT ................................................................................1

II.  SUMMARY OF THE LITIGATION AND SETTLEMENT ..............................2

     A.  Factual Background ................................................................................2

     B.  Procedural History ................................................................................3

     C.  The Settlement ................................................................................4

III. ARGUMENT ................................................................................4

     A.  The Court Should Grant Final Certification of the Settlement Class ............................4

     B.  The Notice Program Satisfied Rule 23, Due Process, and the PSLRA ............................5

     C.  The Court Should Approve the Settlement as Fair, Reasonable, and Adequate Pursuant to Fed. R. Civ. P. 23(e) ................................................................................6

          1.  Standards for Final Approval Under the Northern District Guidelines, Rule 23(e), and Ninth Circuit Law ................................................................................6

          2.  Class Members' Response to the Settlement Supports Granting Final Approval ................................................................................9

          3.  Plaintiff and Lead Counsel Have Provided Adequate Representation ...... 10

          4.  The Settlement is the Result of Arm's-Length Negotiations Overseen by an Experienced Mediator ................................................................................11

          5.  The Settlement is a Favorable Result for the Settlement Class in Light of the Benefits of the Settlement and the Risks of Continued Litigation ................................................................................12

          6.  The Remaining Rule 23(e)(2)(C) Factors Support Approval ................... 15

               (a)  The Methods of Distributing Relief and Processing Claims ......... 16

               (b)  Identification of Other Agreements .............................................. 16

               (c)  The Proposed Settlement Does Not Unjustly Favor Any Settlement Class Members, Including Plaintiff .............................. 17

          7.  The Remaining *Hanlon* Factors Favor Final Approval ............................ 17

               (a)  The Amount Offered in Settlement ............................................... 18

               (b)  The Extent of Discovery and the Stage of Proceedings ............... 19

               (c)  Recommendation of Experienced Counsel ................................... 21

               (d)  The Presence of a Governmental Participant ............................... 21

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

       D.     The Plan of Allocation is Fair and Reasonable and Merits Final Approval ............... 21

IV.     CONCLUSION.................................................................................................................. 23

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**

3

*Christine Asia Co. v. Yun Ma*,
   No. 115MD02631CMSDA, 2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ............................. 11

*Chun-Hoon v. McKee Foods Corp.*,
   716 F. Supp. 2d 848 (N.D. Cal. 2010) ......................................................................... 9

*Churchill Vill., L.L.C. v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004) ......................................................................................... 9

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974) ....................................................................................... 19

*Destefano v. Zynga, Inc.*,
   No. 12-CV-04007-JSC, 2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ........................... 9

*Eminence Cap., LLC v. Aspeon, Inc.*,
   316 F.3d 1048 (9th Cir. 2003) .................................................................................... 13

*Evans v. Jeff D.*,
   475 U.S. 717 (1986) ....................................................................................................... 6

*Garner v. State Farm Mut. Auto. Ins. Co.*,
   No. CV 08 1365 CW EMC, 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ............... 7

*Glass v. UBS Fin. Servs., Inc.*,
   No. C-06-4068 MMC, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007) ......................... 20

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) .............................................................................. passim

*Hefler v. Wells Fargo & Co.*,
   No. 16-CV-05479-JST, 2018 WL 4207245 (N.D. Cal. Sept. 4, 2018) ............... 17, 18

*Hefler v. Wells Fargo & Co.*,
   No. 16-CV-05479-JST, 2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ....................... 8

*In re Am. Apparel, Inc. S'holder Litig..*,
   No. CV1006352MMMJCGX, 2014 WL 10212865 (C.D. Cal. July 28, 2014) ........... 13

*In re Amgen Inc. Sec. Litig.*,
   No. CV 7-2536 PSG (PLAX), 2016 WL 10571773 (C.D. Cal. Oct. 25, 2016) ........... 21

*In re BankAtlantic Bancorp, Inc.*,
   No. 07-61542-CIV, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) ............................ 14

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*In re Biolase, Inc. Sec. Litig.*,
    No. SACV131300JLSFFMX, 2015 WL 12720318 (C.D. Cal. Oct. 13, 2015) ........................ 22

*In re Carrier IQ, Inc., Consumer Priv. Litig.*,
    No. 12-MD-02330-EMC, 2016 WL 4474366 (N.D. Cal. Aug. 25, 2016) ................................ 17

*In re Celera Corp. Sec. Litig.*,
    No. 5:10-CV-02604-EJD, 2015 WL 1482303 (N.D. Cal. Mar. 31, 2015) ......................... 12, 19

*In re Critical Path, Inc.*, No. C,
    01-00551 WHA, 2002 WL 32627559 (N.D. Cal. June 18, 2002) ........................................ 15

*In re Heritage Bond Litig.*,
    No. 02-ML-1475 DT, 2005 WL 1594403 (C.D. Cal. June 10, 2005) ................................. 14, 23

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ................................................................... 12, 18, 19, 20

*In re NeoPharm, Inc. Sec. Litig.*,
    705 F. Supp. 2d 946 (N.D. Ill. 2010) .......................................................................... 14

*In re Netflix Priv. Litig.*,
    No. 5:11-CV-00379 EJD, 2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ................................ 11

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) ................................................... 7, 9, 13, 21

*In re Oracle Corp. Sec. Litig.*,
    627 F.3d 376 (9th Cir. 2010) ................................................................................... 14

*In re Puda Coal Sec. Inc., Litig.*,
    30 F. Supp. 3d 230 (S.D.N.Y. 2014) .......................................................................... 14

*In re Rambus Inc. Derivative Litig.*,
    No. C 06-3513 JF (HRL), 2009 WL 166689 (N.D. Cal. Jan. 20, 2009) ................................... 9

*In re Signet Jewelers Ltd. Sec. Litig.*,
    No. 1:16-CV-06728-CM-SDA, 2020 WL 4196468 (S.D.N.Y. July 21, 2020) ......................... 18

*In re Syncor ERISA Litig.*,
    516 F.3d 1095 (9th Cir. 2008) .................................................................................. 7

*In re Tableware Antitrust Litig.*,
    484 F. Supp. 2d 1078 (N.D. Cal. 2007) ...................................................................... 18

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
    535 F. Supp. 2d 249 (D.N.H. 2007) .......................................................................... 14

*In re Zynga Inc. Sec. Litig.*,
    No. 12-CV-04007-JSC, 2015 WL 6471171 (N.D. Cal. Oct. 27, 2015) ................................ 22

*In re: Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*,
  No. MDL 2672 CRB (JSC), 2016 WL 6248426 (N.D. Cal. Oct. 25, 2016) ............................... 20

*Kamakana v. City & Cnty. of Honolulu*,
  447 F.3d 1172 (9th Cir. 2006) .................................................................................. 17

*Knox v. Yingli Green Energy Holding Co. Ltd.*,
  136 F. Supp. 3d 1159 (C.D. Cal. 2015) ..................................................................... 11

*Lane v. Facebook, Inc.*,
  696 F.3d 811 (9th Cir. 2012) ...................................................................................... 8

*Linney v. Cellular Alaska P'ship*,
  151 F.3d 1234 (9th Cir. 1998) .................................................................................. 19

*Mild v. PPG Indus., Inc.*,
  No. 218CV04231RGKJEM, 2019 WL 3345714 (C.D. Cal. July 25, 2019) ...................... 10

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004) ......................................................................... 15, 21

*Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*,
  688 F.2d 615 (9th Cir. 1982) ........................................................................ 8, 15, 18, 19

*Pace v. Quintanilla*,
  No. SACV 14-2067-DOC, 2014 WL 4180766 (C.D. Cal. Aug. 19, 2014) ...................... 10

*Rieckborn v. Velti PLC*,
  No. 13-CV-03889-WHO, 2015 WL 468329 (N.D. Cal. Feb. 3, 2015) ........................... 20

*Robbins v. Koger Properties, Inc.*,
  116 F.3d 1441 (11th Cir. 1997) ................................................................................ 15

*Rodriguez v. W. Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) .............................................................................. 6, 11

*Rosenburg v. I.B.M.*,
  No. CV06-00430PJH, 2007 WL 128232 (N.D. Cal. Jan. 11, 2007) ............................. 22

*Satchell v. Fed. Express Corp.*,
   No. C 03 2878 SI, 2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) ............................... 12

*Schueneman v. Arena Pharms., Inc.*,
  No.: 3:10-cv-01959-CAB-(BLM), 2020 WL 3129566 (S.D. Cal. June 12, 2020) ............ 22

*Van Bronkhorst v. Safeco Corp.*,
  529 F.2d 943 (9th Cir. 1976) ..................................................................................... 7

*Vinh Nguyen v. Radient Pharms. Corp.*,
  No. SACV 11-00406 DOC, 2014 WL 1802293 (C.D. Cal. May 6, 2014) ....................... 17

*Wong v. Arlo Techs., Inc.*,
   No. 5:19-CV-00372-BLF, 2021 WL 1531171 (N.D. Cal. Apr. 19, 2021)........................ 8, 11, 12

**Statutes**

15 U.S.C. § 78u-4(a)(7) ............................................................................................................... 6

**Rules**

Fed. R. Civ. P. 23 ............................................................................................................... passim

Fed. R. Civ. P. 23(a) ................................................................................................... viii, 1, 4, 5

Fed. R. Civ. P. 23(b) ..................................................................................................................viii

Fed. R. Civ. P. 23(b)(3) ..................................................................................................... 1, 4, 5

Fed. R. Civ. P. 23(c)(2)(B) ........................................................................................................ 5

Fed. R. Civ. P. 23(e) ......................................................................................................... passim

Fed. R. Civ. P. 23(e)(1)(B) ........................................................................................................ 6

Fed. R. Civ. P. 23(e)(2) ....................................................................................... 6, 7, 15, 17

Fed. R. Civ. P. 23(e)(2)(A) ............................................................................................... 10, 11

Fed. R. Civ. P. 23(e)(2)(B) ..................................................................................................... 11

Fed. R. Civ. P. 23(e)(2)(C) ..................................................................................................... 15

Fed. R. Civ. P. 23(e)(2)(C)(i) ................................................................................................. 12

Fed. R. Civ. P. 23(e)(2)(C)(ii) .......................................................................................... 15, 16

Fed. R. Civ. P. 23(e)(2)(C)(iv) .......................................................................................... 15, 16

Fed. R. Civ. P. 23(e)(2)(D) ..................................................................................................... 17

Fed. R. Civ. P. 23(e)(3); and (D) ............................................................................................. 7

Fed. R. Civ. P. 23(e)(4) and (5) ............................................................................................... 9

**Other Authorities**

324 F.R.D. 904 ............................................................................................................................ 7

## <u>STATEMENT OF ISSUES TO BE DECIDED</u>

1.    Whether the applicable prerequisites for class action treatment of the Action under Federal Rules of Civil Procedure 23(a) and (b) are satisfied;

2.    Whether the Court should approve the Settlement as fair, reasonable, and adequate pursuant to Fed. R. Civ. P. 23(e);

3.    Whether the Court should enter Judgment, substantially in the form of Exhibit B to the Stipulation of Settlement ("Stipulation") (Dkt. No. 66-1), dismissing the Action on the merits and with prejudice, and to determine whether the release by the Releasing Parties of the Released Claims against the Released Parties, as set forth in the Stipulation, should be ordered, along with a permanent injunction barring efforts to prosecute or attempt to prosecute and Released Claims extinguished by the releasee against any of the Released Parties, as also set forth in the Stipulation;

4.    Whether the Court should approve the proposed Plan of Allocation for the distribution of the Net Settlement Fund as fair and reasonable;

5.    Whether to sustain Settlement Class Members' objections, if any, to the Settlement, whether submitted previously in writing or presented orally at the Settlement Hearing;

6.    Any other issue that the Court may deem appropriate.

1

2

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.    PRELIMINARY STATEMENT

3

4

5

6

7

8

9

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiff Winston Derouin ("Derouin" or "Plaintiff") submits this Memorandum of Points and Authorities in support of his motion for final approval of the Settlement of this action ("Action") for $2,250,000 in cash ("Settlement Amount"), for approval of the Plan of Allocation, and for final certification of the Settlement Class for settlement purposes. The Parties set forth the terms of the Settlement in the Stipulation. (Dkt. No. 66-1). The Court preliminarily approved the Settlement on May 3, 2022 ("Preliminary Approval Order"). (Dkt. No. 70).

10

11

12

13

First, the Court should finally certify the Settlement Class. The Court preliminarily certified the Settlement Class (Dkt. No. 70) after Plaintiff fully briefed the requirements of Rules 23(a) and (b)(3). Nothing has changed. No Settlement Class Member has challenged class certification, and, thus far, only one has sought to exclude themselves from the Settlement Class.

14

15

16

17

18

19

The $2,250,000 Settlement is favorable to the Settlement Class, warranting Court approval. The Settlement is the product of arm's-length negotiations that a Ninth Circuit Court of Appeals mediator conducted. Measured against Rule 23(e), the factors the Ninth Circuit enumerated for evaluating class action settlements in *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998), and this District's *Procedural Guidance for Class Action Settlements* ("Northern District Guidelines"), the Settlement is fair, reasonable, and adequate.

20

21

22

23

24

25

26

27

28

The parties settled the Action after contested litigation. Achieving a positive result for the Class was not guaranteed, particularly as the Court had dismissed the Action and it was on appeal to the Ninth Circuit. Lead Counsel has: (i) thoroughly investigated Plaintiff's claims before filing the Amended Class Action Complaint for Violations of the Federal Securities Laws ("Amended Complaint"); (ii) filed an opposition to Defendants' motion to dismiss; (iii) filed an appeal of the Court's order granting the motion to dismiss; (iv) submitted a mediation statement; (v) participated in a mediation with and successfully settled the Action through the Ninth Circuit's Mediation Program, before court-appointed mediator Sasha M. Cummings; (vi) negotiated and executed the Stipulation; and (vii) sought and obtained from the Court preliminary approval of the Settlement.

1 Based on this work and Lead Counsel's experience in similar securities class actions, Plaintiff and

2 Lead Counsel believe that the Settlement is in the Settlement Class's best interests, eliminating the

3 risks and costs of continuing litigation and providing a substantial and immediate cash recovery.

4 Plaintiff oversaw Lead Counsel's prosecution of the Action, reviewing the Amended

5 Complaint and motion to dismiss briefing, evaluating the benefits of continuing with the Action on

6 behalf of the Settlement Class, and approving the Settlement Amount. Plaintiff had sufficient

7 information to evaluate the sufficiency of the Settlement in light of the risks and uncertainties of

8 continued litigation. As a percentage of the Settlement Class's estimated recoverable damages, the

9 Settlement is in line with the median settlement for securities class actions under even Plaintiff's

10 best-case damages scenario.

11 As of the filing of this Motion, no Settlement Class Member has objected to the Settlement.

12 The objection deadline expires on August 11, 2022. The reaction of the Settlement Class to date,

13 therefore, supports final approval of the Settlement. The Claims Administrator, Strategic Claims

14 Services ("SCS"), mailed postcard notices or emailed approximately 47,946 copies of the Notice to

15 potential Settlement Class Members and their nominees and to date, no objections have been

16 received or filed and only one request for exclusion has been received.

17 Last, the Court should finally approve the Plan of Allocation. With the Claims

18 Administrator, Lead Counsel developed the Plan of Allocation to reflect the strength of the two

19 claims during the class period and the damages the Settlement Class might have recovered. The Plan

20 of Allocation ties each participating Settlement Class Member's recovery to when they bought or

21 sold NetApp, Inc. ("NetApp") securities and is a fair and reasonable method for distributing the Net

22 Settlement Fund.

23 **II.      SUMMARY OF THE LITIGATION AND SETTLEMENT**

24     **A.      Factual Background**

25 NetApp issued a revenue guidance range on May 22, 2019 for the first quarter of fiscal year

26 2020 ("Q1 2020") and for full fiscal year 2020. On June 18, 2019, NetApp issued an annual report

27 on Form 10-K ("2019 10-K") in which it warned about the potential negative consequences to its

28 finances if its largest customers pushed out or cancelled their orders. The Amended Complaint

1   alleges that Defendants knew that the May 22, 2019 forecast was false when made, further alleging

2   that when Defendants issued their 2019 10-K, they knew or recklessly disregarded that the warning

3   they published about large customers pushing out or cancelling their orders had actually

4   materialized, but failed to disclose this to investors.

5        On August 1, 2019, Defendants issued a press release, stating that NetApp would miss its

6   quarterly revenue guidance range by up to $243 million, and that investors should no longer rely on

7   the Company's May 22, 2019 guidance for full fiscal year 2020. Defendants blamed a deterioration

8   in close rates against its sales pipeline with its largest customers pushing out or downsizing orders

9   in the second half of Q1 2020 that began on June 10, 2019. In response to this news, on August 1,

10  2019 NetApp's share price dropped by $11.67, over 20%, falling from $57.71 to $46.04.

11       **B.    Procedural History**

12       Plaintiff commenced this Action on August 14, 2019, (Dkt. No. 1), on behalf of persons who

13  purchased or otherwise acquired NetApp securities from May 23, 2019 to August 1, 2019, inclusive

14  ("Settlement Class Period") for alleged violations of §§ 10(b) and 20(a) of the Securities Exchange

15  Act of 1934 ("Exchange Act"). On October 15, 2019, Derouin moved for appointment as lead

16  plaintiff and approval of The Rosen Law Firm, P.A. ("Rosen Law") as lead counsel. (Dkt. No. 20).

17  By November 12, 2019, Order, the Court appointed Derouin as Lead Plaintiff, approving his

18  selection of Rosen Law as Lead Counsel. (Dkt. No. 36). On January 24, 2020, Derouin filed the

19  Amended Complaint. (Dkt. No. 41). On March 26, 2020, Defendants filed their motion to dismiss

20  the Amended Complaint. (Dkt. No. 42). The motion to dismiss was fully briefed on July 9, 2020.

21  (Dkt. No. 52). The Court dismissed the case in its entirety on February 1, 2021 (Dkt. No. 58), and

22  judgment was entered on February 26, 2021. (Dkt. No. 59). Plaintiff filed his Notice of Appeal on

23  March 26, 2021. (Dkt. No. 60).

24       On July 21, 2021, the Parties participated in an all-day mediation through the Ninth Circuit's

25  mediation program with mediator Sasha M. Cummings. The Parties agreed in principle to resolve

26  the claims asserted in the Action for $2.25 million in return for a release of all claims against the

27  Defendants.

28

On September 21, 2021, the Parties executed the Stipulation and on September 24, 2021, Plaintiff filed an Unopposed Motion for Preliminary Approval of the Settlement, attaching the Stipulation and its exhibits. (Dkt. Nos. 65-66). On February 18, 2022, at the Court's direction, Plaintiff filed a Supplemental Memorandum in Support of his Unopposed Motion for Preliminary Approval of Settlement. (Dkt. No. 69). On May 3, 2022, the Court granted the motion and entered the Preliminary Approval Order. (Dkt. No. 70).

### C.    The Settlement

The Settlement provides that NetApp will pay $2,250,000 into an interest-bearing escrow account for the Settlement Class. The Settlement Amount, plus accrued interest, and after deduction of: (i) the Fee and Expense Awards; (ii) Administrative Costs; (iii) Taxes and Tax Expenses; (iv) Compensatory Award for Plaintiff; and (v) other fees and expenses authorized by the Court, is the "Net Settlement Fund." The Stipulation states that the Claims Administrator will distribute the Net Settlement Fund among Settlement Class Members who submit valid Proofs of Claim in accordance with the proposed Plan of Allocation. (Dkt. No. 66-1, ¶7.3).

The Stipulation defines the Settlement Class as all persons and entities who purchased NetApp securities from May 23, 2019, through August 1, 2019, both dates inclusive, and were damaged thereby. *Id*. at ¶1.38. In exchange for the Settlement Amount, Settlement Class Members will release the Released Claims. *Id.* ¶1.30-1.32. The Settlement is non-reversionary. *Id.* ¶2.3.

### III.   ARGUMENT

### A.    The Court Should Grant Final Certification of the Settlement Class

In its Preliminary Approval Order, the Court preliminarily certified the Settlement Class for settlement purposes under Fed. R. Civ. P. 23(a) and (b)(3). Preliminary Approval Order, ¶2. The Parties stipulated to the certification of the Settlement Class for settlement purposes. Stipulation ¶3.0. The Settlement Class conditionally certified in the Preliminary Approval Order includes "all persons and entities who purchased or otherwise acquired the publicly traded securities of NetApp between May 23, 2019 and November 20, 2019, both dates inclusive." Preliminary Approval Order, ¶2. Excluded are: "Defendants, the officers and directors of NetApp, members of the Individual

1  Defendants' immediate families and their legal representatives, heirs, successors, or assigns and any

2  entity in which any the Individuals have or had a controlling interest." *Id.*

3      No relevant circumstances have changed since the Court's preliminary certification of the

4  Settlement Class. Thus, for the same reasons stated in Plaintiff's Unopposed Motion for Preliminary

5  Approval of Settlement, Plaintiff requests that the Court affirm its determinations in the Preliminary

6  Approval Order and grant final certification of the Settlement Class under Rules 23(a) and (b)(3).

7      **B.    The Notice Program Satisfied Rule 23, Due Process, and the PSLRA**

8      Rule 23(e) requires that notice of the proposed Settlement shall be given to Settlement Class

9  Members in such manner as the Court directs. Fed. R. Civ. P. 23(e). For any class certified under

10  Rule 23(b)(3), due process and Rule 23 require that class members be given "the best notice

11  practicable under the circumstances, including individual notice to all members who can be

12  identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Plaintiff provided the Settlement

13  Class with adequate notice of the Settlement, in the manner and form that the Court directed in the

14  Preliminary Approval Order. A total of 47,946 potential Settlement Class Members were notified

15  either by mailed Postcard Notice or emailed a direct link to the Long Notice and Proof of Claim.

16  Mulholland Decl. ¶7. Out of the 39,320 Postcard Notices mailed, 798 were returned as

17  undeliverable. Of these 798, 43 were returned with a forwarding address provided by the United

18  States Postal Service, and SCS immediately mailed another Postcard Notice to the forwarding

19  address. A skip trace was run using Experian for the remaining 755 returned Postcard Notices to

20  obtain updated addresses. SCS received 262 updated addresses from the skip trace efforts and mailed

21  out another Postcard Notice to the updated addresses. *Id.* ¶8.

22      The Claims Administrator published the Court-approved Summary Notice online in

23  *GlobeNewswire* and in print in *Investor's Business Daily*. *Id.* ¶9. The Claims Administrator also

24  published all information regarding the Settlement online on the Settlement website, and maintained

25  a toll-free phone line for Settlement Class Members to obtain information about the Settlement. *Id.*

26  ¶¶10-11.

27      A total of 1,307 valid claims have been received to date. *Id.* ¶14. Not a single investor has

28  objected to any aspect of the Settlement. *Id.* ¶13. There has been only one request for exclusion, and

1  in the request letter the investor indicated that she had neither purchased nor sold NetApp securities

2  during the Class Period. *Id.* ¶12.

3          Thus, the notice plan executed here directed notice in a "reasonable manner to all class

4  members who would be bound by the propos[ed judgment]." Fed. R. Civ. P. 23(e)(1)(B). The Notice

5  provided all necessary information for Settlement Class Members to make an informed decision

6  regarding the proposed Settlement, and whether to opt out, object, or file a claim. It told Settlement

7  Class Members, among other things: (1) the amount of the Settlement; (2) why the parties propose

8  the Settlement; (3) the estimated average recovery per damaged share; (4) the maximum amount of

9  attorneys' fees and expenses, and award to Plaintiff that Lead Counsel would seek; (5) Lead

10 Counsel's contact information; (6) that Settlement Class Members could object to the Settlement or

11 exclude themselves from the Settlement Class, and the consequences thereof; and (7) the dates and

12 deadlines for certain Settlement-related events. 15 U.S.C. § 78u-4(a)(7). The Notice further

13 explained that the Net Settlement Fund would be distributed to eligible Settlement Class Members

14 who submit valid and timely claim forms under the Plan of Allocation as described in the Notice.

15 In sum, the Notice fairly apprised Settlement Class Members of their rights, is the best notice

16 practicable under the circumstances, and complies with the Court's Preliminary Approval Order,

17 Federal Rule of Civil Procedure 23, the PSLRA, and due process. *See Rodriguez v. W. Publ'g Corp.*,

18 563 F.3d 948, 962 (9th Cir. 2009) (notice sufficient when it "generally describes the terms of the

19 settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come

20 forward and be heard").

21     **C.     The Court Should Approve the Settlement as Fair, Reasonable, and Adequate Pursuant to Fed. R. Civ. P. 23(e)**

22

23          **1.     Standards for Final Approval Under the Northern District Guidelines, Rule 23(e), and Ninth Circuit Law**

24

25          Rule 23(e) requires judicial approval of any class action settlement, which must be "fair,

26 reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). It is within the "sound discretion of the district

27 courts to appraise the reasonableness of [] settlements on a case-by-case basis." *Evans v. Jeff D.*,

28

475 U.S. 717, 742 (1986).[2] In the Ninth Circuit and throughout the country, "there is a strong judicial policy that favors settlements particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *see also Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) ("[T]here is an overriding public interest in settling and quieting litigation," and this is "particularly true in class action suits."); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) ("[T]he court must also be mindful of the Ninth Circuit's policy favoring settlement, particularly in class action law suits."). Class actions readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of litigation. The settlement of complex cases also conserves scarce judicial resources. *See, e.g., Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW EMC, 2010 WL 1687832, at *10 (N.D. Cal. Apr. 22, 2010) ("Avoiding such unnecessary and unwarranted expenditure of resources and time would benefit all Parties and the Court.").

Rule 23(e)(2)—which governs final approval—requires courts to consider several factors in determining whether a proposed settlement is fair, reasonable, and adequate, including whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2).

These factors do not "displace" any previously adopted factors, but "focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23(e), advisory committee notes to 2018 amendment, 324 F.R.D. 904, 918. "Accordingly, the Court [should] appl[y] the framework set forth in Rule 23, while

---

[2] Internal citations and quotations are omitted and emphasis is added unless otherwise noted.

continuing to draw guidance from the Ninth Circuit's factors and relevant precedent." *Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 6619983, at \*4 (N.D. Cal. Dec. 18, 2018).

"In the Ninth Circuit, courts traditionally use a multi-factor balancing test to analyze whether a given settlement is fair, adequate and reasonable." *Wong v. Arlo Techs., Inc.*, No. 5:19-CV-00372-BLF, 2021 WL 1531171, at \*5 (N.D. Cal. Apr. 19, 2021). Those factors include:

> [1] the strength of plaintiff's case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed, and the stage of the proceedings; [6] the experience and views of counsel; [7] the presence of a governmental participant; and [8] the reaction of the class members to the proposed settlement.

*Id.* (quoting *Hanlon*, 150 F.3d at 1026); *see also Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) (same). Keeping in mind that "it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements," courts should not convert settlement approval into an inquiry on the merits. *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).

In addition, the Northern District Guidelines instruct class action settlement proponents that:

> final approval briefing, should include information about the number of undeliverable class notices and claim packets, the number of class members who submitted valid claims, the number of class members who elected to opt out of the class, and the number of class members who objected to or commented on the settlement. In addition, the motion for final approval should respond to any objections.

*See* Northern District Guidelines.[3]

Here, the factors this Court will consider under Rule 23(e), *Hanlon*, and the Northern District Guidelines weigh in favor of granting final approval of the Settlement.

---

[3] https://cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/. The Northern District Guidelines also instruct settlement proponents to include certain information in support of motions for attorneys' fees and "incentive awards." Plaintiff includes that information in his contemporaneous Motion for Attorneys' Fees, Reimbursement of Expenses, and For Compensatory awards along with his response to this Court's instruction to discuss whether and how much of the fee the Court should order the escrow agent to withhold, pending distribution of the Net Settlement Amount. (Dkt. No. 70, ¶28). The Northern District Guidelines also prompt settlement proponents to email to the Court Word versions of proposed orders or judgments. Plaintiff will do so upon the filing of this Motion.

1

2.     **Class Members' Response to the Settlement Supports Granting Final Approval**

2

3       The reaction of the Settlement Class as measured by objections to the Settlement and

4    requests for exclusion—or the lack thereof—is a critical factor in evaluating the fairness,

5    reasonableness, and adequacy of the Settlement. Fed. R. Civ. P. 23(e)(4) and (5). "[T]hat the

6    overwhelming majority of the class willingly approved the offer and stayed in the class presents at

7    least some objective positive commentary as to its fairness." *Hanlon*, 150 F.3d at 1027. The absence

8    of a large number of objections to a proposed class action settlement supports approval. *In re*

9    *Rambus Inc. Derivative Litig.*, No. C 06-3513 JF (HRL), 2009 WL 166689, at *3 (N.D. Cal. Jan.

10   20, 2009) ("the absence of a large number of objections to a proposed class action settlement raises

11   a strong presumption that the terms of a proposed class settlement action are favorable to the class

12   members"); *Omnivision*, 559 F. Supp. 2d at 1043 (same). Here there are no objections. The small

13   number of exclusion requests also supports the Settlement's approval. See *Churchill Vill., L.L.C. v.*

14   *Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming settlement with 0.56% of eligible class

15   members requesting exclusion); *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D.

16   Cal. 2010) ("overwhelming positive reaction of the class members" including 16 exclusion request

17   representing 4.86% of class supports settlements' approval.); *Destefano v. Zynga, Inc.*, No. 12-CV-

18   04007-JSC, 2016 WL 537946, at *14 (N.D. Cal. Feb. 11, 2016) (16 valid exclusion requests

19   representing 0.176% of public shares, supported settlement approval). Here there is only one request

20   for exclusion.

21       Northern District Guidelines require that class action settlement proponents should provide

22   information to assist the Court in evaluating the Settlement Class's response. As Rules 23(e)(4) and

23   (5) require, Settlement Class Members may timely request exclusion from the Settlement Class or

24   to object to the Settlement. (Dkt. No. 66-4, at 10-11).

25       A total of 47,946 potential Settlement Class Members were notified either by mailed

26   Postcard Notice or emailed a direct link to the Long Notice and Proof of Claim. Mulholland Decl.

27   ¶7. SCS and published the Summary Notice over *GlobeNewswire* and in *Investor's Business Daily*.

28

1  Mulholland Decl. ¶9. As noted above, to date,[4] no class member has objected to the Settlement and

2  only one potential Settlement Class Member sought exclusion from the Settlement Class.[5]

3    Here, in light of the number of notices transmitted, and the absence of any objections and

4  only one request for exclusion, Mulholland Decl. ¶¶12-13, the Settlement Class response supports

5  final approval.

6    **3.  Plaintiff and Lead Counsel Have Provided Adequate Representation**

7    Courts must consider whether the "class representatives and class counsel have adequately

8  represented the class." Fed. R. Civ. P. 23(e)(2)(A). Courts must resolve two questions to determine

9  adequacy: (1) do the named Plaintiff and their counsel have any conflicts of interest with other class

10  members and (2) will the named Plaintiff and their counsel prosecute the action vigorously on behalf

11  of the class?" *Hanlon*, 150 F.3d at 1020.

12    Plaintiff and Lead Counsel have adequately represented the Settlement Class. Plaintiff has

13  no interests antagonistic to other Settlement Class Members and his interest in obtaining the largest

14  possible recovery for NetApp investors is aligned with the interests of other Settlement Class

15  Members. *Mild v. PPG Indus., Inc.*, No. 218CV04231RGKJEM, 2019 WL 3345714, at *3 (C.D.

16  Cal. July 25, 2019) ("Because Plaintiff's claims are typical of and coextensive with the claims of

17  the Settlement Class, his interest in obtaining the largest possible recovery is aligned with the

18  interests of the rest of the Settlement Class members."). Plaintiff worked closely with Lead Counsel

19  throughout the pendency of this Action to achieve the best possible result for the Settlement Class.

20    Plaintiff retained experienced securities litigation counsel with a track record of successfully

21  representing investors in similar cases. (Dkt. No. 21-4, Rosen Law firm resume). Courts in this

22  Circuit and around the country have recognized that Rosen Law "has the necessary skill and

23  knowledge to effectively prosecute" securities class actions. *See Pace v. Quintanilla*, No. SACV

24  _____

25  [4] The claims filing deadline is August 2, 2022. (Dkt. No. 70, ¶¶21, 25). Plaintiff will update all
26  numbers in his Reply filing.

27  [5] The deadline for requesting exclusion from the Settlement Class or objecting to the Settlement is
    August 11, 2022. (Dkt. No. 70, ¶¶21, 25). In his Reply filing, Plaintiff will update the court on any
28  further exclusion requests and respond to objections, if any, filed after July 28, 2022. (Dkt. No. 70,
    ¶29).

14-2067-DOC, 2014 WL 4180766, at *3 (C.D. Cal. Aug. 19, 2014); *Knox v. Yingli Green Energy Holding Co. Ltd.*, 136 F. Supp. 3d 1159, 1165 (C.D. Cal. 2015) ("The Rosen Law Firm is 'highly qualified [and] experienced' in securities class actions"); *Christine Asia Co. v. Yun Ma*, No. 115MD02631CMSDA, 2019 WL 5257534, at *19 (S.D.N.Y. Oct. 16, 2019), *appeal withdrawn sub nom. Tan Chao v. William*, No. 19-3823, 2020 WL 763277 (2d Cir. Jan. 2, 2020) (approving the largest ever settlement in a case brought by investors in a Chinese company, finding that "the quality of representation by both [Rosen] and Defendants' counsel was high in this case.").

In this Action, Lead Counsel prosecuted the Settlement Class's claims vigorously by, among other things: conducting a detailed investigation and filing the Amended Complaint; researching and briefing Defendants' motion to dismiss the Amended Complaint; filing an appeal in this Action; drafting a mediation statement and reviewing Defendants' mediation statement; participating in the mediation; negotiating the Settlement and Stipulation; selecting a claims administrator; formulating the Notice Plan and Plan of Allocation; moving for and obtaining preliminary approval of the Settlement; supervising the execution of the Notice Plan and responding to inquiries from potential Settlement Class Members; and filing the instant motion for final approval of the Settlement. Goldberg Decl. ¶39. Thus, Plaintiff and Lead Counsel have adequately represented the Settlement Class throughout this Action.

### 4. The Settlement is the Result of Arm's-Length Negotiations Overseen by an Experienced Mediator

Rule 23(e)(2)(B) requires procedural fairness: that "the proposal was negotiated at arm's length." Rule 23(e)(2)(A)-(B)'s considerations overlap with certain *Hanlon* factors, "such as the non-collusive nature of negotiations, the extent of discovery completed, and the stage of proceedings." *Wong,* 2021 WL 1531171, at *6 (citing *Hanlon,* 150 F.3d at 1026). Courts in the Ninth Circuit "put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009); *In re Netflix Priv. Litig.*, No. 5:11-CV-00379 EJD, 2013 WL 1120801, at *4 (N.D. Cal. Mar. 18, 2013) ("Courts have afforded a presumption of fairness and reasonableness of a settlement agreement where that agreement was the product of non-collusive, arms-length negotiations conducted by capable and

1  experienced counsel"). Further, "[t]he assistance of an experienced mediator in the settlement

2  process confirms that the settlement is non-collusive." *Satchell v. Fed. Express Corp.*, No. C 03

3  2878 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007).

4  Lead Counsel engaged in a full-day mediation with defense counsel for Defendants, guided

5  during and after the mediation session by experienced, court-appointed Ninth Circuit mediator Sasha

6  M. Cummings.[6] Prior to the mediation session, the Parties exchanged mediation statements.

7  Goldberg Decl. ¶10. Ms. Cummings' participation in the Settlement underscores that it is the product

8  of non-collusive, arm's-length negotiations. *See In re Celera Corp. Sec. Litig.*, No. 5:10-CV-02604-

9  EJD, 2015 WL 1482303, at *5 (N.D. Cal. Mar. 31, 2015) ("the mediation process must have assisted

10  the parties to gain a better understanding of their respective strengths and weaknesses to litigate this

11  case."). The presence of a neutral mediator who oversaw the parties' arms'-length negotiations

12  supports the Settlement's approval.

13  　　　　　**5.　　The Settlement is a Favorable Result for the Settlement Class in Light
14  　　　　　　　　of the Benefits of the Settlement and the Risks of Continued Litigation**

15  The Court must also consider whether "the relief provided for the class is adequate, taking

16  into account … the costs, risks, and delay of trial and appeal" along with other relevant factors. Fed.

17  R. Civ. P. 23(e)(2)(C)(i). Rule 23(e)(2)(C)(i) essentially incorporates the first three *Hanlon* factors:

18  the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further

19  litigation; and the risks of maintaining class action status through the trial. *Wong*, 2021 WL

20  1531171, at *8 (citing *Hanlon*, 150 F.3d at 1026). Each of these factors supports final approval of

21  the Settlement.

22  In assessing whether the proposed Settlement is fair, reasonable, and adequate, the Court

23  must balance the continuing risks of litigation, including the strengths and weaknesses of the case,

24  and the complexity, expense, and likely duration of continued litigation, against the benefits

25  afforded to the Settlement Class, including the immediacy and certainty of a financial recovery. *In*

26  *re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458, 459 (9th Cir. 2000), *as amended* (June 19, 2000).

27

28
_____

[6] *See* https://www.ca9.uscourts.gov/mediation/ninth-circuit-mediators/.

1      The risks of continued litigation in this case are significant. In considering the Settlement,

2    Plaintiff and Lead Counsel weighed the risks inherent in continuing with the Appeal, as well as the

3    likely further expense and duration of the Action. Here, the risks were immediately present as the

4    Court had already dismissed the Action for failure to plead scienter adequately, and for failure to

5    plead both falsity and scienter for the May 23, 2019 forecast. Although Plaintiff believed the Ninth

6    Circuit Court of Appeals would reverse the ruling, there was a significant risk that the Court of

7    Appeals would sustain the dismissal, and therefore there would be no recovery for any Class

8    Member. Goldberg Decl. ¶29. The PSLRA imposes heightened pleading burdens on securities fraud

9    Plaintiff that are "not [] easy [] to comply with." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d

10   1048, 1052 (9th Cir. 2003).

11      Even if Plaintiff prevailed in the Appeal, he would still need to undertake the complex and

12   expensive task of obtaining certification of the putative class. One of the more difficult elements of

13   class certification to satisfy is showing that class-wide issues, such as reliance on Defendants'

14   misrepresentations, predominate over individualized issues. Plaintiff would need to hire an expert

15   economist to conduct an event study showing the price reaction of NetApp securities to new,

16   material information, prepare a report, and testify at a deposition on the issue of market efficiency.

17   Such well-qualified experts are expensive. Goldberg Decl. ¶30. Defendants would likely present

18   their own expert report and testimony to oppose class certification. In addition to briefing the class

19   certification motion, Plaintiff would need to produce and review documents, sit for a deposition,

20   and take the opposing expert's deposition. Even if Plaintiff obtained class certification, he faced the

21   risk that he would not be able to sustain class certification through judgment. *Omnivision*, 559 F.

22   Supp. 2d at 1041 ("there is no guarantee the [class] certification would survive through trial, as

23   Defendants might have sought decertification or modification of the class"). Due to the "risk that

24   the court would not have certified a class in the first place had the parties not settled, and a further

25   risk that, even if it did, that class might later have been decertified, this factor too weighs in favor

26   of approving the settlement." *In re Am. Apparel, Inc. S'holder Litig..*, No. CV1006352MMMJCGX,

27   2014 WL 10212865, at *11 (C.D. Cal. July 28, 2014).

28

Further litigation would also prove risky, complex, and expensive. Defendants deny any wrongdoing and, if the Circuit Court reversed, would have presented a multi-pronged defense to Plaintiff's claims, as previewed in their motion to dismiss. Plaintiff would need to engage in formal fact discovery, requiring review of thousands of documents and taking depositions of Defendants, NetApp employees, and non-parties. Goldberg Decl. ¶¶28-29. The Parties would then engage in expert discovery on the questions of loss causation and damages and other industry-specific issues. Defendants would likely present their own expert testimony to demonstrate that the revelation of the fraud did not cause the alleged stock drops, and/or attempt to demonstrate that at least a portion of the alleged stock drops were attributable to other issues unrelated to the revelation of the fraud. All told, expert discovery and trial preparation would prove expensive and complex. *See In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *6 (C.D. Cal. June 10, 2005); *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 260–61 (D.N.H. 2007) ("Proving loss causation would be complex and difficult. Moreover, even if the jury agreed to impose liability, the trial would likely involve a confusing 'battle of the experts' over damages.").

Plaintiff would also risk losing at the summary judgment stage. *See, e.g., In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 395 (9th Cir. 2010) (affirming summary judgment in favor of defendants where plaintiff failed to establish a triable issue on loss causation); *In re NeoPharm, Inc. Sec. Litig.*, 705 F. Supp. 2d 946, 966 (N.D. Ill. 2010) (granting partial summary judgment where Plaintiff failed to prove material falsity or scienter). Plaintiff might have an expert excluded, damaging their case. *See, e.g., In re Puda Coal Sec. Inc., Litig.*, 30 F. Supp. 3d 230, 254 (S.D.N.Y. 2014), *aff'd sub nom. Querub v. Hong Kong*, 649 F. App'x 55 (2d Cir. 2016).

Plaintiff would also risk losing at trial, or the jury might reduce damages significantly. *See* "Puma Biotechnology – Both Sides Claim Victory in Rare Jury Trial Verdict" (reporting that according to defendants, Plaintiff won only 5% of the damages they requested).[7] Plaintiff might still lose his case even after winning at trial. *In re BankAtlantic Bancorp, Inc.*, No. 07-61542-CIV, 2011 WL 1585605, at *38 (S.D. Fla. Apr. 25, 2011), *aff'd on other grounds sub nom. Hubbard v.*

---

[7] https://www.issgovernance.com/puma-biotechnology-both-sides-claim-victory-in-rare-jury-trial-verdict/.

*BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012) (granting motion for judgment as a matter of law against Plaintiff after partial jury verdict in their favor). Even if Plaintiff survives summary judgment and motions to exclude his experts, wins at trial, secures a verdict for his and the class's damages, and then defends the verdict from Defendants' inevitable post-trial motions, Plaintiff might still lose on appeal. *Robbins v. Koger Properties, Inc.*, 116 F.3d 1441 (11th Cir. 1997) (overturning $81 million jury verdict).

By contrast, the $2,250,000 Settlement Amount provides a substantial and immediate recovery and eliminates the risk, delay, and expense of continued litigation. While continued litigation bears the theoretical possibility of generating a higher recovery, assessing the benefits of settlement must be tempered by recognizing that any compromise involves concessions on the part of all settling parties, as "the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes." *Officers for Justice*, 688 F.2d at 624. Accordingly, the likely duration and expense of further litigation supports a finding that the Settlement is fair, reasonable, and adequate. *See In re Critical Path, Inc.*, No. C 01-00551 WHA, 2002 WL 32627559, at *7 (N.D. Cal. June 18, 2002) ("Through protracted litigation, the settlement class could conceivably extract more, but at a plausible risk of getting nothing."); *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("[U]nless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results").

### 6.    The Remaining Rule 23(e)(2)(C) Factors Support Approval

Under Rule 23(e)(2)(C)(ii)-(iv), the Court must also consider whether the relief provided for the class is adequate in light of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," "the terms of any proposed award of attorneys' fees, including timing of payment," and "any agreement required to be identified under Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv). Each of these factors support the Settlement's approval or is neutral, further demonstrating the adequacy of the Settlement.

### (a)    The Methods of Distributing Relief and Processing Claims

Rule 23 requires that the Court consider the effectiveness of the proposed method of distributing relief to the class, including the method of processing claims. Fed. R. Civ. P. 23(e)(2)(C)(ii). Here, the method for distributing relief and for processing Settlement Class Members' claims includes standard, well-established, and effective procedures. The Preliminary Approval Order established a plan to provide notice to potential Settlement Class Members, which SCS duly implemented under Lead Counsel's supervision. SCS either emailed the Long Notice, or mailed a postcard to all those who could be identified with reasonable effort, and published the Summary Notice on *GlobeNewswire* and in *Investor's Business Daily*. Mulholland Decl. ¶¶2-9. SCS also created and maintained a toll-free help line and Settlement-specific website (www.strategicclaims.net/NetApp/) hosting key documents including the Stipulation, Long Notice, Proof of Claim, and Preliminary Approval Order. *Id.* ¶¶10-11.

To participate in the distribution of the Net Settlement Fund, Settlement Class Members must complete a standard claim form that requests the information necessary to calculate claims pursuant to the Plan of Allocation. The Settlement website also allows Settlement Class Members to file their claims electronically. SCS will process claims under Lead Counsel's guidance, allow Claimants an opportunity to cure any deficiencies or request the Court review a denial of their Claim(s), and upon the Court's approval, distribute to Authorized Claimants their *pro rata* share of the Net Settlement Fund pursuant to the Plan of Allocation. This proposed method of distribution is both effective and necessary, as neither Plaintiff nor Defendants possess the individual investor trading data required to distribute the Net Settlement Fund without soliciting claim submissions.

### (b)    Identification of Other Agreements

Rule 23 requires that any agreement made in connection with the proposed Settlement be disclosed. Fed. R. Civ. P. 23(e)(2)(C)(iv). As previously disclosed in the Stipulation, ¶2.15, the Parties entered into a Supplemental Agreement that gives NetApp the right to terminate the Settlement if Settlement Class Members holding more than a certain number of shares opt out. Only the agreement's exact terms—specifically, the number of shares that trigger the right to terminate—have not been disclosed to Settlement Class Members. This Supplemental Agreement poses no

obstacle to final approval of the Settlement. *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006); *Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 4207245, at *11 (N.D. Cal. Sept. 4, 2018) ("a termination option triggered by the number of class members who opt out of the Settlement does not by itself render the Settlement unfair."); *In re Carrier IQ, Inc., Consumer Priv. Litig.*, No. 12-MD-02330-EMC, 2016 WL 4474366, at *5 (N.D. Cal. Aug. 25, 2016) (granting final approval and observing that such "opt-out deals are not uncommon as they are designed to ensure that an objector cannot try to hijack a settlement in his or her own self-interest.").

### (c)   The Proposed Settlement Does Not Unjustly Favor Any Settlement Class Members, Including Plaintiff

Courts must also evaluate whether the settlement treats class members equitably relative to one another. Fed. R. Civ. P. 23(e)(2)(D). The Settlement does not offer preferential treatment to any Settlement Class Member or any segment of the Settlement Class, including Plaintiff. The Plan of Allocation provides for distribution of the Net Settlement Fund to Settlement Class Members who suffered losses on their NetApp securities transactions during the Settlement Class Period, based on when they purchased, acquired, and/or sold shares of NetApp securities. This ensures that Settlement Class Members' recoveries are based upon their relative losses. *Vinh Nguyen v. Radient Pharms. Corp.*, No. SACV 11-00406 DOC, 2014 WL 1802293, at *5 (C.D. Cal. May 6, 2014) ("A settlement in a securities class action case can be reasonable if it 'fairly treats class members by awarding a *pro rata* share to every Authorized Claimant, but also sensibly makes interclass distinctions based upon, *inter alia*, the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue.'").

Plaintiff will receive a distribution from the Net Settlement Fund in accordance with the Plan of Allocation in the same manner as all other Settlement Class Members. Accordingly, this factor favors final approval of the Settlement.

### 7.   The Remaining *Hanlon* Factors Favor Final Approval

Certain of the *Hanlon* factors are not entirely coextensive with Rule 23(e)(2)'s requirements. These factors, viewed in light of Rule 23(e)(2)'s requirements, also support final approval.

1

#### (a)      The Amount Offered in Settlement

"The determination of a reasonable settlement is not susceptible to a mathematical equation yielding a particularized sum." *In re Signet Jewelers Ltd. Sec. Litig.*, No. 1:16-CV-06728-CM-SDA, 2020 WL 4196468, at *12 (S.D.N.Y. July 21, 2020). Nor is the proposed Settlement "to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Officers for Justice*, 688 F.2d at 625. As "[s]ettlement is the offspring of compromise[,] the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon*, 150 F.3d at 1027. "Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation." *Officers for Justice*, 688 F.2d at 624. Common sense dictates that Plaintiff must take less in a settlement than they might recover after a complete trial victory or Defendants would have no reason to settle. In a factually and legally complex securities class action lawsuit such as this, there is no guarantee that Plaintiff could secure or enforce a judgment at or near the full amount of the estimated class-wide damages.

"To evaluate the adequacy of the settlement amount, 'courts primarily consider Plaintiff's expected recovery against the value of the settlement offer.'" *Hefler*, 2018 WL 4207245, at *9 (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007)). A settlement may be acceptable even if it amounts to only a fraction of the potential recovery that might be available at trial. *Mego*, 213 F.3d at 459.

To date, Settlement Class Members have submitted valid claims totaling $40.2 million,[8] on 5.44 million[9] damaged shares. The estimated recovery per damaged share, before deducting Court-approved fees and expenses and notice and claims administration costs, is approximately $.41. The estimated Net Settlement Fund after deducting each of these costs (should the Court approve the requested amounts) is approximately $1.51 million, or $.28 per damaged share. If the Court

---

[8] This includes 32 deficient claims with a maximum claims value of $564,512.

[9] This includes 32 deficient claims with a maximum 76,457 damaged shares.

approves all of the requested amounts of fees and expenses, approximately 67.13% of the Settlement Amount will be distributed to Settlement Class Members. *See Celera*, 2015 WL 1482303, at *6 (that 73% of settlement fund would be distributed to class members weighs in favor of approving the settlement).

The Settlement recovers approximately 1.24% of the estimated maximum damages of $181.7 million potentially available under Plaintiff' best-case scenario, which assumes: (i) the Court certifies the same class period as the Settlement Class Period; (ii) Plaintiff was able to secure a reversal on appeal of the motion to dismiss opinion, succeed at summary judgment on all claims, then prove liability to a jury; and (iii) the Court and jury accepted Plaintiff' damages theory, including proof of loss causation. Goldberg Decl. ¶13. Anything less than a complete victory would decrease or potentially eliminate recoverable damages.

The Settlement's recovery percentage compares favorably to other securities class action settlements with similar total damages. In the light of these risks, the recovery percentage is reasonable and well within the range of other securities class action settlements with similar total damages. According to NERA Economic Consulting, for 2020, the median recovery in securities class actions was approximately 1.7% of estimated damages. (*See* Dkt. No. 66-8, at 20). Moreover, "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *Officers for Justice*, 688 F.2d at 628. "The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved.'" *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 (2d Cir. 1974) & n. 2 (2d Cir. 1974)). That the $2,250,000 Settlement compares favorably to settlements in similar cases further supports final approval.

### (b)    The Extent of Discovery and the Stage of Proceedings

Courts also consider the stage of the proceedings and the amount of information available to the parties to assess the strengths and weaknesses of their case in determining the fairness, reasonableness, and adequacy of a settlement. *Mego*, 213 F.3d at 458.[I]n the context of class action

settlements, formal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement." *Id.* at 459. Instead, "courts look for indications that the parties carefully investigated the claims before reaching a resolution." *In re: Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, No. MDL 2672 CRB (JSC), 2016 WL 6248426, at *13 (N.D. Cal. Oct. 25, 2016).

Barring a reversal of this Court's dismissal, discovery would never proceed. Before that dismissal, during the PSLRA-mandated discovery stay, Lead Counsel conducted an extensive investigation of the claims asserted in this Action, including: (i) reviewing NetApp's SEC filings, press releases, conference calls, news reports, blog postings, and other public statements made by Defendants prior to, during, and after the Settlement Class Period; (ii) reviewing public documents, reports, announcements, and news articles concerning NetApp; (iii) reviewing research reports by securities analysts; (iv) retaining a private investigator to search for and conduct interviews of former NetApp employees. Goldberg Decl. ¶39.

Through their investigation, as well as their review of Defendants' mediation statement, Lead Counsel determined the scope and strength of the claims Plaintiff could bring on behalf of the putative class, including the appropriate class period, corrective disclosures, and the corresponding misrepresentations and/or omissions. Through these efforts, Plaintiff and Lead Counsel gained sufficient information to evaluate Settlement before additional time and resources were expended on further litigation.

Courts regularly find this factor to support approval of a settlement even when a Plaintiff settles before a decision on the motion to dismiss or for class certification, or before any discovery. *See, e.g., Mego*, 213 F.3d at 459 (finding that even absent extensive formal discovery, class counsel's significant investigation and research supported settlement approval); *Linney*, 151 F.3d T 1239 (approving settlement after the filing of a motion to dismiss and prior to significant discovery); *Rieckborn v. Velti PLC*, No. 13-CV-03889-WHO, 2015 WL 468329, at *6 (N.D. Cal. Feb. 3, 2015) (before decision on motion to dismiss). For this reason, courts have commended class counsel for recognizing when, as was the case here, a prompt resolution of the matter is in the best interest of the class. *See Glass v. UBS Fin. Servs., Inc.*, No. C-06-4068 MMC, 2007 WL 221862, at *15 (N.D.

1   Cal. Jan. 26, 2007) ("Class counsel achieved an excellent result for the class members by settling

2   the instant action promptly"), *aff'd*, 331 F. Appx. 452, 457 (9th Cir. 2009). Given the dismissal of

3   the case and the significant chance that the dismissal would not be reversed, this factor weighs

4   strongly in favor of approval of the settlement.

5                       **(c)      Recommendation of Experienced Counsel**

6           Courts also give weight to the opinion of experienced and informed counsel supporting the

7   settlement. *Omnivision*, 559 F. Supp. 2d at 1043 ("[t]he recommendations of Plaintiff' counsel

8   should be given a presumption of reasonableness"); *DIRECTV*, 221 F.R.D. at 528 ("Great weight is

9   accorded to the recommendation of counsel, who are most closely acquainted with the facts of the

10  underlying litigation"). Lead Counsel have extensive securities litigation experience and obtained a

11  thorough understanding of the Action's merits and risks. Lead Counsel's support for the fairness

12  and reasonableness of this Settlement supports final approval of the Settlement. Defendants are

13  represented by skilled securities practitioners at Wilson Sonsini Goodrich & Rosati Professional

14  Corporation. Defense Counsel are at least as well-informed regarding the case, and their

15  representation of Defendants was no less vigorous than Lead Counsel's representation of the

16  Settlement Class.

17                      **(d)      The Presence of a Governmental Participant**

18          "Because no government entities are participants in this case, this factor is neutral." *In re*

19  *Amgen Inc. Sec. Litig.*, No. CV 7-2536 PSG (PLAX), 2016 WL 10571773, at *4 (C.D. Cal. Oct. 25,

20  2016).

21          **D.      The Plan of Allocation is Fair and Reasonable and Merits Final Approval**

22          In its Preliminary Approval Order, the Court preliminarily approved the Plan of Allocation,

23  which was detailed in the Long Notice. Mulholland Decl. Ex. B to at 4-8. Plaintiff now seeks final

24  approval of the Plan of Allocation for the purposes of administering the Settlement. Under Rule 23,

25  a plan of allocation in a class action settlement "is governed by the same standards of review

26  applicable to approval of the settlement as a whole: the plan must be fair, reasonable, and adequate."

27  *Omnivision*, 559 F. Supp. 2d at 1045. The plan need only be "rationally related to the relative

28

1  strengths and weakness of the case." *Rosenburg v. I.B.M.*, No. CV06-00430PJH, 2007 WL 128232,

2  at *5 (N.D. Cal. Jan. 11, 2007).

3      The proposed Plan of Allocation has a reasonable, rational basis. It distributes the settlement

4  proceeds on a *pro rata* basis, calculating a claimant's relative loss proximately caused by

5  Defendants' alleged misrepresentations and omissions, based on factors such as when and at what

6  prices the claimant purchased and sold NetApp securities. Goldberg Decl. ¶¶21-22. *See In re*

7  *Biolase, Inc. Sec. Litig.*, No. SACV131300JLSFFMX, 2015 WL 12720318, at *5 (C.D. Cal. Oct.

8  13, 2015) (finding a plan that awarded a *pro rata* share of the net settlement fund to be "a fair and

9  reasonable method of distributing settlement proceeds"). The formula for determining each

10  Authorized Claimant's Recognized Loss is based on an out-of-pocket measure of damages

11  consistent with Plaintiff's allegations, and takes into consideration when each Claimant purchased

12  and/or sold NetApp securities, and the relative strength of the claims alleged—namely that the while

13  the Court found falsity well-pleaded for the claim arising from the June 18, 2019 10-K, it did not

14  find falsity adequately pleaded for the guidance claim arising from the May 23, 2019 forecast. "A

15  plan which fairly treats class members by awarding a *pro rata* share to every Authorized Claimant,

16  even as it sensibly makes interclass distinctions based upon, *inter alia*, the relative strengths and

17  weaknesses of class members' individual claims and the timing of purchases of the securities at

18  issue should be approved as fair and reasonable." *Schueneman v. Arena Pharms., Inc.*, No.: 3:10-

19  cv-01959-CAB-(BLM), 2020 WL 3129566, at *7 (S.D. Cal. June 12, 2020).[10]

20

21

---

22  [10] If any funds remain after the initial distribution from the Net Settlement Fund to Authorized

23  Claimants, SCS will conduct a second distribution to Authorized Claimants who would receive at
   least $10.00 from such a re-distribution as long as the second distribution is cost effective.

24  Accordingly, it is likely that only a small amount of funds will remain in the Net Settlement Fund
   after such distribution(s). *See In re Zynga Inc. Sec. Litig.*, No. 12-CV-04007-JSC, 2015 WL

25  6471171, at *11 (N.D. Cal. Oct. 27, 2015). Any residual funds, if any, will be distributed to the
   Investor Justice and Education Clinic ("IJEC") at Howard University School of Law as an

26  appropriate *cy pres* recipient of such funds. The IJEC provides law students with the opportunity to
   represent clients in securities cases against securities broker-dealers. The IJEC also provides

27  investor education and outreach programs for underserved investing communities, providing
   investment protection education, including a basic understanding of financial markets and

28  professionals and financial products, and the rights of investors. *See* Goldberg Decl. ¶24.

To date, no objections to the Plan of Allocation have been filed. Goldberg Decl. ¶16; Mulholland Decl. ¶13. Accordingly, the Court should approve the proposed Plan of Allocation. *See Heritage Bond*, 2005 WL 1594403, at *12 ("In light of the lack of objectors to the plan of allocation at issue, and the competence, expertise, and zeal of counsel in bringing and defending this action, the Court finds the plan of allocation as fair and adequate.").

## IV.    CONCLUSION

For the foregoing reasons, the Court should grant final approval of the proposed Settlement and Plan of Allocation and grant final certification of the proposed Settlement Class.

Dated: July 28, 2022

Respectfully submitted,

**THE ROSEN LAW FIRM, P.A**.

By: */s/ Jacob A. Goldberg*
Jacob A. Goldberg (*pro hac vice*)
Gonen Haklay (*pro hac vice*)
101 Greenwood Avenue, Suite 440
Jenkintown, PA 19046
Telephone: (215) 600-2817
Facsimile: (212) 202-3827
Email: jgoldberg@rosenlegal.com
         ghaklay@rosenlegal.com

Laurence M. Rosen (SBN 219683)
355 S. Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Lead Counsel for Plaintiff and the Class*

**CERTIFICATE OF SERVICE**

I, Jacob A. Goldberg, hereby declare under penalty of perjury as follows:

I am a partner in The Rosen Law Firm, P.A., with offices at 355 S. Grand Avenue, Suite 2450 Los Angeles, CA 90071. I am over the age of eighteen.

On July 28, 2022, I electronically filed the foregoing PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF with the Clerk of the Court using the CM/ECF system which sent notification of such filing to counsel of record. Executed on July 28, 2022.

*/s/ Jacob A. Goldberg*