**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen (SBN 219683)
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Lead Counsel for Plaintiff and the Class*

*[Additional Counsel on Signature Page]*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHAD C. SMITH, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NETAPP, INC., *et al.*,<br><br>Defendants. | Case No: 4:19-cv-04801-JST<br><br>CLASS ACTION<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing Date: September 1, 2022<br>Time: 2:00 p.m. PST<br>Via Zoom: https://cand.uscourts.gov/judges/tigar-jon-s-jst/<br>Judge: Jon S. Tigar |

MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES
Case No. 4:19-cv-04801-JST

**NOTICE OF MOTION FOR AN AWARD OF ATTORNEYS' FEES
AND REIMBURSEMENT OF EXPENSES**

TO THE CLERK OF THE COURT AND ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:

PLEASE TAKE NOTICE that, pursuant to Rule 23(h) of the Federal Rules of Civil Procedure and the Court's Order Preliminarily Approving Settlement and Providing for Notice (Dkt. No. 70) ("Preliminary Approval Order"), on September 1, 2022, at 2:00 p.m., or as soon thereafter as the matter may be heard, Plaintiff Winston Derouin will hereby move the Honorable Jon S. Tigar, District Judge, via Zoom at the link https://cand.uscourts.gov/judges/tigar-jon-s-jst/, for entry of the [Proposed] Order Awarding Attorneys' Fees and Expenses submitted herewith, which: (i) awards Lead Counsel attorneys' fees in the amount of 25% of the Settlement Fund, or $562,500; (ii) awards Lead Counsel $7,645.46 as reimbursement for litigation expenses incurred in this Action; and (iii) provides a compensatory award to Plaintiff for $2,000.[1]

In support of this Motion, Lead Counsel submit the following memorandum, the Declaration of Jacob A. Goldberg in support of: (I) Plaintiff's Motion for Final Approval of Class Action Settlement and Plan of Allocation; and (II) Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Expenses ("Goldberg Decl."), filed concurrently herewith, and the exhibits thereto, the Fee Declaration of Jacob A. Goldberg ("Goldberg Fee Decl."), filed concurrently herewith, all prior pleadings and papers in this Action; and such additional information or argument as may be required by the Court.[2]

---

[1] All capitalized terms, unless otherwise defined herein, have the same meaning as set forth in the Stipulation of Settlement and exhibits thereto, dated September 24, 2021 (Dkt. No. 61-1) ("Stipulation").

[2] Defendants take no position with respect to this motion.

**TABLE OF CONTENTS**

I. PRELIMINARY STATEMENT ............................................................................................ 1

II. SUMMARY OF THE LITIGATION AND SETTLEMENT ..................................................... 3

III. ARGUMENT ..................................................................................................................... 3

    A. The Court Should Approve Lead Counsel's Fee Request ............................................. 3

        1. Lead Counsel is Entitled to a Fee Award From the Common Fund it Secured for the Settlement Class .................................................................. 3

        2. The Court Should Award Lead Counsel a Reasonable Percentage of the Common Fund ......................................................................................... 4

        3. Factors Considered by Courts in the Ninth Circuit Support Lead Counsel's Fee Request ................................................................................. 6

            (a) The Quality of the Results Achieved Supports the Fee Request ..................................................................................... 6

            (b) The Substantial Risks and Complexity of the Litigation Support the Fee Request .................................................................. 7

            (c) Lead Counsel Skillfully Managed This Case Against Formidable Adversaries ................................................................ 9

            (d) Lead Counsel Undertook a Material Financial Risk .................... 11

            (e) A 25% Fee Award is the Ninth Circuit's Benchmark and Comparable to Fee Awards in Similar Cases ............................... 13

            (f) The Reaction of the Settlement Class Supports the Requested Fee Award ..................................................................... 15

        4. A Lodestar Cross-Check Supports the Requested Fee Award .................. 16

    B. Withholding a Percentage of Attorneys' Fees ............................................................ 20

    C. The Court Should Approve Plaintiff's Request for Reimbursement of Lead Counsel's Reasonable Litigation Expenses .................................................................. 21

    D. The Court Should Award Lead Plaintiff His Reasonable Costs And Expenses Under 15 U.S.C §78u-4(a)(4) .................................................................................... 22

IV. CONCLUSION ................................................................................................................. 23

## TABLE OF AUTHORITIES

**Cases**

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
572 F.3d 221 (5th Cir. 2009)......................................................................................... 7

*Beaver v. Tarsadia Hotels*,
No. 11-CV-01842-GPC-KSC, 2017 WL 4310707 (S.D. Cal. Sept. 28, 2017).......................... 13

*Bell v. Pension Comm. of ATH Holding Co., LLC*,
No. 115CV02062TWPMPB, 2019 WL 4193376 (S.D. Ind. Sept. 4, 2019) ................................ 2

*Blum v. Stenson*,
465 U.S. 886 (1984) ..................................................................................................... 15

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) ....................................................................................................... 3

*Boyd v. Bank of Am. Corp.*,
No. SACV 13-0561-DOC, 2014 WL 6473804 (C.D. Cal. Nov. 18, 2014) ............................... 14

*Cheng Jiangchen v. Rentech, Inc.*,
No. CV 17-1490-GW(FFMX), 2019 WL 5173771 (C.D. Cal. Oct. 10, 2019)........................... 10

*Christine Asia Co. v. Yun Ma*,
No. 115MD02631CMSDA, 2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019)................................ 10

*City of Providence v. Aeropostale, Inc.*,
No. 11 CIV. 7132 CM GWG, 2014 WL 1883494 (S.D.N.Y. May 9, 2014) .............................. 13

*Destefano v. Zynga, Inc.*,
No. 12-CV-04007-JSC, 2016 WL 537946 (N.D. Cal. Feb. 11, 2016)...................................... 11

*Dickey v. Advanced Micro Devices, Inc.*,
No. 15-CV-04922-HSG, 2020 WL 870928 (N.D. Cal. Feb. 21, 2020) ..................................... 17

*Dyer v. Wells Fargo Bank, N.A.*,
303 F.R.D. 326 (N.D. Cal. 2014) ..................................................................................... 23

*Ellison v. Steven Madden, Ltd.*,
No. CV115935PSGAGRX, 2013 WL 12124432 (C.D. Cal. May 7, 2013) ................................ 4

*Eminence Cap., LLC v. Aspeon, Inc.*,
316 F.3d 1048 (9th Cir. 2003).................................................................................... 2, 7

*Fernandez v. Victoria Secret Stores, LLC*,
No. CV 06-04149 MMM SHX, 2008 WL 8150856 (C.D. Cal. July 21, 2008).......................... 16

*Fowler v. Wells Fargo Bank, N.A.*,
  No. 17-CV-02092-HSG, 2019 WL 330910 (N.D. Cal. Jan. 25, 2019) ...................................... 17

*Fox v. Vice*,
  563 U.S. 826 (2011) .............................................................................................................. 19

*Glass v. UBS Fin. Servs., Inc.*,
  No. C-06-4068 MMC, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007) ......................................... 18

*Glickenhaus & Co. v. Household Int'l, Inc.*,
  787 F.3d 408 (7th Cir. 2015)................................................................................................ 12

*Gonzalez v. City of Maywood*,
  729 F.3d 1196 (9th Cir. 2013)............................................................................................... 17

*Harris v. Marhoefer*,
  24 F.3d 16 (9th Cir. 1994)..................................................................................................... 21

*Harris v. Vector Mktg. Corp.*,
  No. C-08-5198 EMC, 2012 WL 381202 (N.D. Cal. Feb. 6, 2012)............................................ 23

*Hefler v. Wells Fargo & Co.*,
  No. 16-CV-05479-JST, 2018 WL 6619983 (N.D. Cal. Dec. 18, 2018).................................. 7, 19

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) ............................................................................................................... 6

*Hicks v. Stanley*,
  No. 01 CIV. 10071 (RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005).................................. 22

*Hopkins v. Stryker Sales Corp.*,
  No. 11-CV-02786-LHK, 2013 WL 496358 (N.D. Cal. Feb. 6, 2013) ........................................ 17

*In re Activision Sec. Litig.*,
  723 F. Supp. 1373 (N.D. Cal. 1989) .......................................................................................... 5

*In re AdelphiaCommc'ns Corp. Sec. & Deriv. Litig.,*
  *No.* 03 MDL 1529 LMM, 2006 WL 3378705 (S.D.N.Y. Nov. 16, 2006) .................................. 10

*In re Am. Apparel, Inc. S'holder Litig..,*
  No. CV1006352MMMJCGX, 2014 WL 10212865 (C.D. Cal. July 28, 2014) .......................... 13

*In re Amgen Inc. Sec. Litig.*,
  No. CV 7-2536 PSG (PLAX), 2016 WL 10571773 (C.D. Cal. Oct. 25, 2016).......................... 16

*In re Apollo Grp. Inc. Sec. Litig.*,
  No. CV 04-2147-PHX-JAT, 2012 WL 1378677 (D. Ariz. Apr. 20, 2012) ................................ 19

*In re Apple Computer Sec. Litig.*,
  No. C-84-20148(A)-JW, 1991 WL 238298 (N.D. Cal. Sept. 6, 1991) ...................................... 13

*In re Aqua Metals, Inc. Sec. Litig.*,
 No. 17-CV-07142-HSG, 2022 WL 612804 (N.D. Cal. Mar. 2, 2022)........................................ 20

*In re BankAtlantic Bancorp, Inc.*,
 No. 07-61542-CIV, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) ............................................ 12

*In re Bluetooth Headset Prod. Liab. Litig.*,
 654 F.3d 935 (9th Cir. 2011)......................................................................................... 4, 6, 20

*In re BP p.l.c. Sec. Litig.*,
 852 F. Supp. 2d 767 (S.D. Tex. 2012) ........................................................................................ 8

*In re Brooktree Sec. Litig.*,
 915 F. Supp. 193 (S.D. Cal. 1996) ............................................................................................. 5

*In re Centurylink Sales Pracs. & Sec.Litig.*,
 No. CV 18-296 (MJD/KMM), 2021 WL 3080960 (D. Minn. July 21, 2021) ............................. 9

*In re Dairy Farmers of Am., Inc.*,
 80 F. Supp. 3d 838 (N.D. Ill. 2015) ........................................................................................... 9

*In re Elan Sec. Litig.*,
 385 F. Supp. 2d 363 (S.D.N.Y. 2005)....................................................................................... 19

*In re Extreme Networks, Inc. Sec. Litig.*,
 No. 15-CV-04883-BLF, 2019 WL 3290770 (N.D. Cal. July 22, 2019) ..................................... 14

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
 No. MDL 12-2389, 2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015) .............................................. 11

*In re Heritage Bond Litig.*,
 No. 02-ML-1475 DT, 2005 WL 1594403 (C.D. Cal. June 10, 2005).................................. 10, 13

*In re Immune Response Sec. Litig.*,
 497 F. Supp. 2d 1166 (S.D. Cal. 2007) ............................................................................... 21, 23

*In re K12 Inc. Sec. Litig.*,
 No. 4:16-CV-04069-PJH, 2019 WL 3766420 (N.D. Cal. July 10, 2019)................................... 23

*In re Lidoderm Antitrust Litig.*,
 No. 14-MD-02521-WHO, 2018 WL 4620695 (N.D. Cal. Sept. 20, 2018)................................ 19

*In re LJ Int'l, Inc. Sec. Litig.*,
 No. CV0706076GAFJWJX, 2009 WL 10669955 (C.D. Cal. Oct. 19, 2009)......................... 8, 14

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
 187 F.R.D. 465 (S.D.N.Y. 1998)............................................................................................... 13

*In re Nuvelo, Inc. Sec. Litig.*,
 No. C 07-04056 CRB, 2011 WL 2650592 (N.D. Cal. July 6, 2011) .......................................... 14

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) .............................................................................. passim

*In re Oracle Corp. Sec.Litig.*,
   No. C 01–00988 SI, 2009 WL 1709050 (N.D. Cal. June 16, 2009) .......................................... 12

*In re Pac. Enterprises Sec. Litig.*,
  47 F.3d 373 (9th Cir. 1995).................................................................................................. 14

*In re Rite Aid Corp. Sec. Litig.*,
  396 F.3d 294 (3d Cir. 2005).................................................................................................... 5

*In re Schering-Plough Corp. Enhance Sec. Litig.*,
  No. CIV.A. 08-2177 DMC, 2013 WL 5505744 (D.N.J. Oct. 1, 2013)........................................ 9

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
  535 F. Supp. 2d 249 (D.N.H. 2007) ........................................................................................ 19

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, No. 2672 CRB (JSC),
  2017 WL 1047834 (N.D. Cal. Mar. 17, 2017) .......................................................................... 19

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,
  19 F.3d 1291 (9th Cir. 1994)....................................................................................... 3, 11, 15

*In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*,
  364 F. Supp. 2d 980 (D. Minn. 2005) ......................................................................... 8, 12, 23

*Jenson, v. First Tr. Corp.*,
  No. CV 05-3124 ABC (CTX), 2008 WL 11338161 (C.D. Cal. June 9, 2008)........................... 22

*Katz v. China Century Dragon Media, Inc.*,
  No. LACV1102769JAKSSX, 2013 WL 11237202 (C.D. Cal. Oct. 10, 2013)........................... 15

*Knight v. Red Door Salons, Inc.*,
  No. 08-01520 SC, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009)................................................. 15

*Lopez v. Youngblood*,
  No. CV-F-07-0474 DLB, 2011 WL 10483569 (E.D. Cal. Sept. 2, 2011) ................................... 5

*Luna v. Marvell Tech. Grp.*,
  No. C 15-05447 WHA, 2018 WL 1900150 (N.D. Cal. Apr. 20, 2018) ...................................... 21

*Maley v. Del Glob. Techs. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002) ...................................................................................... 18

*Mauss v. NuVasive, Inc.*,
  No. 13CV2005 JM (JLB), 2018 WL 6421623 (S.D. Cal. Dec. 6, 2018) ................................... 14

*Meredith Corp. v. SESAC, LLC*,
  87 F. Supp. 3d 650 (S.D.N.Y. 2015)............................................................................................ 9

*Millan v. Cascade Water Servs., Inc.*,
  No. 112CV01821AWIEPG, 2016 WL 3077710 (E.D. Cal. May 31, 2016)............................... 14

*Morris v. Lifescan, Inc.*,
  54 F. App'x 663 (9th Cir. 2003) .................................................................................... 14

*Morrison v. Nat'l Australia Bank Ltd.*,
  561 U.S. 247 (2010) ..................................................................................................... 12

*Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*,
  688 F.2d 615 (9th Cir. 1982)......................................................................................... 7

*Ontiveros v. Zamora*,
  303 F.R.D. 356 (E.D. Cal. 2014).................................................................................. 21

*Pace v. Quintanilla*,
  No. SACV 14-2067-DOC, 2014 WL 4180766 (C.D. Cal. Aug. 19, 2014) ................................ 10

*Paul, Johnson, Alston & Hunt v. Graulty*,
  886 F.2d 268 (9th Cir. 1989).......................................................................... 4, 13, 16

*Police Ret. Sys. of St. Louis v. Granite Constr. Inc.*,
  No. C 19-04744 WHA, 2022 WL 816473 (N.D. Cal. Mar. 17, 2022)....................................... 19

*Rausch v. Hartford Fin. Servs. Grp.*,
  No. 01-CV-1529-BR, 2007 WL 671334 (D. Or. Feb. 26, 2007) .................................... 14

*Redwen v. Sino Clean Energy, Inc.*,
  No. CV 11-3936 PA (SSX), 2013 WL 12303367 (C.D. Cal. July 9, 2013) ................................ 7

*Retta v. Millennium Prod., Inc.*,
  No. CV15-1801 PSG AJWX, 2017 WL 5479637 (C.D. Cal. Aug. 22, 2017)............................ 17

*Robbins v. Koger Properties, Inc.*,
  116 F.3d 1441 (11th Cir. 1997)..................................................................................... 12

*Rodman v. Safeway Inc.*,
  No. 11-CV-03003-JST, 2018 WL 4030558 (N.D. Cal. Aug. 23, 2018) ....................................... 6

*Rodriguez v. Disner*,
  688 F.3d 645 (9th Cir. 2012)........................................................................................... 6

*Rodriguez v. W. Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009)........................................................................................... 6

*Romero v. Producers Dairy Foods, Inc.*,
  No. 1:05CV0484 DLB, 2007 WL 3492841 (E.D. Cal. Nov. 14, 2007)...................................... 13

*Sawant v. Ramsey*,
  No. 3:07-CV-980 VLB, 2012 WL 3265020 (D. Conn. Aug. 9, 2012) ....................................... 12

*Silverman v. Motorola, Inc.*,
  No. 07 C 4507, 2012 WL 1597388 (N.D. Ill. May 7, 2012).........................................................9

*Singer v. Becton Dickinson & Co.*,
  No. 08-CV-821-IEG (BLM), 2010 WL 2196104 (S.D. Cal. June 1, 2010)................................14

*Stetson v. Grissom*,
  821 F.3d 1157 (9th Cir. 2016)...................................................................................................3

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
  551 U.S. 308 (2007) ...................................................................................................................4

*Todd v. STAAR Surgical Co.*,
  No. CV145263MWFGJSX, 2017 WL 4877417 (C.D. Cal. Oct. 24, 2017)..............................23

*Torrisi v. Tucson Elec. Power Co.*,
  8 F.3d 1370 (9th Cir. 1993).....................................................................................................13

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
  669 F.3d 632 (5th Cir. 2012).....................................................................................................5

*Van Vranken v. Atl. Richfield Co.*,
  901 F. Supp. 294 (N.D. Cal. 1995) ..........................................................................................17

*van Wingerden v. Cadiz, Inc.*,
  No. LACV1503080JAKJEMX, 2017 WL 5565263 (C.D. Cal. Feb. 8, 2017) ..........................14

*Vandervort v. Balboa Cap. Corp.*,
  8 F. Supp. 3d 1200 (C.D. Cal. 2014)........................................................................................14

*Vincent v. Hughes Air W., Inc.*,
  557 F.2d 759 (9th Cir. 1977)......................................................................................................3

*Vinh Nguyen v. Radient Pharms. Corp.*,
  No. SACV 11-00406 DOC, 2014 WL 1802293 (C.D. Cal. May 6, 2014) ............................5, 10

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002)........................................................................................5, 6, 7, 17

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005) .........................................................................................................5

*Yaron v. Intersect ENT, Inc.*,
  No. 4:19-CV-02647-JSW, 2021 WL 5150051 (N.D. Cal. Nov. 5, 2021).....................................7

*Yedlowski v. Roka Bioscience, Inc.*,
  No. 14-CV-8020-FLW-TJB, 2016 WL 6661336 (D.N.J. Nov. 10, 2016)....................................8

**Statutes**

15 U.S.C. § 78u-1(a)(6) ............................................................................................................. 5

15 U.S.C. § 78u-4 ...................................................................................................................... 1

15 U.S.C. § 78u-4(a)(4) ...................................................................................................... x, 22

**Rules**

Fed. R. Civ. P. 23(h) ................................................................................................................... i

**STATEMENT OF ISSUES TO BE DECIDED**

1.  Whether the Court should approve as fair and reasonable Lead Plaintiff Winston Derouin's ("Derouin" or "Plaintiff") application for an award of attorneys' fees in the amount of 25% of the Settlement Amount, or $562,500.

2.  Whether the Court should approve Plaintiff's request for reimbursement of $7,645.46 in litigation expenses Lead Counsel incurred in this Action.

3.  Whether the Court should approve Plaintiff's request for a compensatory award of $2,000 to Derouin for his costs, including lost wages, directly related to his representation of the Settlement Class, as authorized by the Private Securities Litigation Reform Act of 1995 (15 U.S.C. § 78u-4(a)(4) ("PSLRA")).

## **MEMORANDUM OF POINTS AND AUTHORITIES**

Lead Plaintiff Wintson Derouin submits this memorandum in support of his motion for an award of attorneys' fees for Lead Counsel The Rosen Law Firm, P.A. ("Rosen Law" or "Lead Counsel"), reimbursement of litigation expenses, and a compensatory award to Lead Plaintiff Winston Derouin.

## I.   PRELIMINARY STATEMENT

The Parties reached a Settlement to resolve this Action for $2,250,000. The Settlement is a favorable result for the Settlement Class, particularly since this Court dismissed the Action in its entirety and settlement was reached during an appeal to the Ninth Circuit. Having achieved this guaranteed cash recovery for the Settlement Class despite facing significant obstacles and risks in this litigation, Lead Counsel now seek an award of attorneys' fees of 25% of the Settlement Amount, or $562,500, reimbursement of expenses incurred of $7,645.46, to be paid from the Settlement Fund, and a compensatory award to Plaintiff of $2,000.

Litigants who create a common fund for the benefit of a class are entitled to an award of attorneys' fees and reimbursement of expenses from the common fund. In the Ninth Circuit, courts typically determine attorneys' fees as a percentage of the common fund. The primary factors courts consider in setting the percentage award are the quality of the result, the risk undertaken, and the reaction of the settlement class. Here, each of these factors weighs in favor of awarding Lead Counsel attorneys' fees of 25% of the Settlement Amount.

The proposed Settlement represents a favorable result for the Settlement Class, particularly in light of the significant hurdles that Plaintiff faced to prevail in this complex securities fraud litigation. Lead Counsel bore the risk of failure, contributing 678.01 hours on behalf of the Settlement Class and advancing $7,645.46 in costs and expenses, all on a fully contingent basis. Lead Counsel faced challenges to establishing liability and damages. Defendants hired Wilson Sonsini Goodrich & Rosati ("Wilson Sonsini") to defend them, skilled litigation counsel that amplified the challenges Plaintiff faced in overcoming the PSLRA's, 15 U.S.C. § 78u-4, heightened pleading standards and other obstacles in successfully pursuing his claim and the claims of the

Settlement Class.[3] Despite the risks of failure, Lead Counsel secured a favorable recovery for the Settlement Class after informed, arm's-length negotiations with the aid of an experienced mediator for the Ninth Circuit Court of Appeals, Sasha M. Cummings.

The Settlement Class approves of Lead Counsel's work. Objections and requests for exclusion are not due until August 11, 2022, but to date, no Settlement Class Member has objected to the fee request, the request for expense reimbursement, or the compensatory award to Plaintiff. Plaintiff notified the Settlement Class of his intent to seek from the Settlement Fund, attorneys fees, reimbursement of expenses, and a compensatory award. (Dkt. 66-4, at 2). To date, only one request for exclusion was received. Goldberg Decl., Ex. 1, ¶¶12-13.[4]

Plaintiff also seeks reimbursement of Lead Counsel's out-of-pocket litigation expenses incurred in connection with the prosecution of this action in the amount of $7,645.46, less than the $25,000 maximum for reimbursement of expenses disclosed in the Notice. The expenses equate to approximately one-third of 1% of the Settlement Fund. These expenses, including court filings fees, investigator fees, and online research fees and administrative expenses, were reasonable and necessary for the successful prosecution of the Action, and should be approved.

Last, pursuant to the PSLRA, Plaintiff requests that the Court award him $2,000 for the time he spent on the Action for the benefit of the Settlement Class. Plaintiff reviewed documents filed in the Action, discussed case strategy with Lead Counsel, and approved the Settlement. Goldberg Decl. Ex. 3.[5] But for his "commitment to pursuing these claims, the successful recovery for the [Settlement] Class would not have been possible." *Bell v. Pension Comm. of ATH Holding Co., LLC*, No. 115CV02062TWPMPB, 2019 WL 4193376, at *6 (S.D. Ind. Sept. 4, 2019).

[3] The PSLRA imposes several procedural obstacles to alleging securities fraud, and its pleading standards in particular are "not [] easy [] to comply with," *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

[4] Exhibit 1 to the Goldberg Decl. is the Declaration of Paul Mulholland Concerning: (A) mailings of the Postcard Notice; (B) Publication of the Summary Notice; (C) Report on Requests for Exclusion and Objections; (D) Status of Claim Forms Received; and (E) Timeline of Administrative Process) ("Mulholland Decl.").

[5] Exhibit 3 to the Goldberg Decl. is the Declaration of Winston Derouin ("Derouin Decl.").

For all the reasons set forth herein, and in the Goldberg Declaration, Plaintiff respectfully requests that the Court award attorneys' fees equal to 25% of the Settlement Fund, approve reimbursement to Lead Counsel of $7,645.46 in litigation expenses, and award $2,000 to Plaintiff.

## II.    SUMMARY OF THE LITIGATION AND SETTLEMENT

In accordance with the Northern District of California's *Procedural Guidance for Class Action Settlements* ("Northern District Guidelines"), the Court is referred to the concurrently filed Plaintiff's Notice of Motion and Motion for Final Approval of Class Action Settlement; Memorandum of Points and Authorities Thereof ("Final Approval Brief"), for descriptions of the background facts and procedural history of this Action and the terms of Settlement.

## III.    ARGUMENT

### A.    The Court Should Approve Lead Counsel's Fee Request

#### 1.    Lead Counsel is Entitled to a Fee Award From the Common Fund it Secured for the Settlement Class

Attorneys who represent a class and are successful in recovering a common fund for the benefit of class members are entitled to a reasonable fee from the common fund as compensation for their services. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole.").[6] The Ninth Circuit has held that "a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 769 (9th Cir. 1977); *see also In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) ("those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it.") ("*WPPSS*"); *accord Stetson v. Grissom*, 821 F.3d 1157, 1165 (9th Cir. 2016). This rule, known as the "common fund" doctrine, is "designed to prevent unjust enrichment by distributing the costs of litigation among those who benefit from the efforts of the litigants and their counsel." *In re*

---

[6] Internal citations and quotations are omitted, and emphasis is added unless otherwise noted.

*Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008). "The amount of such a reward is that which is deemed 'reasonable' under the circumstances." *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989).

Reasonable fee awards are necessary in securities class actions. The Supreme Court has "long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions brought [] by the Department of Justice and the Securities and Exchange Commission." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 313 (2007); *Halliburton Co. v. Erica P. John Fund, Inc.*, No. 13-317, Brief for the United States as Amicus Curiae Supporting Respondent, at 1-2. *Tellabs* and *Halliburton* were both class actions alleging securities fraud. Attorneys' fee awards were necessary to provide incentives for private lawyers to file those actions, and an award is necessary and appropriate here for the same reasons.

### 2. The Court Should Award Lead Counsel a Reasonable Percentage of the Common Fund

District courts in the Ninth Circuit have discretion to award attorneys' fees in common fund cases based upon either the percentage-of-the-fund method or the lodestar/multiplier method. *See In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 944–45 (9th Cir. 2011). The percentage-of-the-fund approach is the prevailing method used, however, where there is an easily quantifiable benefit to the class such as a cash common fund,. *See, e.g., Ellison v. Steven Madden, Ltd.*, No. CV115935PSGAGRX, 2013 WL 12124432, at *8 (C.D. Cal. May 7, 2013) (finding "use of the percentage method" to be the "dominant approach in common fund cases"); *Omnivision*, 559 F. Supp. 2d at 1046 (same).

Courts have found the percentage approach superior in cases with a common fund recovery because it parallels the use of percentage-based contingency fee contracts, the norm in private litigation because that method (1) aligns the lawyers' interests with that of the class in achieving the maximum possible recovery, (2) reduces the burden on the court by eliminating the detailed and time-consuming lodestar analysis, and (3) helps the Settlement Class avoid further delays necessitated by the Court's lodestar review. *See Omnivision*, 559 F. Supp. 2d at 1046. Many courts

recognize the "significant benefits to the percentage approach, including consistency with contingency fee calculations in the private market, aligning the lawyers' interests with achieving the highest award for the class members, and reducing the burden on the courts that a complex lodestar calculation requires." *Vinh Nguyen v. Radient Pharms. Corp.*, No. SACV 11-00406 DOC, 2014 WL 1802293, at \*9 (C.D. Cal. May 6, 2014); *see also In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1989) (lodestar/multiplier method "adds to the work load of already overworked district courts"); *Lopez v. Youngblood*, No. CV-F-07-0474 DLB, 2011 WL 10483569, at \*4 (E.D. Cal. Sept. 2, 2011) ("the lodestar method is difficult to apply [and] time consuming to administer.").

Among other advantages, the percentage-of-the-fund method "aligns the interests of class counsel and the class, rather than rewarding attorneys for hours spent on cases, as the lodestar method does." *In re Brooktree Sec. Litig.*, 915 F. Supp. 193, 196 (S.D. Cal. 1996); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050, n.5 (9th Cir. 2002) (affirming 28% fee, disfavoring lodestar for incentivizing lawyers to generate more hours and not to settle early). The percentage method "provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 122 (2d Cir. 2005).

Application of the percentage-of-the-fund method is consistent with the PSLRA, which provides that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount" recovered for the class. 15 U.S.C. § 78u-1(a)(6); *see also Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 643 (5th Cir. 2012) ("Part of the reason behind the near-universal adoption of the percentage method in securities cases is that the PSLRA contemplates such a calculation."); *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005).

For these reasons, Plaintiff requests that the Court award attorneys' fees in this case on a percentage-of-the-fund basis, using lodestar only as a cross-check on reasonableness of the percentage the Court will award. *See Vizcaino*, 290 F.3d at 1050, n.5 ("The lodestar method is merely a cross-check on the reasonableness of a percentage figure").

**3.      Factors Considered by Courts in the Ninth Circuit Support Lead Counsel's Fee Request**

Courts in the Ninth Circuit consider certain factors when determining whether a fee award is "reasonable under the circumstances." *Rodriguez v. Disner*, 688 F.3d 645, 653 (9th Cir. 2012); *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009). These factors include: (1) the results achieved; (2) the risk and complexity of the litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried; (5) the reaction of the Settlement Class; and (6) awards made in similar cases. *See Omnivision*, 559 F. Supp. 2d at 1046-48 (citing *Vizcaino*, 290 F.3d at 1048–51). The Ninth Circuit has explained that these factors are not a rigid checklist and that courts should not weigh individually but, rather, should evaluate them in light of the totality of the circumstances. *Vizcaino*, 290 F.3d at 1048–50. Here, each of these factors weighs in favor of approving the attorneys' fees Plaintiff requests.

**(a)      The Quality of the Results Achieved Supports the Fee Request**

Courts consistently acknowledge that the quality of the result achieved is the most important factor in determining an appropriate fee award. *See, e.g.*, *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("most critical factor is the degree of success obtained"); *Bluetooth*, 654 F.3d at 942 ("Foremost among these considerations, however, is the benefit obtained for the class."); *Rodman v. Safeway Inc.*, No. 11-CV-03003-JST, 2018 WL 4030558, at *3 (N.D. Cal. Aug. 23, 2018); *Omnivision*, 559 F. Supp. 2d at 1046. Lead Counsel submit that the $2,250,000 proposed Settlement is a favorable result for the Settlement Class, particularly given that a recovery was not guaranteed, as the Ninth Circuit might have affirmed the Court's decision dismissing the Action.

If Plaintiff were able to secure a reversal of the motion to dismiss order, if the Court were to certify the same class period as the Settlement Class Period, and if the Court and jury subsequently accepted all of Plaintiff's liability and damages theories and rejected any negative causation defenses (*i.e.*, Plaintiff's best-case scenario), the total maximum damages would be approximately $181.7 million. Goldberg Decl. ¶13. The Settlement in this scenario recovers approximately 1.24% of maximum estimated damages. Anything less than the best-case scenario would decrease or potentially eliminate recoverable damages, including a loss of the false projection claim.

The Settlement's recovery percentage is in line with other securities class action settlements with similar total damages. *See e.g., Yaron v. Intersect ENT, Inc.*, No. 4:19-CV-02647-JSW, 2021 WL 5150051, at *1 (N.D. Cal. Nov. 5, 2021) (awarding attorneys' fees of one-third of settlement fund for settlement recovering 1.18% of plaintiffs' best-case scenario of damages). According to NERA Economic Consulting, for 2020, the median recovery in securities class actions was approximately 1.7% of estimated damages. (*See* Dkt. No. 66-8, at 20). Moreover, "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 628 (9th Cir. 1982). Given the range of possible results in this litigation, including a possibility of no recovery whatsoever, the Settlement Amount represents a considerable achievement and weighs in favor of the requested fee.

### (b) The Substantial Risks and Complexity of the Litigation Support the Fee Request

The second factor courts in this Circuit consider in awarding attorneys' fees is "[t]he risk that further litigation might result in Plaintiffs not recovering at all, particularly in a case involving complicated legal issues." *Omnivision*, 559 F. Supp. 2d at 1046-47; *see also Vizcaino*, 290 F.3d at 1048 ("[r]isk is a relevant circumstance" in awarding attorneys' fees). Courts have long recognized that securities class actions are complex and carry significant risks, and post-PSLRA rulings have made clear that the risk of no recovery has increased significantly. *See Eminence*, 316 F.3d at 1052 ("The PSLRA requires a plaintiff to plead a complaint of securities fraud with an unprecedented degree of specificity and detail giving rise to a strong inference of deliberate recklessness. This is not an easy standard to comply with—it was not intended to be—and plaintiffs must be held to it."); *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009) ("to be successful, a securities class-action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action"); *Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 6619983, at *13 (N.D. Cal. Dec. 18, 2018) ("Plaintiffs' Counsel faced substantial risks in pursuing this litigation, given the inherent uncertainties of trying securities fraud cases and the demanding pleading standards of the PLSRA."); *Redwen v. Sino Clean Energy, Inc.*, No. CV

11-3936 PA (SSX), 2013 WL 12303367, at *6 (C.D. Cal. July 9, 2013) ("Courts experienced with securities fraud litigation, routinely recognize that securities class actions present hurdles to proving liability that are difficult for plaintiffs to clear."). This Action was no exception.

Here, the obstacles to recovery included both the general risks of complex securities litigation, as well as the specific risks of this case. For example, the Court dismissed Plaintiff's Amended Complaint. (Dkt. No. 56); *See In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 1003 (D. Minn. 2005) ("The court needs to look no further than its own order dismissing the shareholder … litigation to assess the risks involved."). The Settlement Class faced the immediate risk of losing on appeal to the Ninth Circuit. *See Yedlowski v. Roka Bioscience, Inc.*, No. 14-CV-8020-FLW-TJB, 2016 WL 6661336, at *21 (D.N.J. Nov. 10, 2016) ("The risk of non-payment is especially high in securities class actions, as they are notably difficult and notoriously uncertain. … Legal precedents are continually making it more difficult to plead securities class actions.") (quoting *In re BP p.l.c. Sec. Litig.*, 852 F. Supp. 2d 767, 820 (S.D. Tex. 2012) ("The Court is acutely aware that federal legislation and authoritative precedents have created for plaintiffs in all securities actions formidable challenges to successful pleading.")). In light of the PSLRA's heightened pleading standard for scienter,[7] the likelihood of achieving reversal of this Court's order dismissal with respect to the Annual Report risk disclosure was uncertain at best. With respect to the claim that NetApp's May 23, 2019, guidance was misleading, the Court found that the Complaint failed to plead falsity adequately. Achieving reversal of the Court's dismissal of that claim posed an even greater challenge.

Lead Counsel recognized from the outset that there were substantial risks in the litigation and that Plaintiff's ability to succeed at trial and obtain a large judgment was far from certain. Beyond reversal in the appellate court, Plaintiff also faced material risks of continued litigation, any of which could result in no recovery for the Class, including obtaining class certification, surviving

---

[7] Under the PSLRA, the element of scienter is particularly difficult to plead and to prove. *In re LJ Int'l, Inc. Sec. Litig.*, No. CV0706076GAFJWJX, 2009 WL 10669955, at *3 (C.D. Cal. Oct. 19, 2009).

Defendants' anticipated motion for summary judgment, winning at trial, and defeating any post-trial motions or appeals. Nevertheless, Lead Counsel accepted the challenge.

"One proxy for assessing risk is whether the litigation followed on the heels of some prior criminal or civil proceeding involving the same parties or subject matter." *In re Dairy Farmers of Am., Inc.*, 80 F. Supp. 3d 838 (N.D. Ill. 2015) "This inquiry provides insight into whether class counsel benefitted from the work of others, which acts a red flag for judges assessing fee petitions." *Id.* In the instant case, there were no proceedings initiated by the U.S. Securities and Exchange Commission ("SEC") or the U.S. Department of Justice ("DOJ"). Rather, "Plaintiffs' counsel (and their teams and experts) were truly the authors of the favorable outcome for the class." *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 670 (S.D.N.Y. 2015); *see also Silverman v. Motorola, Inc.*, No. 07 C 4507, 2012 WL 1597388, at *3 (N.D. Ill. May 7, 2012) (fee request supported by fact that "there were no governmental investigations or prosecutions related to the alleged fraud upon which Class Counsel could rest their theory of the case. Rather, they investigated the facts and developed their theory of liability from scratch, involving significant time and expense").

Nor was this a restatement case where NetApp admitted to a material misstatement of its financial statements. A case predicated on a restatement may be less risky because the misstatement and materiality elements of a securities fraud claim are already met. *See In re Schering-Plough Corp. Enhance Sec. Litig.*, No. CIV.A. 08-2177 DMC, 2013 WL 5505744, at *30 (D.N.J. Oct. 1, 2013) (granting fee request where the case was the antithesis of cases where liability is virtually certain due to a financial restatement). In contrast, "[t]his case lacked several strong facts that often support liability (and large settlement valuations) and provide a roadmap for proving fraud, such as suspected insider trading, a corporate restatement, or a companion SEC or DOJ investigation." *In re Centurylink Sales Pracs. & Sec. Litig.*, No. CV 18-296 (MJD/KMM), 2021 WL 3080960, at *9 (D. Minn. July 21, 2021).

          **(c)**     **Lead Counsel Skillfully Managed This Case Against Formidable Adversaries**

The third factor to consider in determining what fee to award is the skill required and the quality of the work performed. Courts have recognized that the "prosecution and management of a

complex national class action requires unique legal skills and abilities," *Omnivision*, 559 F. Supp. 2d at 1047, and that "[t]he experience of counsel is also a factor in determining the appropriate fee award." *In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *12 (C.D. Cal. June 10, 2005). "This is particularly true in securities cases because the [PSLRA] makes it much more difficult for securities plaintiffs to get past a motion to dismiss." *Omnivision*, 559 F. Supp. 2d at 1047; *Cheng Jiangchen v. Rentech, Inc.*, No. CV 17-1490-GW(FFMX), 2019 WL 5173771, at *10 (C.D. Cal. Oct. 10, 2019) (similar)

Rosen Law attorneys are experienced, skilled practitioners in the securities litigation field, with a long record of successfully prosecuting securities cases throughout the country, including within this Circuit and District. *See* Goldberg Decl. ¶28. Rosen Law's firm resume has previously been filed with this court. (Dkt. No. 21-4). Rosen Law attorneys have shown they are willing and able to litigate a case to resolution. *See, e.g., Nguyen*, 2014 WL 1802293, at *9 (C.D. Cal. May 6, 2014) (noting that Rosen Law "took on significant risk in this case, working thoroughly and enthusiastically through extensive litigation that required significant expert involvement" to secure eve-of-trial settlement); *Pace v. Quintanilla*, No. SACV 14-2067-DOC, 2014 WL 4180766, at *3 (C.D. Cal. Aug. 19, 2014) ("The Rosen Law Firm has appeared before this Court several times before, and the Court is confident that it has the necessary skill and knowledge to effectively prosecute this action"); *Christine Asia Co. v. Yun Ma*, No. 115MD02631CMSDA, 2019 WL 5257534, at *19 (S.D.N.Y. Oct. 16, 2019), *appeal withdrawn sub nom. Tan Chao v. William*, No. 19-3823, 2020 WL 763277 (2d Cir. Jan. 2, 2020) (approving largest ever settlement in investor case brought against a Chinese company, finding that "the quality of representation by both [Rosen] and Defendants' counsel was high in this case."). Lead Counsel's experience, skill, and commitment to this litigation provided Plaintiff with the leverage necessary to negotiate a favorable settlement for the Settlement Class.

In evaluating the quality of Lead Counsel's work, it is also important to consider the quality of opposing counsel. *See, e.g., Heritage Bond*, 2005 WL 1594403, at *20; *In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.*, No. 03 MDL 1529 LMM, 2006 WL 3378705, at *3 (S.D.N.Y. Nov. 16, 2006) ("The fact that the settlements were obtained from defendants represented by 'formidable

opposing counsel from some of the best defense firms in the country' also evidences the high quality of lead counsels' work."), *aff'd*, 272 F. App'x 9 (2d Cir. 2008). Defendants in this Action were represented by the skilled securities practitioners at Wilson Sonsini Goodrich & Rosati, P.C., a well-respected law firm. Goldberg Decl. ¶43. Lead Counsel's ability to obtain a favorable Settlement in the face of formidable legal opposition confirms the superior quality of their work and supports the award of the requested fee.

### (d)   Lead Counsel Undertook a Material Financial Risk

The fourth factor in determining a fair and reasonable fee requires courts to consider the contingent nature of the fee and the obstacles surmounted. As the Ninth Circuit has explained:

> It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases. *See* Richard Posner, Economic Analysis of Law § 21.9, at 534-35 (3d ed. 1986). Contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless whether they win or lose.

*WPPSS*, 19 F.3d at 1299; *see also Omnivision*, 559 F. Supp. 2d at 1047 ("The importance of assuring adequate representation for plaintiffs who could not otherwise afford competent attorneys justifies providing those attorneys who do accept matters on a contingent fee basis a larger fee than if they were billing by the hour or on a flat fee."); *Destefano v. Zynga, Inc.*, No. 12-CV-04007-JSC, 2016 WL 537946, at *18 (N.D. Cal. Feb. 11, 2016) ("[W]hen counsel takes on a contingency fee case and the litigation is protracted, the risk of non-payment after years of litigation justifies a significant fee award.").

Lead Counsel have borne the risk of failure because any compensation and expense reimbursement is contingent on the result and on this Court's discretion in awarding fees and expenses. Lead Counsel have invested over 678 hours working on this case, with a total lodestar of $573,328.50, and incurred expenses of $7,645.46 in prosecuting and resolving this Action. Goldberg Decl. ¶¶40-41, 48. Additional work in implementing the Settlement and claims administration will be required. *Id.* ¶42; *See In re Facebook, Inc. IPO Sec. & Derivative Litig.*, No. MDL 12-2389, 2015

WL 6971424, at *10 (S.D.N.Y. Nov. 9, 2015) ("Considering that the work in this matter is not yet concluded for Plaintiffs' counsel who will necessarily need to oversee the claims process, respond to inquiries, and assist [c]lass [m]embers in submitting their [p]roof[s] of [c]laim[], the time and labor expended by counsel in this matter support a conclusion that a 33% fee award in this matter is reasonable").

The risk of no recovery in complex cases is real, despite any Lead Counsel's diligence and expertise. Goldberg Decl. ¶34. Lead Counsel know this from personal experience. In *Sawant v. Ramsey*, No. 3:07-CV-980 VLB, 2012 WL 3265020 (D. Conn. Aug. 9, 2012), for example, Rosen Law spent thousands of hours securing a trial verdict only to find it impossible to collect on the judgment. Indeed, there are many examples of lawsuits where, because of the discovery of facts unknown when the case was commenced, changes in the law during the pendency of the case, or a decision of a judge or jury following a trial on the merits, excellent professional efforts by members of the plaintiffs' bar produced no attorneys' fees for counsel. *See, e.g., In re Alstom SA Sec. Litig.*, 741 F. Supp. 2d 469, 471–73 (S.D.N.Y. 2010) (after completing significant and expensive foreign discovery, 95% of plaintiffs' damages were eliminated by Supreme Court's reversal, in *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247 (2010), of unbroken circuit court precedent of over 40 years). "Precedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs yet have lost the case despite their advocacy." *Xcel Energy*, 364 F. Supp. 2d at 994; *see also In re Oracle Corp. Sec. Litig.*, No. C 01–00988 SI, 2009 WL 1709050 (N.D. Cal. June 16, 2009), *aff'd* 627 F.3d 376 (9th Cir. 2010) (granting summary judgment to defendants after eight years of litigation and after plaintiff's counsel incurred over $6 million in expenses and worked over 100,000 hours, representing lodestar of approximately $48 million). Even plaintiffs who get past summary judgment and succeed at trial may find a judgment in their favor overturned on appeal or on a post-trial motion. *See, e.g., Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015) (reversing and remanding jury verdict of $2.46 billion after 13 years of litigation); *Robbins v. Koger Properties, Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversing jury verdict of $81 million); *In re BankAtlantic Bancorp, Inc.*, No. 07-61542-CIV, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) (granting defendants' motion for judgment as a matter

of law following plaintiffs' verdict); *In re Apple Computer Sec. Litig.*, No. C-84-20148(A)-JW, 1991 WL 238298 (N.D. Cal. Sept. 6, 1991) (overturning jury verdict for plaintiffs after extended trial).

Rosen Law's fee here was entirely contingent upon a successful resolution of the Action. Goldberg Decl. ¶¶44-47. Lead Counsel committed material hours and money to prosecute this Action for the benefit of the Settlement Class. "This type of substantial outlay, when there is a risk that no money will be recovered, further supports the award of the requested fees." *In re Am. Apparel, Inc. S'holder Litig..*, No. CV1006352MMMJCGX, 2014 WL 10212865, at *22 (C.D. Cal. July 28, 2014); *see also City of Providence v. Aeropostale, Inc.*, No. 11 CIV. 7132 CM GWG, 2014 WL 1883494, at *14 (S.D.N.Y. May 9, 2014) ("the financial burden on contingent-fee counsel is far greater than on a firm that is paid on an ongoing basis"). Under these circumstances, "[t]he contingent nature of counsel's representation strongly favors approval of the requested fee." *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 488 (S.D.N.Y. 1998).

### (e)    A 25% Fee Award is the Ninth Circuit's Benchmark and Comparable to Fee Awards in Similar Cases

In *Graulty*, the Ninth Circuit established 25% of the fund as the "benchmark" award for attorneys' fees which then could be "adjust[ed] upward or downward to fit the individual circumstances of this case." 886 F.2d at 272; *see also Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993) (reaffirming 25% benchmark). Courts in the Ninth Circuit have recognized that "in most common fund cases, the award exceeds the benchmark" and that "this is particularly true in securities class actions." *Am. Apparel*, 2014 WL 10212865, at *23; *Omnivision*, 559 F. Supp. 2d at 1047 ("[I]n most common fund cases, the award exceeds [the] benchmark."); *Romero v. Producers Dairy Foods, Inc.*, No. 1:05CV0484 DLB, 2007 WL 3492841, at *4 (E.D. Cal. Nov. 14, 2007) (approving a fee award of 33% of the common fund, and noting that "[e]mpirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery"). Courts in the Ninth Circuit commonly award fees of up to one third of the settlement funds where counsels' efforts are substantial and the results superior. *Heritage Bond*, 2005 WL 1594403, at *19 (awarding one-third of the fund and collecting cases awarding one third of the fund); *see also Beaver v. Tarsadia Hotels*,

No. 11-CV-01842-GPC-KSC, 2017 WL 4310707, at *10 (S.D. Cal. Sept. 28, 2017) (listing cases within the Ninth Circuit that approved a fee award of one-third the common fund). Despite the considerable effort and risks incurred to reach this excellent Settlement, Lead Counsel is seeking only the 25% benchmark for attorneys' fees.

The fee Plaintiff requests is reasonable when compared to fee awards in similarly sized securities class action settlements from district courts throughout the Ninth Circuit. *See, e.g., In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (approving fee of 33% percent of a $12 million settlement fund); *In re Nuvelo, Inc. Sec. Litig.*, No. C 07-04056 CRB, 2011 WL 2650592, at *2 (N.D. Cal. July 6, 2011) (awarding fee of 30% of $8.9 million settlement); *Mauss v. NuVasive, Inc.*, No. 13CV2005 JM (JLB), 2018 WL 6421623, at *7 (S.D. Cal. Dec. 6, 2018) (awarding attorneys' fee of 30% of $7.9 million settlement); *In re Extreme Networks, Inc. Sec. Litig.*, No. 15-CV-04883-BLF, 2019 WL 3290770, at *11 (N.D. Cal. July 22, 2019) (awarding fee of 25% of $7 million settlement); *van Wingerden v. Cadiz, Inc.*, No. LACV1503080JAKJEMX, 2017 WL 5565263, at *13 (C.D. Cal. Feb. 8, 2017) (awarding fee of 25% of $3 million settlement); *In re LJ Int'l, Inc. Sec. Litig.*, 2009 WL 10669955, at *7 (C.D. Cal. Oct. 19, 2009) (awarding fee of 25% of $2 million settlement).

Courts in the Ninth Circuit also routinely award attorneys' fees at or above the benchmark in non-securities, common fund actions. *See e.g., Singer v. Becton Dickinson & Co.*, No. 08-CV-821-IEG (BLM), 2010 WL 2196104, at *8 (S.D. Cal. June 1, 2010) (awarding attorneys' fees of one-third of common fund and collecting cases noting that "the request for attorneys' fees in the amount of 33.33% of the common fund falls within the typical range of 20% to 50% awarded in similar cases."); *Morris v. Lifescan, Inc.*, 54 F. App'x 663, 664 (9th Cir. 2003) (affirming 33% fee); *Boyd v. Bank of Am. Corp.*, No. SACV 13-0561-DOC, 2014 WL 6473804, at *12 (C.D. Cal. Nov. 18, 2014) (awarding one-third fee); *Vandervort v. Balboa Cap. Corp.*, 8 F. Supp. 3d 1200, 1210 (C.D. Cal. 2014) (awarding 33% fee); *Millan v. Cascade Water Servs., Inc.*, No. 112CV01821AWIEPG, 2016 WL 3077710, at *11–12 (E.D. Cal. May 31, 2016) (approving an award of 33% of the common fund); *Rausch v. Hartford Fin. Servs. Grp.*, No. 01-CV-1529-BR, 2007 WL 671334, at *2 (D. Or. Feb. 26, 2007) (awarding 30% of settlement fund).

The requested 25% fee is also in line with, or lower than, contingent fees in individual cases, which typically range from 30% to 40% of the recovery. *See, e.g., Blum v. Stenson*, 465 U.S. 886, 903 n.20 (1984) ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers."); *Katz v. China Century Dragon Media, Inc.*, No. LACV1102769JAKSSX, 2013 WL 11237202, at *8 (C.D. Cal. Oct. 10, 2013) ("contingency fee arrangements generally range from 30% to 40% of final recovery.").

The guiding principle in this Circuit is that a fee award be "reasonable under the circumstances." *WPPSS*, 19 F.3d at 1296. Here, in view of the result obtained, the unique risks avoided in achieving a prompt and substantial recovery, the contingent fee risk, and the fees awarded in similar securities class actions in this Circuit, an award of 25% of the Settlement Amount is reasonable.

        **(f)**      **The Reaction of the Settlement Class Supports the Requested Fee Award**

The class's reaction to a proposed settlement and fee request is a relevant factor in approving fees. *See Knight v. Red Door Salons, Inc.*, No. 08-01520 SC, 2009 WL 248367, at *7 (N.D. Cal. Feb. 2, 2009); *Omnivision*, 559 F. Supp. 2d at 1048. The Long Notice and the Postcard Notice informed Settlement Class Members that Lead Counsel would seek attorneys' fees of up to 25% of the Settlement Amount, litigation expenses in an amount not to exceed $25,000, and a compensatory award to Plaintiff of no more than $2,000. Mulholland Decl., Ex. A (Postcard Notice); Ex. B (Long Notice) ¶15. The Notice also advised Settlement Class Members of their right to object to these requests for relief or to request exclusion from the Settlement, and explained how to do so. Mulholland Decl., Ex. B at ¶11. A total of 47,946 potential Settlement Class members were notified of the Settlement and the maximum contemplated request for attorney's fees and reimbursement of litigation expenses by a combination of postcard, emailing of the Long Notice and Claim Form, publication, emails from nominees, and the settlement website. Mulholland Decl. ¶¶2-8. The Claims Administrator caused *GlobeNewswire* and *Investor's Business daily* to publish the Summary Notice. *Id.* ¶9. The Claims Administrator created and maintained a dedicated settlement website (https://www.strategicclaims.net/NetApp), which included all relevant dates and copies of important

documents—including the Notice, Stipulation, Claim Form and Preliminary Approval Order. *Id.* ¶11.

The deadline for Settlement Class Members to object or opt out of the Settlement is August 11, 2022. To date, no Settlement Class Member has objected to the fee request, the reimbursement of expenses, or to a compensatory award to Plaintiff. Mulholland Decl. ¶13. Only one Settlement Class Member has requested exclusion, and that investor's letter requesting exclusion states that the investor neither purchased nor sold NetApp stock during the Class Period. *Id.* ¶12. The lack of objections and minimal opt-outs evidence a positive reaction from the Settlement Class and are strong support for the reasonableness of the requested fees and expenses. *See, e.g., Fernandez v. Victoria Secret Stores, LLC*, No. CV 06-04149 MMM SHX, 2008 WL 8150856, at *13 (C.D. Cal. July 21, 2008) (3 members objected and 29 opted out, nonetheless indicating a favorable result and supporting an award of a "generous fee"). The reaction of the Class to the fee and expense reimbursement requests supports this Court's granting them.

### 4. A Lodestar Cross-Check Supports the Requested Fee Award

Although this Court should award attorneys' fees based on a percentage of the fund, as "[a] final check on the reasonableness of the requested fees, courts often compare the fee counsel seeks as a percentage with what their hourly bills would amount to under the lodestar analysis." *Omnivision*, 559 F. Supp. 2d at 1048. This step is "not required for an award of attorneys' fees in the Ninth Circuit," but "a cross-check of the fee request with a lodestar amount can demonstrate the fee request's reasonableness." *In re Amgen Inc. Sec. Litig.*, No. CV 7-2536 PSG (PLAX), 2016 WL 10571773, at *9 (C.D. Cal. Oct. 25, 2016).[8]

The lodestar method first "calculates the fee award by multiplying the number of hours reasonably spent by a reasonable hourly rate and then enhancing that figure, if necessary, to account for the risks associated with the representation." *Graulty*, 886 F.2d at 272. In the second step of the

---

[8] The Northern District Guidelines require applicants for attorneys' fees to include detailed lodestar information even if, as here, the requested amount is based on a percentage of the settlement fund. Lead Counsel have complied with this rule, but note that the Guidance does not require Courts to apply the lodestar method.

analysis, a court adjusts the lodestar to take into account, among other things, the time and labor required, the result achieved, the quality of representation, whether the fee is fixed or contingent, the novelty and difficulty of the questions involved, and awards in similar cases. *See, e.g., Gonzalez v. City of Maywood*, 729 F.3d 1196, 1209 (9th Cir. 2013). In so doing, "courts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases." *Vizcaino*, 290 F.3d at 1051–52 (approving a 3.65 lodestar multiplier).

The Ninth Circuit found in *Vizcaino*, 290 F.3d at 1051 n.6, that when the informal lodestar method is used as a cross-check and a multiplier is applied, "most" multipliers fell into the range of 1 to 4, but also noted that there have been numerous examples of even higher multipliers. *See also Hopkins v. Stryker Sales Corp.*, No. 11-CV-02786-LHK, 2013 WL 496358, at *4 (N.D. Cal. Feb. 6, 2013) ("Multipliers of 1 to 4 are commonly found to be appropriate in complex class action cases."). Multipliers in the upper end of this range are commonplace in this District, particularly for complex class actions such as this one. *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995) ("Multipliers in the 3–4 range are common in lodestar awards for lengthy and complex class action litigation"); *see also Dickey v. Advanced Micro Devices, Inc.*, No. 15-CV-04922-HSG, 2020 WL 870928, at *8–9 (N.D. Cal. Feb. 21, 2020) (awarding 25% of $12.1 million settlement, representing lodestar multiplier of 3.08); *Fowler v. Wells Fargo Bank, N.A.*, No. 17-CV-02092-HSG, 2019 WL 330910, at *7 (N.D. Cal. Jan. 25, 2019) (awarding 25% of $30 million settlement, representing multiplier of 3.46); *Retta v. Millennium Prod., Inc.*, No. CV15-1801 PSG AJWX, 2017 WL 5479637, at *13 (C.D. Cal. Aug. 22, 2017) (awarding 25% of $8.25 million settlement, representing multiplier of 3.5).

Lead Counsel dedicated 678.01 hours of professional time prosecuting this litigation. Goldberg Decl. ¶40; Goldberg Fee Decl. ¶6. Lead Counsel will spend additional time preparing Plaintiff's reply in support of final approval, preparing for and attending the final approval hearing, directing the claims administration process, and filing a motion for final distribution, but will not seek further compensation. Goldberg Decl. ¶42. Lead Counsel's total lodestar, based on its attorneys' current rates, is $573,328.50. Goldberg Fee Decl. ¶6. An award of 25% of the Settlement Fund, or $562,500, results in a fractional lodestar of 0.98. Goldberg Decl. ¶41. Consistent with the

Northern District Guidelines,[9] the Goldberg Fee Declaration includes detailed charts breaking down the lodestar and showing the hours incurred by each Rosen Law professional that worked on this litigation, by category. Goldberg Fee Decl. ¶5.

Courts have awarded attorneys' fees resulting in similar lodestar multipliers in cases with similar procedural postures to this Action, rewarding the substantial benefits obtained for Settlement Class Members from securing an early resolution, avoiding potentially years of further litigation that may result in no recovery for investors or with a lower recovery than the Settlement Amount. Rewarding counsel with a reasonable fee as a percentage of the Settlement Fund aligns counsel's interests with those of the class, rather than incentivizing counsel to prolong the litigation (further delaying and jeopardizing the class's payout), receiving a larger fee with an increased lodestar. The Ninth Circuit stated that "it is widely recognized that the lodestar method creates incentives for counsel to expend more hours than may be necessary on litigating a case so as to recover a reasonable fee, since the lodestar method does not reward early settlement." *Id. See also Glass v. UBS Fin. Servs., Inc.*, No. C-06-4068 MMC, 2007 WL 221862, at *16 (N.D. Cal. Jan. 26, 2007) ("Class counsel achieved an excellent result for the class members by settling the instant action promptly"), *aff'd*, 331 F. Appx. 452, 457 (9th Cir. 2009) (awarding 25% of $45 million settlement where "[t]he dockets for the three cases that ultimately were consolidated in the *Glass* action show no litigation activity of substance other than the filing of the complaints").

This case is similar to *Byrne v. Westpac Banking Corporation, et al*, Case No. 3:20-cv-00171-AC (D. Or. May 12, 2021), where the court awarded attorneys' fees of one-third of a $3.1 million settlement representing a lodestar multiplier of 2.45. In *Westpac*, the settlement was reached before an amended complaint and motion to dismiss were filed, saving the parties' and the court's resources before significant further litigation had commenced. *See also Ortiz v. Canopy Growth Corporation, et al.*, Case No. 2:19-cv-20543-KM-ESK (D.N.J. May 3, 2022) (motion to dismiss granted, awarding one-third of $13 million settlement representing a lodestar multiplier of 2.2); *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 363–64, 373 (S.D.N.Y. 2002) (awarding one

---

[9] https://cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/.

third of $11.5 million settlement resulting in a 4.65 multiplier in a case that settled after one year, noting that "in the context of a complex class action, early settlement has far reaching benefits in the judicial system"); *In re Elan Sec. Litig.*, 385 F. Supp. 2d 363, 376 (S.D.N.Y. 2005) (awarding multiplier of 3.47 in light of an early settlement).

Even as the Northern District Guidelines promote transparency with respect to hours expended by requiring detailed lodestar information, when using lodestar to cross-check or even to calculate attorneys' fee awards, "trial courts need not, and indeed should not, become green-eyeshade accountants." *Fox v. Vice*, 563 U.S. 826, 838 (2011). When the lodestar is merely used as a cross-check, "the focus is not on the necessity and reasonableness of every hour of the lodestar, but on the broader question of whether the fee award appropriately reflects the degree of time and effort expended by the attorneys." *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 270 (D.N.H. 2007). Thus, "an itemized statement of legal services is not necessary for an appropriate lodestar cross-check." *In re Apollo Grp. Inc. Sec. Litig.*, No. CV 04-2147-PHX-JAT, 2012 WL 1378677, at *7 (D. Ariz. Apr. 20, 2012). Here, an informal lodestar cross-check on the requested fee award further supports the reasonableness of the requested fee.

The current hourly rates for Lead Counsel range from $1,025 for partners, $800-875 for counsel, and $550-825 for associates. *See* Goldberg Fee Decl. ¶5. These rates are within the range of reasonable fees for attorneys in complex class-action litigation in this District. *See, e.g., In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, No. 2672 CRB (JSC), 2017 WL 1047834, at *5 (N.D. Cal. Mar. 17, 2017) (approving fee award following lodestar cross-check "with billing rates ranging from $275 to $1600 for partners, $150 to $790 for associates, and $80 to $490 for paralegals"); *Hefler*, 2018 WL 6619983, at *14 (finding reasonable counsel's rates that ranged from $650 to $1,250 for partners or senior counsel, from $400 to $650 for associates, and from $245 to $350 for paralegals); *Police Ret. Sys. of St. Louis v. Granite Constr. Inc.*, No. C 19-04744 WHA, 2022 WL 816473, at *9 (N.D. Cal. Mar. 17, 2022) (finding that plaintiff's counsel's billing rates ranging from $950-$1,325 for partners, $780 for counsel, $175-$690 for associates, and $275-350 for paralegals "qualify as reasonable" and accepting the rates "as generally tracking the going rate for those with the same levels of skill and experience in our geographic region."); *In re*

Commented [JG1]: This may be so, but consider it in the face of the ND Guidelines.

*Lidoderm Antitrust Litig.*, No. 14-MD-02521-WHO, 2018 WL 4620695, at \*2 (N.D. Cal. Sept. 20, 2018) (finding that "Class counsel's historic rates—which range from $350 to $1,050 for partners and senior counsel, $300 to $675 for associates, and $100 to $400 for paralegals" were "reasonable hourly rate[s] for the region and the experience of the lawyer.") (citing *Bluetooth*, 654 F.3d at 941); *In re Aqua Metals, Inc. Sec. Litig.*, No. 17-CV-07142-HSG, 2022 WL 612804, at \*8 (N.D. Cal. Mar. 2, 2022) (finding that "Class Counsel's hourly rates are $765-$1,050 for partners and $425-$650 for associates," which "are in line with prevailing rates in this district for personnel of comparable experience, skill, and reputation.").

The fee award Plaintiff requests is reasonable and in line with what courts in this Circuit and others award in similar class actions, whether calculated as a percentage of the fund or as a multiple of counsel's lodestar. This Court should approve it.

**B.    Withholding a Percentage of Attorneys' Fees**

In ¶28 of its the Preliminary Approval Order, the Court stated that it typically withholds between 10% and 25% of granted attorney's fees until the post-distribution motion has been filed, directing Lead Counsel to specify the percentage it believes is appropriate to withhold, and why. Plaintiff asserts that this Court should require the Escrow Agent to withhold none of the fee the Court awards. (Dkt. 70, ¶28).

Lead Counsel takes its fiduciary duties to Plaintiff and the Class seriously and will continue to perform those duties regardless of whether the Court orders the Escrow Agent to withhold a percentage of the attorneys' fees. With the Claims Administrator, Lead Counsel will timely move to distribute to Settlement Class Members and to account for distribution to this Court, complying with the Northern District Guidelines. Lead Counsel will devote whatever time and attorney working hours necessary to ensure that distribution is completed timely. Nothing in the history of this litigation or Rosen Law's performance in timely distributing in the hundreds of cases it has served classes in a leadership role suggests that withholding distribution of any of the attorney's fees is necessary.

In the Mulholland Decl. ¶15, the Claims Administrator lays out the expected length of the entire distribution schedule, a schedule that includes no lag or extra time.

If the Court orders the Escrow Agent to withhold a percentage of attorney's fees, it should not withhold more than 10%.

### C. The Court Should Approve Plaintiff's Request for Reimbursement of Lead Counsel's Reasonable Litigation Expenses

Attorneys who create a common fund for a class's benefit are entitled to payment of reasonable litigation expenses from the fund. *Omnivision*, 559 F. Supp. 2d at 1048 ("Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters"); *Ontiveros v. Zamora*, 303 F.R.D. 356, 375 (E.D. Cal. 2014). The Long Notice informed potential Settlement Class Members that Lead Counsel would seek expenses in an amount not to exceed $25,000. Mulholland Decl. Ex. B at ¶24. Lead Counsel requests reimbursement of only $7,645.46 it incurred while prosecuting this Action. Goldberg Fee Decl. ¶8.

The expenses incurred are summarized in the Goldberg Declaration. The largest expenses were $3,412.50 for the retention of a private investigation firm, $2,665.00 for fees related to press releases and notice to class members, and $629.96 in online legal research and document retrieval fees. Goldberg Decl. ¶¶51-52; Goldberg Fee Decl. ¶8. These types of expenses are routinely charged to fee-paying clients. *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994); *see also In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007). These expenditures should therefore be reimbursed out of the common fund. *See Luna v. Marvell Tech. Grp.*, No. C 15-05447 WHA, 2018 WL 1900150, at *4 (N.D. Cal. Apr. 20, 2018) (reimbursement granted for reasonable and necessary expenses for experts, investigators, travel, filing costs, photocopies, and online legal and factual research); *Immune Response*, 497 F. Supp. 2d at 1177-78 (reimbursement granted "for 1) meals, hotels, and transportation; 2) photocopies; 3) postage, telephone, and fax; 4) filing fees; 5) messenger and overnight delivery; 6) online legal research; 7) class action notices; 8) experts, consultants, and investigators; and 9) mediation fees."); *Harris*, 24 F.3d at 19 (reimbursement granted for "service of summons and complaint, . . . postage, investigator, copying costs, hotel bills, meals, messenger service").

Like an award of attorney's fees, Lead Counsel knew they would not recover any of their expenses unless the Action was successfully resolved. Even where, as here, a settlement was

reached, reimbursement of expenses does not compensate for the lost use of the funds advanced to prosecute this Action. Lead Counsel were motivated to, and did, take significant steps to minimize expenses whenever practicable without jeopardizing the vigorous and efficient prosecution of the Action.

These expenses represent approximately one-third of 1% of the Settlement Amount. To date, not a single Settlement Class Member has objected to the reimbursement request. Mulholland Decl. ¶13; Goldberg Decl. ¶16. Thus, the Court should grant Plaintiff's request for reimbursement of Lead Counsel's reasonable expenses incurred in litigating the Action.

**D.    The Court Should Award Lead Plaintiff His Reasonable Costs And Expenses Under 15 U.S.C §78u-4(a)(4)**

Pursuant to the PSLRA, Plaintiff seeks reimbursement of $2,000 in costs (including lost wages). Goldberg Decl. ¶54; 15 U.S.C. § 78u-4(a)(4). "Courts across the country embrace incentive awards in light of the enormous benefits created by the class representatives." *Jenson, v. First Tr. Corp.*, No. CV 05-3124 ABC (CTX), 2008 WL 11338161, at *16 (C.D. Cal. June 9, 2008); *Hicks v. Stanley*, No. 01 CIV. 10071 (RJH), 2005 WL 2757792, at *10 (S.D.N.Y. Oct. 24, 2005); (courts "routinely award such costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place").

As an initial matter, Northern District Guidelines promote that "[a]ll requests for incentive awards must be supported by evidence of the proposed awardees' involvement in the case and other justifications for the awards."[10] Plaintiff appends as Exhibit 3 to the Goldberg Decl. the Derouin Decl., containing the evidence to assist this Court in evaluating his request for a compensatory award. The Notice disclosed that Plaintiff would seek a compensatory award not to exceed $2,000. (Dkt. No. 66-4, at 2). To date, no Settlement Class Member has objected to the compensatory award request.

---

[10] https://cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/.

Further, this request, below $5,000, is less than awards courts in this Circuit find "presumptively reasonable." *Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 335 (N.D. Cal. 2014)(noting that typical awards in the Ninth Circuit are $5,000); *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012) ("Several courts in this District have indicated that incentive payments … as a general matter [of] $5,000 is a reasonable amount"). Further, courts in this circuit and nationwide have granted substantially larger reimbursements to class representatives in PSLRA casers. *See e.g., Immune Response*, 497 F. Supp. 2d at 1173-74 (awarding $40,000 to lead plaintiff pursuant to PSLRA); *In re K12 Inc. Sec. Litig.*, No. 4:16-CV-04069-PJH, 2019 WL 3766420, at *2 (N.D. Cal. July 10, 2019) (awarding $5,500 to lead plaintiff pursuant to PSLRA); *Todd v. STAAR Surgical Co.*, No. CV145263MWFGJSX, 2017 WL 4877417, at *6 (C.D. Cal. Oct. 24, 2017) ($10,000 award to lead plaintiff); *In re Xcel*, 364 F.Supp.2d at 1000 (awarding eight lead plaintiffs a total of $100,000 pursuant to the PSLRA and noting "the important policy role [lead plaintiffs] play in the enforcement of the federal securities laws on behalf of persons other than themselves"); *Immune Response*, 497 F. Supp. 2d at 1173-74 ($40,000 reimbursement to lead plaintiff).

Plaintiff represented the Class, expending at least 60 hours participating in this litigation. Derouin Decl. ¶9. Among other things, Mr. Derouin: (i) reviewed pleadings on the motion to dismiss and for appointment as lead plaintiff; (ii) approved the filing of an appeal; (iii) followed and discusses developments in the case; and (iv) discussed the settlement with counsel and approved the settlement. *See* Derouin Decl. at ¶5. Reimbursement of $2,000 for the time and effort Plaintiff dedicated to the Action for the benefit of the Settlement Class is both reasonable and appropriate, and this Court should approve it.

**IV.   CONCLUSION**

For the foregoing reasons, the Court should award to Rosen Law attorneys' fees in the amount of 25% of the Settlement Amount, or $562,500, reimbursement of Rosen Law's out-of-pocket expenses of $7,645.46, and a compensatory award to Plaintiff of $2,000.

Dated: July 28, 2022

Respectfully submitted,

**THE ROSEN LAW FIRM, P.A**.

By: */s/ Jacob A. Goldberg*
Jacob A. Goldberg (*pro hac vice*)
Gonen Haklay (*pro hac vice*)
101 Greenwood Avenue, Suite 440
Jenkintown, PA 19046
Telephone: (215) 600-2817
Facsimile: (212) 202-3827
Email: jgoldberg@rosenlegal.com
       ghaklay@rosenlegal.com

Laurence M. Rosen (SBN 219683)
355 S. Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Lead Counsel for Plaintiff and the Class*

**CERTIFICATE OF SERVICE**

I, Jacob A. Goldberg, hereby declare under penalty of perjury as follows:

I am a partner with The Rosen Law Firm, P.A., with offices at 101 Greenwood Avenue, Suite 440, Jenkintown, PA 19046. I am over the age of eighteen.

On July 28, 2022, I electronically filed the foregoing NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF with the Clerk of the Court using the CM/ECF system which sent notification of such filing to counsel of record.

Executed on July 28, 2022.

*/s/ Jacob A. Goldberg*

MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES
Case No. 4:19-cv-04801-JST
25