**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CHAD C. SMITH, Individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>NETAPP, INC., *et al.*,<br><br>        Defendants. | Case No: 4:19-cv-04801-JST<br><br><u>CLASS ACTION</u><br><br>**DECLARATION OF JACOB A. GOLDBERG IN SUPPORT OF: (I) PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION; AND (II) LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES**<br><br>Hearing Date: September 1, 2022<br>Time: 2:00 p.m. PST<br>Via Zoom: https://cand.uscourts.gov/judges/tigar-jon-s-jst/<br>Judge: Jon S. Tigar |

DECLARATION OF JACOB A. GOLDBERG IN SUPPORT OF MOTIONS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND FOR ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES; Case No. 4:19-cv-04801-JST

I, Jacob A. Goldberg, declare as follows:

1.    I am a partner with The Rosen Law Firm, P.A. ("Rosen Law"), Court-appointed Lead Counsel for Lead Plaintiff Winston Derouin ("Plaintiff" or "Derouin") in this Action. I am admitted *pro hac vice* before this Court. I have personal knowledge of the matters I set forth herein, and, if called upon, I could and shall testify thereto. Capitalized terms herein refer to the defined terms in the Stipulation of Settlement, (Dkt. No. 66-1).

2.    I submit this declaration in support of Plaintiff's motions for: (1) final approval of the proposed Settlement of the above-captioned action ("Action") for $2,250,000; (2) approval of the plan of allocation; (3) final certification of the Settlement Class; and (4) an award of attorneys' fees, reimbursement of expenses, and award to Lead Plaintiff.[1] This declaration demonstrates why the Settlement is fair, reasonable, and adequate and should be approved by the Court, and why Rosen Law's requests for attorneys' fees, reimbursement of expenses, and award to Plaintiff are reasonable and should be approved by the Court.

3.    The Settlement creates a gross settlement fund of $2,250,000, plus accrued interest. After attorneys' fees, reimbursement of expenses, award to Plaintiff, and claims administration costs, under the direction of the Court and Lead Counsel, the Claims Administrator will distribute the Net Settlement Fund to a Settlement Class consisting of "all persons and entities who purchased or otherwise acquired the publicly traded securities of NetApp between May 23, 2019 and August 1, 2019, both dates inclusive."[2] *Id.*

## I.    RELEVANT FACTUAL BACKGROUND AND PROCEDURAL HISTORY

4.    This action was commenced on August 14, 2019, alleging violations of §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") against NetApp, Inc.

---

[1] All capitalized terms not otherwise defined herein shall have the same meanings set forth in the Stipulation of Settlement and exhibits thereto, dated September 21, 2021 ((Dkt. No. 66-1) ("Stipulation").

[2] Excluded from the Settlement Class are: "Defendants, the officers and directors of NetApp, members of the Individual Defendants' immediate families and their legal representatives, heirs, successors, or assigns and any entity in which any the Individual have or had a controlling interest." *Id.*

1

("NetApp" or "Company"), and Individual Defendants George Kurian, Ronald J. Pasek, and Matthew K. Fawcett (collectively, "Defendants").

5. On November 12, 2019, the Court entered an Order, appointing Derouin as Lead Plaintiff and Rosen Law as Lead Counsel (Dkt. No. 36).

6. On January 24, 2020, Lead Plaintiff filed the Amended Class Action Complaint for Violation of the Federal Securities Laws ("Amended Complaint") (Dkt. No. 41).

7. The Amended Complaint alleges that NetApp, Inc. (NetApp") issued a revenue guidance range on May 22, 2019, for the first quarter of fiscal year 2020 ("Q1 2020") and for full fiscal year 2020. On June 18, 2019, NetApp filed with the United States Securities and Exchange Commission ("SEC") its annual report on Form 10-K ("2019 10-K") in which it included a risk warning that its largest customers' pushing out or cancelling orders could negatively impact the Company's financial results. The Amended Complaint alleges both that Defendants knew that the May 22, 2019 forecast was false when made and that when Defendants issued their 2019 10-K, they knew or recklessly disregarded that the warning that large customers might push out or cancel orders had materialized.

8. The Complaint further alleges that on August 1, 2019, Defendants issued a press release, stating that NetApp would miss its quarterly revenue guidance range by up to $243 million, and that investors should no longer rely on the Company's May 22, 2019, guidance for full fiscal year 2020. Defendants further stated that there was a deterioration in close rates against its sales pipeline with its largest customers pushing out or downsizing orders in the second half of Q1 2020, which started on June 10, 2019.[3] In response to this news, on August 1, 2019 NetApp's share price dropped by $11.67, over 20%, falling from $57.71 to $46.04.

9. On March 26, 2020, Defendants filed their motion to dismiss the Amended Complaint (Dkt. No. 42), including the declaration of Cheryl W. Foung ("Foung"). (Dkt. No. 43). The motion to dismiss was fully briefed on July 9, 2020. (Dkt. No. 52). The Court dismissed the

---

[3] NetApp's 2019 fiscal year ended on April 26, 2019.

DECLARATION OF JACOB A. GOLDBERG IN SUPPORT OF MOTIONS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND FOR ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES; Case No. 4:19-cv-04801-JST

case in its entirety on February 1, 2021, (Dkt. No. 58), entering judgment on February 26, 2021. (Dkt. No. 59). Plaintiff filed his Notice of Appeal on March 26, 2021. (Dkt. No. 60).

10. Before the Appeal was briefed, the Parties participated in an all-day mediation on July 21, 2021, through the Ninth Circuit's mediation program. In advance of the mediation session, the Parties exchanged detailed mediation statements outlining their respective analyses of the claims and defenses in this case. The mediation resulted in the Parties reaching an agreement in principle to settle the Action for $2,250,000, memorialized in a memorandum of understanding ("MOU") executed on July 30, 2021.

11. On September 21, 2021, the Parties executed the Stipulation and on September 24, 2021, Plaintiff filed a motion for preliminary approval of the Settlement, attaching the Stipulation and its exhibits. (Dkt. Nos. 65-66). On February 18, 2022, at the Court's direction, Plaintiff filed a Supplemental Memorandum in Support of his Unopposed Motion for Preliminary Approval of Settlement. (Dkt. No. 69). On February 18, 2022, the Court granted the motion and entered the Preliminary Approval Order. (Dkt. No. 70).

## II.     TERMS OF THE SETTLEMENT

12. The Settlement confers a benefit on the Settlement Class, eliminating the risk of continued litigation under circumstances where the Action had been dismissed by this Court and a more favorable outcome was less likely. Additionally, the Plan of Allocation is a fair and reasonable method for distributing the Settlement proceeds to Settlement Class Members.

13. As set forth herein and in the Final Approval Brief, the Settlement represents approximately 1.24% of the maximum estimated damages of $181.7 million under Plaintiff' best-case scenario. The Settlement Class could only recover the maximum estimated damages if: the Ninth Circuit Courts of Appeals reversed the dismissal; both the May 2019 projections claim and the June 2019 risk warning claim survived to trial; the Court certified a class; a jury adopted Plaintiff' expert's damages calculation; Plaintiff defeated any post-trial appeals; and Defendants had the ability to pay such a judgment. The $2,250,000 Settlement Amount is fair, reasonable, and adequate, warranting final approval.

DECLARATION OF JACOB A. GOLDBERG IN SUPPORT OF MOTIONS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND FOR ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES; Case No. 4:19-cv-04801-JST

14.     To date, Settlement Class Members have submitted valid claims totaling $40.2 million,[4] on 5.44 million[5] damaged shares. The estimated recovery per damaged share, before deducting Court-approved fees and expenses and notice and claims administration costs, is approximately $.41.   The estimated Net Settlement Fund after deducting each of these costs (should the Court approve the requested amounts) is approximately $1.51 million, or $.28 per damaged share. If the Court approves all of the requested amounts of fees and expenses, approximately 67.13% of the Settlement Amount will be distributed to Settlement Class Members. As the claims filing date runs until August 2, 2022, Plaintiff will update these numbers in his Reply filings in support of Final Approval.

## III.    LEAD COUNSEL'S FEE REQUEST

15.     A true and correct copy of The Declaration of Jacob A. Goldberg in Support of Award of Attorney's Fees, Expenses, and an Award to Lead Plaintiff ("Goldberg Fee Decl."), is attached hereto as **Exhibit 2**, requesting a fee award of 25% of the Settlement Fund, or $562,500.00, and reimbursement of $7,645.46 in litigation expenses incurred in prosecuting this Action. This fee request is within the reasonable range of percentages typically awarded to class counsel in securities class actions in the Ninth Circuit.

## IV.    REACTION OF THE SETTLEMENT CLASS

16.     The reaction of the members of the Settlement Class supports the fairness, reasonableness, and adequacy of the Settlement and the fee request. Pursuant to the Notice,[6] objections to the Settlement must be received by August 11, 2022. To date, no Settlement Class Member has objected to the Settlement. *See* Declaration of Paul Mulholland Concerning: (A) Mailing of The Notice and Claim Form; (B) Publication of The Summary Notice; and (C) Report on Requests For Exclusion and Objections ("Mulholland Decl."), ¶13. A true and correct copy of the Mulholland Declaration and its exhibits is attached hereto as **Exhibit 1**. If Rosen Law and/or

---

[4] This includes 32 deficient claims with a maximum claims value of $564,512.

[5] This includes 32 deficient claims with a maximum 76,457 damaged shares.

[6] "Notice" collectively refers to the Notice of Pendency and Proposed Settlement of Class Action ("Long Notice"), and the Summary Notice of Pendency and Proposed Class Action Settlement ("Summary Notice").

DECLARATION OF JACOB A. GOLDBERG IN SUPPORT OF MOTIONS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND FOR ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES; Case No. 4:19-cv-04801-JST

the Claims Administrator receive any objections, Plaintiff will address them in their reply papers in support of final approval, due August 25, 2022.

17.    Pursuant to the Notice, requests for exclusion from the Settlement must be received by August 11, 2022. To date, the Claims Administrator has received only one request for exclusion. Mulholland Decl. ¶12. Although the investor seeking exclusion included all of the information this Court's Preliminary Approval Order required, the letter sent by the investor also states that they did not purchase or sell NetApp stock during the Class Period. Mulholland Decl. ¶12, Ex. E.

## V.    NOTICE PROCEDURES

18.    Plaintiff and the Claims Administrator followed precisely the notice program the Court approved in the Preliminary Approval Order. A total of 39,320 Postcard Notices were mailed to potential class members by either SCS or by nominees who requested postcards to mail to their customers. In addition, a total of 8,626 emails to potential class members, with links to the Notice and Claims form on the Settlement website, were sent by either SCS or by nominees Mulholland Decl. ¶¶5-6. Thus, a total of 47,946 potential Settlement Class Members were notified of the Settlement by Postcard or by emailed link to the Settlement website with the Long Notice and Claim Form. *Id.* ¶7.

19.    The Claims Administrator published the Court-approved Summary Notice online in *GlobeNewswire* and in print in *Investor's Business Daily*. *Id.* ¶9. The Claims Administrator also published all information regarding the Settlement online on the Settlement website. *Id.* ¶11. The Claims Administrator also maintained a toll-free phone line for Settlement Class Members to obtain information about the Settlement. *Id.* ¶10.

20.    In accordance with the Northern District of California's Procedural Guidance for Class Action Settlements, the Mulholland Declaration includes information about the number of undeliverable class notices and claim packets. *Id.* ¶8.

## IV.    PLAN OF ALLOCATION

21.    Pursuant to the Preliminary Approval Order, the Long Notice fully described the proposed Plan of Allocation preliminarily approved by the Court. Mulholland Decl., Ex. B (Long

Notice) at 4-8. Lead Counsel created the proposed Plan of Allocation after consulting with the Claims Administrator, designing it to reimburse Settlement Class Members in a fair and reasonable manner. The Plan of Allocation is based in part on the same damages estimate Plaintiff used to estimate their maximum recoverable damages, and it closely tracks Plaintiff's theory of the case.

22.    Upon Court approval, the Plan of Allocation will govern how the proceeds of the Net Settlement Fund will be distributed among Settlement Class Members who timely submit Claim Forms. Pursuant to the Plan of Allocation, the Claims Administrator, under the direction of Lead Counsel, will determine each authorized claimant's *pro rata* share of the Net Settlement Fund based upon each claimant's Recognized Loss. The formula for determining each Authorized Claimant's Recognized Loss is based on an out-of-pocket measure of damages consistent with Plaintiff' allegations, and takes into consideration when each Claimant purchased and/or sold NetApp common stock. Each similarly situated authorized claimant will receive a *pro rata* share of the Recognized Losses attributed to their claim, with that share to be determined by the ratio that the authorized claimant's allowed claim bears to the total allowed claims of all authorized claimants.

23.    If any funds remain after the initial distribution from the Net Settlement Fund to Authorized Claimants, SCS will conduct a second distribution to Authorized Claimants who would receive at least $10.00 from such a re-distribution as long as the second distribution is cost effective. Accordingly, it is likely that only a small amount of funds will remain in the Net Settlement Fund after such distribution(s).

24.    After a second distribution, if a third is economically infeasible, Plaintiff will propose and seek approval for donating residual funds to the Investor Justice and Education Clinic ("IJEC") at Howard University School of Law as an appropriate *cy pres* recipient of such funds. The IJEC provides law students with the opportunity to represent clients in securities cases against securities broker-dealers. The IJEC also provides investor education and outreach programs for underserved investing communities, providing investment protection education, including a basic

DECLARATION OF JACOB A. GOLDBERG IN SUPPORT OF MOTIONS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND FOR ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES; Case No. 4:19-cv-04801-JST

understanding of financial markets and professionals and financial products, and the rights of investors.[7]

25.     The Plan of Allocation is tailored to compensate the losses of the Settlement Class Members equitably, consistent with loss causation principles of *Dura Pharma. Inc., v. Broudo*, 544 U.S. 336 (2005) and the strength of the two claims during the Settlement Class Period.

**VI.     THE FAIRNESS AND REASONABLENESS OF THE SETTLEMENT**

26.     The proposed Settlement is the culmination of careful and efficient litigation followed by arms' length settlement negotiations. The Parties reached the Settlement after Lead Counsel had thoroughly investigated the claims. The investigation consisted of an independent review of public documents, SEC filings, and statements regarding and from NetApp, news and analyst reports, and the retention of an investigator who interviewed NetApp employees.

27.     That investigation resulted in the filing of the Amended Complaint, which added new claims under the Exchange Act and expanded the liability in the case. Lead Counsel and Plaintiff gained a better understanding of the strengths and weaknesses of the case after briefing the NetApp Defendants' motion to dismiss the Amended Complaint, and reviewing the Court's decision granting the motion to dismiss. Plaintiff then filed his Notice of Appeal. (Dkt. No. 60).

28.     Lead Counsel evaluated the prospects of obtaining a better result if the case were to go forward, taking into account the difficulty of obtaining a reversal in the Ninth Circuit Court of Appeals, and the risks of the claims in this Action surviving summary judgment, of having the Class certified, and of prevailing at trial. Plaintiff faced multiple procedural hurdles and significant merit-based risks involved with this potentially protracted litigation. Lead Counsel carefully considered each of these risks before agreeing to the Settlement. As reflected in the firm's resume, previously filed with this Court (Dkt. No. 21-4), Lead Counsel are experienced and skilled practitioners in the securities litigation field and have a successful track record in such securities, shareholder, and other complex class action cases.

---

[7] http://law.howard.edu/content/investor-justice-and-education-clinic-ijec.

DECLARATION OF JACOB A. GOLDBERG IN SUPPORT OF MOTIONS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND FOR ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES; Case No. 4:19-cv-04801-JST

29.     Although Lead Counsel believe Plaintiff's claims are meritorious and sufficiently pleaded, there is no certainty that the Ninth Circuit will reverse this Court's dismissal, for failure to adequately plead scienter. Plaintiff faced the risk that the Ninth Circuit Court of Appeals would not rule that Plaintiff had adequately pleaded a strong inference of scienter with sufficient particularity, as required by the Private Securities Litigation Reform Act of 1995 ("PSLRA").

30.     Plaintiff also faced the challenge of obtaining class certification and establishing market efficiency. Based on Lead Counsel's experience, a market efficiency expert, if necessary, would likely cost between $75,000 and $175,000.

31.     Discovery would also be costly and time consuming. Plaintiff would likely need to review thousands of documents and take depositions of Defendants, NetApp employees, and third parties. Further, since the Class Period began and ended in 2019, it is possible that fading witness memories could affect the acquisition of evidence from depositions or in-person testimony.

32.     Even if Plaintiff succeeded in getting discovery and obtaining a favorable judgment at trial, Plaintiff would still have to enforce the judgment and defeat any applicable appeals.

## VII.    THE FEE APPLICATION IS FAIR AND REASONABLE

33.     The Long Notice informed Settlement Class Members of Lead Counsel's intent to apply for an award of attorneys' fees in an amount not to exceed 25% of the Settlement Fund, or $562,500 plus interest, and for reimbursement of Lead Counsel's litigation expenses in an amount not to exceed $25,000. Mulholland Decl., Ex. B. As set forth in the Memorandum in Support of Plaintiff's Motion for an Award of Attorneys' Fees, Reimbursement of Expenses, and Award to Plaintiff, filed herewith ("Fee Memo"), Plaintiff's request for 25% of the common fund that counsel's efforts created is the benchmark award in the Ninth Circuit.

34.     Lead Counsel achieved a favorable result for the Settlement Class at risk and expense to themselves. Throughout this litigation, Lead Counsel was committed to the interests of the Settlement Class and invested the time and resources necessary to resolve the Settlement Class's claims. As a result of this Settlement, Settlement Class Members will receive compensation for their losses and avoid the risk of no recovery at all.

DECLARATION OF JACOB A. GOLDBERG IN SUPPORT OF MOTIONS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND FOR ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES; Case No. 4:19-cv-04801-JST

*Lead Counsel's Work and Expertise*

35.    Lead Counsel took this case on a contingency basis, with no assurance of success or receiving any compensation without a successful result, which would only be realized after significant amounts of time, effort and expense had been expended.

36.    During the PSLRA-mandated discovery stay, Lead Counsel reviewed NetApp's public filings and statements during the alleged Settlement Class Period, as well as other news reports and public information relating to NetApp. Lead Counsel also retained an investigator to interview of former NetApp employees. With Lead Plaintiff, Lead Counsel determined the scope and strength of the claims Plaintiff could bring, including the appropriate Class Period, corrective disclosures, and the corresponding misrepresentations and/or omissions.

37.    Lead Counsel also reviewed and opposed the Defendants' motion to dismiss the Amended Complaint. Lead Counsel reviewed the Court's order on the motion to dismiss, and decided to appeal the dismissal.

38.    In connection with the mediation, Lead Counsel filed a mediation statement, and analyzed Defendants' mediation statement. As a result of these efforts, Plaintiff and Lead Counsel understood the merits and weaknesses of the Action when Plaintiff approved the Settlement.

39.    The Goldberg Fee Decl. is attached hereto as **Exhibit 2**. In connection with the prosecution of this Action, Rosen Law: (a) conducted a factual investigation, including the review of publicly available documents about NetApp and the individual defendants; (b) filed the initial complaint; (c) filed a motion for appointment of lead plaintiff and lead counsel; (d) consulted with a private investigator relating to the allegations in this Action; (e) consulted with a damages expert; (f) researched, drafted and filed the Amended Complaint; (g) reviewed and opposed Defendants' motion to dismiss the Amended Complaint; (h) reviewed the Court's opinion and filed the Notice of Appeal; (i) participated in a mediation with Ninth Circuit mediator Sasha M. Cummings, including drafting a detailed mediation statement and reviewing Defendants' mediation statement; (m) negotiated an agreement on the terms of a settlement; (j) presented those settlement terms to this Court by way of a motion for preliminary approval of the Settlement; (k) filed the accompanying motion for final approval of the Settlement; and (l) oversaw the

dissemination of Notice to the Settlement class and monitored the work of the Claims Administrator

40.    The total amount of time expended by attorneys and professional staff employed by Lead Counsel is 678.20 hours. Goldberg Fee Decl. ¶6. This number is derived from the time records Rosen Law regularly maintained. A listing of the professionals at Rosen Law who worked on this matter, the number of hours spent by each such professional broken down by category, and their hourly rates is set forth in detail in the Goldberg Fee Decl. ¶5. The total value of the services performed in this case by Rosen Law, based upon our current rates, is $573,328.50. *Id.* ¶¶5-6.

41.    If the Court grants Plaintiff's request for 25% of the Settlement as attorneys' fees, Lead Counsel will receive a fee of $562,500. This fee award would represent a negative lodestar multiplier of approximately 0.98.

42.    Moreover, in addition to the time expended to date, Lead Counsel will expend additional time preparing Plaintiff's reply in support of final approval, preparing for and attending the final approval hearing, directing the claims administration process, and filing a motion for final distribution, without seeking additional compensation for this work.

***The Caliber of Opposing Counsel***

43.    Defendants' counsel, Wilson Sonsini Goodrich & Rosati Professional Corporation, vigorously represented their clients. Wilson Sonsini is a respected defense firm with substantial securities litigation experience. Defense Counsel are at least as well-informed regarding the case as Lead Counsel, and their representation of Defendants was no less vigorous than Lead Counsel's representation of the Settlement Class. In the face of this opposition, Plaintiff and Lead Counsel were nevertheless able to develop a case that was sufficiently strong to persuade Defendants to settle on terms that were favorable to the Class.

***The Risks of Litigation and the Need to Ensure the Availability of Competent Counsel in High Risk, Contingent Securities Cases***

44.    Lead Counsel undertook this class action on a contingency fee basis. I summarize above and Plaintiff further describes in the Final Approval Memo the risks counsel assumed in bringing these claims to a successful conclusion.

DECLARATION OF JACOB A. GOLDBERG IN SUPPORT OF MOTIONS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND FOR ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES; Case No. 4:19-cv-04801-JST

45. Those risks are also relevant to an award of attorneys' fees. I describe in detail above and Plaintiff further describes in the Fee Memo the risks Lead Counsel assumed and the time and expenses they incurred without any payment.

46. From the outset, Lead Counsel understood that they were embarking on a relatively complex, expensive, and probably lengthy litigation with no guarantee of being compensated for the investment of their time and money that the case would have required. Lead Counsel has received no compensation during the course of this litigation, pending for almost three years, since August 2019.

47. As a result of persistent efforts in the face of substantial risks and uncertainties, Lead Counsel achieved a fair, adequate, and reasonable recovery for the Settlement Class. In consideration of Lead Counsels' efforts and the favorable result achieved, a 25% fee is reasonable and the Court should approve it.

## VIII. THE REIMBURSEMENT OF EXPENSES IS FAIR AND REASONABLE

48. Lead Counsel have incurred $7,645.46 in litigation expenses in connection with the prosecution of the Action. These expenses were reasonable and necessary for the prosecution of the Action.

49. From the outset, Lead Counsel were aware that they might not recover any of their expenses, and, at the very least, would not recover anything until the case was successfully resolved. Lead Counsel also understood that, even assuming that the case was ultimately successful, reimbursement for expenses would not compensate them for the lost use of the funds they advanced to prosecute this action. Thus, Lead Counsel took significant steps to minimize expenses whenever practicable without jeopardizing the vigorous and efficient prosecution of the case.

50. A listing of the expenses Rosen Law incurred, compiled from the firm's regularly maintained records, are set forth in the Goldberg Fee Declaration, ¶8. The expenses incurred pertaining to this case are reflected in Rosen Law's books and records which are prepared from expense vouchers and check records and are an accurate record of the expenses incurred. They are also available, upon request, for inspection by the Court. *Id.* ¶¶8-9.

11

DECLARATION OF JACOB A. GOLDBERG IN SUPPORT OF MOTIONS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND FOR ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES; Case No. 4:19-cv-04801-JST

51.     Litigation expenses for which Lead Counsel seeks reimbursement include retention of a private investigation firm, fees related to press releases and notice to class members, and online legal research and document retrieval fees. Each of these expenses was reasonable and necessary for the successful prosecution of this case.

52.     The largest expense was for the retention of a private investigation firm, costing approximately $3,412.50. Other substantial costs related fees related to press releases and notice to class members ($2,665.00), and online legal research and document retrieval fees ($629.96). Each of these expenses were critical to Lead Counsel's success in achieving the Settlement and, like the other categories of expenses for which counsel seek reimbursement, are the types of expenses routinely charged to clients who pay hourly.

53.     In light of the relatively complex nature of securities class action litigation and the difficulties in pleading and ultimately proving liability, as well as proving loss causation and damages at trial, the litigation expenses incurred were reasonable and necessary to pursue the interests of the Settlement Class.

## IX.     AWARD TO LEAD PLAINTIFF

54.     The Long Notice and Summary Notice each disclosed that Lead Counsel would seek a compensatory award to Plaintiff not to exceed $2,000. (Dkt. No. 66-4, at 1) ("Long Notice"). Mr. Derouin has reviewed the Amended Complaint and motion to dismiss briefing, evaluated the benefits of continuing with this Action on behalf of the Settlement Class, and approved the Settlement Amount. The specifics of Lead Plaintiff's involvement in this Action are described in Mr. Derouin's Declaration, attached hereto as **Exhibit 3**. The request for an award to Lead Plaintiff should be granted.

## X.     LIST OF EXHIBITS

55.     Attached as Exhibit 1 is a true and correct copy of the Mulholland Declaration, executed on July 28, 2022, with its attached exhibits.

56.     Attached as Exhibit 2 is the Fee Declaration, executed on July 28, 2022.

57.     Attached as Exhibit 3 is the Declaration of Winston Derouin, executed on July 24, 2022.

I declare under penalty of perjury under the laws of the United States of America that the foregoing facts are true and correct.

Executed this 28th day of July 2022, at Jenkintown, Pennsylvania.

*/s/Jacob A. Goldberg*

DECLARATION OF JACOB A. GOLDBERG IN SUPPORT OF MOTIONS FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT AND FOR ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES; Case No.
4:19-cv-04801-JST

**CERTIFICATE OF SERVICE**

I, Jacob A. Goldberg, hereby declare under penalty of perjury as follows:

I am a partner with The Rosen Law Firm, P.A., with offices at 355 S. Grand Avenue, Suite 2450 Los Angeles, CA 90071. I am over the age of eighteen.

On July 28, 2022, I electronically filed the foregoing DECLARATION OF JACOB A. GOLDBERG IN SUPPORT OF: (I) PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION; AND (II) LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES with the Clerk of the Court using the CM/ECF system which sent notification of such filing to counsel of record.

Executed on July 28, 2022.

/s/ Jacob A. Goldberg

DECLARATION OF JACOB A. GOLDBERG IN SUPPORT OF MOTIONS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND FOR ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES; Case No. 4:19-cv-04801-JST